EXHIBIT 4



RAPHAELSON
LAW

15 Broad Street, 7th Floor    617.204.9800 (phone)
Boston, MA 02109    617.204.9801 (fax)
www.raphlaw.com

February 28, 2020

<u>Certified Mail – Return Receipt Requested</u>

President
AmWins Group, Inc.
4725 Piedmont Row Drive, Suite 600
Charlotte, NC 28210

    Re:   Heidi Hache, as Mother and Next Friend of Alexander Hache v.
           AIG Claims, Inc., Granite State Insurance Company
           and AMWINS Group, Inc.
           Middlesex Superior Court, Civil Action No. 2081CV00463

Dear Sir/Madam:

    Please be advised that we represent the plaintiffs in the above referenced matter. Enclosed please find the following:

1. Summons and Complaint;
2. Civil Action Cover Sheet;
3. Civil Tracking Order; and
4. Plaintiff's First Request for Production of Documents From Defendant AmWins Group, Inc.

    Service of Process is being made, pursuant to G. L. c. 223A, §6(a)(3), by certified mail.

                            Sincerely,

                            Jeffrey S. Raphaelson

JSR:ljc
Enclosures

## Commonwealth of Massachusetts

MIDDLESEX, SS.

Heidi Hache, as Mother and Next Friend of Alexander Hache, PLAINTIFF(S),

V.

AIG Claims, Inc. et al, DEFENDANT(S)

TRIAL COURT OF THE COMMONWEALTH
SUPERIOR COURT DEPARTMENT
CIVIL DOCKET NO. 2081CV00463



### SUMMONS

THIS SUMMONS IS DIRECTED TO AmWins Group, Inc. (Defendant's name)

**You are being sued.** The Plaintiff(s) named above has started a lawsuit against you. A copy of the Plaintiff's Complaint filed against you is attached to this summons and the original complaint has been filed in the Middlesex Sup. Court. **YOU MUST ACT PROMPTLY TO PROTECT YOUR RIGHTS.**

1. **You must respond to this lawsuit in writing within 20 days.** If you do not respond, the court may decide the case against you and award the Plaintiff everything asked for in the complaint. You will also lose the opportunity to tell your side of the story. You must respond to this lawsuit in writing even if you expect to resolve this matter with the Plaintiff. **If you need more time to respond, you may request an extension of time in writing from the Court.**

2. **How to Respond.** To respond to this lawsuit, you must file a written response with the court **and** mail a copy to the Plaintiff's Attorney (or the Plaintiff, if unrepresented). You can do this by:
   a. Filing your **signed original** response with the Clerk's Office for Civil Business, 200 Trade Center, Woburn, MA (address), by mail or in person, **AND**
   b. Delivering or mailing a **copy** of your response to the Plaintiff's Attorney/Plaintiff at the following address: Raphaelson Law, 15 Broad St., Boston, MA 02109

3. **What to include in your response.** An **"Answer"** is one type of response to a Complaint. Your Answer must state whether you agree or disagree with the fact(s) alleged in each paragraph of the Complaint. Some defenses, called affirmative defenses, must be stated in your Answer or you may lose your right to use them in court. If you have any claims against the Plaintiff (referred to as **counterclaims**) that are based on the same facts or transaction described in the Complaint, then you must include those claims in your Answer. Otherwise, you may lose your right to sue the Plaintiff about anything related to this lawsuit. If you want to have your case heard by a jury, you must **specifically** request a jury trial in your Answer or in a written demand for a jury trial that you must send to the other side and file with the court no more than 10 days after sending your Answer. You can also respond to a Complaint by filing a **"Motion to Dismiss,"** if you believe that the complaint is legally invalid or legally insufficient. A Motion to Dismiss must be based on one of the legal deficiencies or reasons listed under **Mass. R. Civ. P. 12.** If you are filing a Motion to Dismiss, you must also comply with the filing procedures for "Civil Motions" described in the rules of the Court in which the complaint was filed, available at www.mass.gov.courts/case-legal-res/rules of court.

4. **Legal Assistance.** You may wish to get legal help from a lawyer. If you cannot get legal help, some basic information for people who represent themselves is available at www.mass.gov/courts/selfhelp.
5. **Required Information on all filings:** The "civil docket number" appearing at the top of this notice is the case number assigned to this case and must appear on the front of your Answer or Motion to Dismiss. You should refer to yourself as the "Defendant."

Witness Hon. Judith Fabricant, Chief Justice on __February 28__, 20__20__.

Michael A. Sullivan
Clerk-Magistrate

Note: The number assigned to the Complaint by the Clerk-Magistrate at the beginning of the lawsuit should be indicated on the summons before it is served on the Defendant.

## PROOF OF SERVICE OF PROCESS

I hereby certify that on _____, 20___, I served a copy of this summons, together with a copy of the complaint in this action, on the defendant named in this summons, in the following manner (See Mass. R. Civ. P. 4(d)(1-5)):

_____

_____

Dated: _____, 20___       Signature: _____

**N.B.   TO PROCESS SERVER:**

**PLEASE ENTER THE DATE THAT YOU MADE SERVICE ON THE DEFENDANT IN THIS BOX - BOTH ON THE ORIGINAL SUMMONS AND ON THE COPY OF THE SUMMONS SERVED ON THE DEFENDANT.**

, 20___

COMMONWEALTH OF MASSACHUSETTS

MIDDLESEX, ss.                                             SUPERIOR COURT DEPARTMENT

HEIDI HACHE, as Mother and Next Friend of )
ALEXANDER HACHE, )
    Plaintiff, )
)
vs. )    CIVIL ACTION NO. 2081CV00463
)
AIG CLAIMS, INC., GRANITE STATE INSURANCE )
COMPANY, and AMWINS GROUP, INC., )
    Defendants. )

## COMPLAINT

### PARTIES

1. Plaintiff Heidi Hache, as mother and next friend of Alexander Hache, resides in Hudson, Middlesex County, Massachusetts.

2. Defendant AIG Claims, Inc. ("AIG Claims") is a corporation with a usual place of business at 99 Summer Street, Boston, Massachusetts. AIG Claims receives new claims addressed to P.O. Box 25967, Shawnee Mission, Kansas.

3. Defendant Granite State Insurance Company ("Granite State") is a corporation with a principal place of business in Concord, New Hampshire.

4. Defendant AmWins Group, Inc. ("AmWins") is a corporation with a usual place of business at 2 Rosenfeld Drive, Unit A, Hopedale, Massachusetts.

### FACTS COMMON TO ALL COUNTS

5. On April 12, 2016, Alexander Hache ("Alex") filed a lawsuit against Wachusett Mountain Ski Area, Inc. ("Wachusett") in the Middlesex Superior Court, Civil Action No.: 1681CV01055 (the "Underlying Action").

6. Granite State provided a defense and $1 million of indemnity insurance coverage to Wachusett in the Underlying Action under primary policy number 000011739248 (the "Primary Policy").

7. AmWins served as the program claims administrator for Granite State under the Primary Policy, and participated in the claims handling of the Underlying Action. At all times relevant to the issues presented in this complaint, AmWins was Granite State's agent acting within the scope of its agency relationship.

8. AIG Claims participated in, directed and/or supervised the claims handling of the Underlying Action. At all times relevant to the issues presented in this complaint, AIG was Granite State's agent acting within the scope of its agency relationship.

9. On or about March 8, 2015, Alex approached the load here line of the Polar Express high-speed, detachable quad chair lift ("Polar Express Lift") at Wachusett Mountain Ski Area from the singles line to board a chair with three adult skiers whom he did not know.

10. While in the loading area, Alex was not able to seat himself securely onto the chair, and as the chair moved through the loading area his body slipped off the chair, and he visibly was not seated in the chair.

11. No Wachusett employee provided any help when Alex loaded onto the chair, or slowed or stopped the lift in the loading area to allow him to seat himself securely in the chair.

12. While in the loading area, riders on Alex's chair reached out and held onto him, and he and the other riders yelled loudly to stop the lift.

13. While in the loading area and as the chair began its ascent up the mountain, no Wachusett employee stopped the lift despite many persons yelling to stop the lift and the visible danger to Alex.

14. The lift continued to ascend the mountain with Alex hanging from it for about three minutes. Shortly after Alex's skis hit a snowmaking gun Wachusett left underneath the chair lift in contravention to its usual business practice, the other chair riders lost hold of Alex and he fell thirty feet to the ground below.

15. The Massachusetts Department of Public Safety ("DPS") performed an investigation into the circumstances surrounding Alex's incident and concluded that Wachusett failed to load Alex on the chair as required by Massachusetts regulations and failed to maintain the ski area in a "reasonably safe condition or manner" in violation of Massachusetts General Law.

16. AmWins received a copy of the DPS report of its investigation of Alex's incident between April 2015 and June 2015.

17. By April 12, 2016, the date Alex filed the Underlying Action, the Defendants knew the following facts regarding Alex's incident:

    (a) The first and foremost duty of the lift attendant at the base of the Polar Express Lift is to ensure the safe load of each and every rider on each and every chair;

    (b) On March 8, 2015, loading each and every rider safely onto the Polar Express Lift, including Alex, was the Polar Express Lift attendant's number one priority;

3

(c) Per Wachusett's training protocols, in effect on March 8, 2015, the Polar Express Lift attendant at the base of the lift must watch and listen for problems to ensure that each rider loads each chair safely;

(d) Per Wachusett's training protocols, in effect on March 8, 2015, the Polar Express Lift attendant at the base of the lift is required to assist any rider not able to sit securely on the chair, or to stop the lift immediately;

(e) Per Wachusett's training protocols, in effect on March 8, 2015, if someone yells "stop the lift," the Polar Express Lift attendant at the base of the lift is required to immediately stop the lift irrespective of whether he understands the reason why the person is yelling to stop the lift;

(f) Neither the Polar Express Lift attendant, nor any other Wachusett employee, maintained surveillance of Alex's chair when he and the other riders loaded, as the chair moved through the loading area, and when the chair left the loading area and began its ascent up the mountain; and

(g) Wachusett failed to exercise reasonable care in the operation of the Polar Express Lift when Alex loaded the lift and as his chair moved through the loading area and ascended the mountain. The Polar Express Lift operator and attendant failed to confirm a safe and clean load of Alex's chair, and failed to

4

AIG 0L02 3/5/2020

stop the lift or otherwise respond to Alex's emergency as required.

18. The facts set forth in ¶ 17 (a) – 17 (g) were never in genuine dispute in the Underlying Action.

19. On September 29, 2016, Alex produced in the Underlying Action medical records and billing information relating to the injuries he sustained in the fall. The records established that Alex sustained five vertebral fractures and a pelvis fracture for which he underwent two rounds of physical therapy, post-traumatic stress disorder for which he underwent counseling, and a concussion with post-concussion symptoms for which he received treatment. The billing records totaled more than $30,000.

20. The injuries evidenced by the medical records, and the billing, referenced in ¶ 18 were never in genuine dispute in the Underlying Action.

21. In January 2017, Alex testified in his deposition that he didn't know exactly what happened that led him to sit on the arm of the chair, but when he tried to sit down there was no space between him and Mr. Lavigne, the rider to his immediate left. Depositions taken of the three other chair riders later in 2017, before September, confirmed their earlier witness statements that they knew of no lack of care on Alex's part. Defendants never possessed any admissible evidence from any source that Alex failed to use due care when loading the chair.

22. Defendants knew or believed by September 2017 that Wachusettt was 100% responsible for Alex's incident.

AIG OL0023/5/2020

23. In his deposition in January 2017, Alex testified that he had ongoing physical and cognitive difficulties relating to his injuries, he could no longer participate in the contact sports he loved, and he no longer skied because of the injuries he sustained in the fall.

24. Alex's testimony set forth in ¶ 23 was never in genuine dispute in the Underlying Action.

25. In May 2017, Alex's mother, Heidi Hache, gave corroborating deposition testimony on the elements of damage set forth in ¶ 23. Defendants never possessed any admissible evidence to rebut Alex's testimony set forth in ¶ 23.

26. In May or June 2017, Defendants received Dr. McGrath's first neuropsychological evaluation in which Dr. McGrath opined that Alex sustained significant and permanent cognitive impairment as a result of the mild traumatic brain injury he sustained in the fall.

27. By the end of September 2017, Defendants knew that Wachusett had falsified a certified training certificate of an employee named Jacob Shepard ("Certified Transcript") in order to cover up that Dylan Wilson, the Wachusett employee acting as the base lift attendant when Alex loaded the chair, had not taken the required online Bullwheel training course.

28. By the end of September 2017, Defendants knew that Wachusett had committed perjury and spoliated evidence in the Underlying Action in order to hide the falsification of the Certified Transcript.

AIG 0L02 3/5/2020

29. By the end of September 2017, Defendants knew Wachusett had engaged in bad faith litigation conduct designed to conceal its liability for Alex's injuries.

30. By the end of September 2017, Wachusett's liability was reasonably clear and Granite State was required under M.G.L., c. 176D to promptly make a reasonable offer of settlement to include at a minimum compensation for the damages not in material dispute set forth in ¶¶ 19 and 23 above.

31. Granite State did not promptly make an offer of settlement after Wachusett's liability became reasonably clear.

32. Rather, at a mediation that took place on April 3, 2018, Granite State's agent offered $15,000, and only $15,000, to settle Alex's claim. Granite State's agent refused to increase the offer from $15,000 in response to Alex's reduction of his demand from $10 million to $9 million even though its agent had substantially greater settlement authority. The mediation ended abruptly when the agent refused to increase the $15,000 offer.

33. At the mediation, and thereafter, Defendants deliberately withheld from Alex a reasonable offer of settlement despite knowing Wachusett's liability for the uncontested injuries and expenses set forth in ¶¶ 19 and 23 above was reasonably clear.

34. After learning of Wachusett's bad faith litigation conduct, Defendants controlled or authorized actions undertaken in the Underlying Action designed to conceal from the court the truth about Wachusett's bad faith litigation conduct and its liability for Alex's injuries.

AIG 010 02 3/5/2020

35. At the mediation, and thereafter, Defendants took the steps outlined in ¶¶ 31-34 above hoping to wear down Alex and force him to accept a lower offer, knowing their conduct violated c. 176D and c. 93A. Defendant AIG Claims employed similar tactics in prior cases.

36. Granite State made two additional offers of settlement before the trial in July 2019. On November 2, 2018, after Wachusett admitted liability conditionally, Granite State served on Alex's counsel an offer of judgment for $425,000. In late June 2019, shortly before the trial, Granite State offered the $1 million coverage limit.

37. On July 16, 2019, after a five-day trial, a Middlesex county jury returned a verdict in favor of Alex for $3,275,000.00 in the Underlying Action. Judgment in the amount of $4,560,105.20 entered on July 19, 2019.

38. Granite State did not disclaim coverage for Wachusett's bad faith litigation conduct in the Underlying Action, despite Wachusett's apparent material breach of the cooperation clause in the Primary Policy. Rather, following the trial, Granite State forwarded to Alex an indemnity payment of $1,000,000 and a "Supplemental Payment" of $417,245 against the judgment.

## COUNT I

### (Violation of c. 93A – Granite State)

39. Plaintiff repeats herein the allegations set forth in paragraphs 1 to 38 above.

40. The acts of Granite State violated G.L. c. 176D, §§ 3(9) (d) and (f) and constitute unfair or deceptive acts or practices under G.L. c. 93A. Granite State

engaged in these unfair or deceptive acts or practices willfully and with knowledge that it was violating Alex's rights under c. 176D and c. 93A.

41. The unfair or deceptive acts or practices committed by Granite State occurred in the conduct or trade or commerce.

42. As a direct and proximate result of the unfair or deceptive acts or practices of Granite State, Alex suffered harm.

43. On or about October 4, 2019, Plaintiff mailed a demand letter to Granite State, pursuant to G.L. c. 93A, section 9(3). The demand letter identified Alex as the claimant, reasonably described Defendant's unfair or deceptive acts or practices and reasonably described the injury suffered by Alex as a result. A true and correct copy of Plaintiff's demand letter to Granite State is attached hereto as Exhibit A.

44. Granite State received the demand letter and failed to make a reasonable offer of settlement within thirty days. A true and correct copy of Granite State's response to Plaintiff's demand letter is attached hereto as Exhibit B.

WHEREFORE, Plaintiff demands judgment against Granite State in an amount to be determined, together with interest, costs, Plaintiff's reasonable attorneys' fees, double or treble damages for Defendant's willful and knowing violation of c. 93A, and any other relief which the Court deems just and proper.

## COUNT II

(Violation of c. 93A – AmWins)

45. Plaintiff repeats herein the allegations set forth in paragraphs 1 to 44 above.

46. The acts of AmWins violated G.L. c. 176D, §§ 3(9) (d) and (f) and constitute unfair or deceptive acts or practices under G.L. c. 93A. AmWins engaged in these unfair or deceptive acts or practices willfully and with knowledge that it was violating Alex's rights under c. 176D and c. 93A.

47. The unfair or deceptive acts or practices committed by AmWins occurred in the conduct or trade or commerce.

48. As a direct and proximate result of the unfair or deceptive acts or practices of AmWins, Alex suffered harm.

49. On or about November 27, 2019, Plaintiff mailed a demand letter to AmWins, pursuant to G.L. c. 93A, section 9(3). The demand letter identified Alex as the claimant, reasonably described Defendant's unfair or deceptive acts or practices and reasonably described the injury suffered by Alex as a result. A true and correct copy of Plaintiff's demand letter to AmWins is attached hereto as Exhibit C.

50. AmWins received the demand letter and failed to make a reasonable offer of settlement within thirty days. A true and correct copy of AmWin's response to Plaintiff's demand letter is attached hereto as Exhibit D.

WHEREFORE, Plaintiff demands judgment against AmWins in an amount to be determined, together with interest, costs, Plaintiff's reasonable attorneys' fees, double or treble damages for Defendant's willful and knowing violation of c. 93A, and any other relief which the Court deems just and proper.

AIG 0L02 3/5/2020

## COUNT III

(Violation of c. 93A – AIG Claims)

51. Plaintiff repeats herein the allegations set forth in paragraphs 1 to 50 above.

52. The acts of AIG Claims violated G.L. c. 176D, §§ 3(9) (d) and (f) and constitute unfair or deceptive acts or practices under G.L. c. 93A. AIG Claims engaged in these unfair or deceptive acts or practices willfully and with knowledge that it was violating Alex's rights under c. 176D and c. 93A.

53. The unfair or deceptive acts or practices committed by AIG Claims occurred in the conduct or trade or commerce.

54. As a direct and proximate result of the unfair or deceptive acts or practices of AIG Claims, Alex suffered harm.

55. On or about October 28, 2019, Plaintiff mailed a demand letter to AIG Claims, pursuant to G.L. c. 93A, section 9(3). The demand letter identified Alex as the claimant, reasonably described Defendant's unfair or deceptive acts or practices and reasonably described the injury suffered by Alex as a result. A true and correct copy of Plaintiff's demand letter to AIG Claims is attached hereto as Exhibit E.

56. AIG Claims received the demand letter and made no offer of settlement within thirty days.

WHEREFORE, Plaintiff demands judgment against AIG Claims in an amount to be determined, together with interest, costs, Plaintiff's reasonable attorneys' fees, double or treble damages for Defendant's willful and knowing violation of c. 93A and

11

for Defendant's bad faith refusal to grant relief upon demand, and any other relief which the Court deems just and proper.

                                              Respectfully submitted,

                                              Jeffrey S. Raphaelson
                                              BBO#552459
                                              Raphaelson Law
                                              15 Broad Street, 7th Floor
                                              Boston, MA 02109
                                              (617) 204-9800
                                              jsr@raphlaw.com

Dated: February 11, 2020                Attorneys for Plaintiff

| CIVIL ACTION COVER SHEET | DOCKET NUMBER | Trial Court of Massachusetts<br>The Superior Court |
|---|---|---|
| PLAINTIFF(S): Heidi Hache, as Mother and Next Friend of Alexander Hache<br>ADDRESS: Hudson, MA | | COUNTY<br>Middlesex |
| | DEFENDANT(S): AIG Claims, Inc., Granite State Insurance Company, and AMWINS Group, Inc. | |
| ATTORNEY: Jeffrey S. Raphaelson<br>ADDRESS: Raphaelson Law<br>15 Broad Street, Suite 701, Boston, MA 02109 | ADDRESS: | |
| BBO: 552459 | | |

TYPE OF ACTION AND TRACK DESIGNATION (see reverse side)

| CODE NO. | TYPE OF ACTION (specify) | TRACK | HAS A JURY CLAIM BEEN MADE? |
|---|---|---|---|
| B99 | Chapter 176D violations | F | ☐ YES  ☒ NO |

*If "Other" please describe:

Is there a claim under G.L. c. 93A?  ☒ YES  ☐ NO

Is this a class action under Mass. R. Civ. P. 23?  ☐ YES  ☒ NO

**STATEMENT OF DAMAGES PURSUANT TO G.L. c. 212, § 3A**

The following is a full, itemized and detailed statement of the facts on which the undersigned plaintiff or plaintiff's counsel relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**
(attach additional sheets as necessary)

A. Documented medical expenses to date:
   1. Total hospital expenses ......................................................... $_____
   2. Total doctor expenses ........................................................... $_____
   3. Total chiropractic expenses ................................................... $_____
   4. Total physical therapy expenses ............................................ $_____
   5. Total other expenses (describe below) ................................... $_____
                                                                      Subtotal (A): $_____

B. Documented lost wages and compensation to date ................... $_____
C. Documented property damages to date .................................. $_____
D. Reasonably anticipated future medical and hospital expenses .. $_____
E. Reasonably anticipated lost wages ......................................... $_____
F. Other documented items of damages (describe below) ............ $_____

G. Briefly describe plaintiff's injury, including the nature and extent of injury:
As a result of defendants' violation of Chapter 93A and Chapter 176D, plaintiff suffered actual damages greater than $50,000

TOTAL (A-F): $ >50,000

**CONTRACT CLAIMS**
(attach additional sheets as necessary)

☐ This action includes a claim involving collection of a debt incurred pursuant to a revolving credit agreement. Mass. R. Civ. P. 8.1(a).
Provide a detailed description of claim(s):

TOTAL: $_____

Signature of Attorney/ Unrepresented Plaintiff: X _____  Date: 2/11/20

RELATED ACTIONS: Please provide the case number, case name, and county of any related actions pending in the Superior Court.

**CERTIFICATION PURSUANT TO SJC RULE 1:18**

I hereby certify that I have complied with requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods of dispute resolution.

Signature of Attorney of Record: X _____  Date: 2/11/20

| CIVIL TRACKING ORDER (STANDING ORDER 1- 88) | DOCKET NUMBER 2081CV00463 | Trial Court of Massachusetts The Superior Court |
|---|---|---|
| CASE NAME: Alexander Hache By his/her Mother and/or Next Friend Heidi Hache vs. AIG Claims, Inc. et al | | Michael A. Sullivan, Clerk of Court Middlesex County |
| TO: Jeffrey Raphaelson, Esq. Raphaelson, Attorneys at Law 15 Broad St 7th Floor Boston, MA 02109 | | COURT NAME & ADDRESS Middlesex County Superior Court - Woburn 200 Trade Center Woburn, MA 01801 |

## TRACKING ORDER - F - Fast Track

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated.

**STAGES OF LITIGATION**                                                      **DEADLINE**

| | SERVED BY | FILED BY | HEARD BY |
|---|---|---|---|
| Service of process made and return filed with the Court | | 05/18/2020 | |
| Response to the complaint filed (also see MRCP 12) | | 06/17/2020 | |
| All motions under MRCP 12, 19, and 20 | 06/17/2020 | 07/17/2020 | 08/17/2020 |
| All motions under MRCP 15 | 06/17/2020 | 07/17/2020 | 08/17/2020 |
| All discovery requests and depositions served and non-expert depositions completed | 12/14/2020 | | |
| All motions under MRCP 56 | 01/13/2021 | 02/12/2021 | |
| Final pre-trial conference held and/or firm trial date set | | | 06/14/2021 |
| Case shall be resolved and judgment shall issue by | | | 02/17/2022 |

The final pre-trial deadline is <u>not the scheduled date of the conference</u>. You will be notified of that date at a later time.
Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.
This case is assigned to

| DATE ISSUED 02/18/2020 | ASSISTANT CLERK Martha Fulham | PHONE (781)939-2760 |
|---|---|---|

Date/Time Printed: 02-18-2020 15:08:04                                                     SCV026\ 08/2018