# Morrison Mahoney LLP

COUNSELLORS AT LAW

William A. Schneider, Partner
Direct Dial:  617 439-7573
Direct Fax:   617 342-4951
wschneider@morrisonmahoney.com

250 SUMMER STREET
BOSTON, MA 02210-1181
617-439-7500

MASSACHUSETTS
BOSTON
FALL RIVER
SPRINGFIELD
WORCESTER

CONNECTICUT
HARTFORD
STAMFORD

ENGLAND
LONDON

NEW HAMPSHIRE
MANCHESTER

NEW JERSEY
PARSIPPANY

NEW YORK
NEW YORK

RHODE ISLAND
PROVIDENCE

November 4, 2019

*Via E-Mail:  jsr@raphlaw.com*
*And First Class Mail*

Jeffrey S. Raphaelson, Esq.
**Raphaelson Attorneys at Law**
15 Broad Street, 7th Floor
Boston MA 02109

   **Re:**  **Insured:**       **Wachusett Mountain Assoc.**
         **Claimant:**    **Alexander Hache**
         **Claim No.:**   **3157464777US**
         **Date of Loss:** **March 8, 2015**
         **Our File No.:**  10081363

Dear Attorney Raphaelson:

     This law firm represents Granite State Insurance Company ("Granite State") in connection with the matter referenced above.  We write on behalf of our client concerning your October 4, 2019, correspondence addressed to Granite State and AIG Domestic Claims, Inc., care of Attorney Matthew Sweet with the firm of Hamel, Marcin, Dunn, Reardon & Shea, PC.  Please be advised that neither Attorney Sweet nor his firm are authorized to accept service of demand letters for Granite State or AIG Claims, Inc., (formerly AIG Domestic Claims, Inc.).[1]

     Nevertheless, following our clients receipt of your letter, we undertook to review the handling of this personal injury claim in light of your assertions that they Granite State and its claim administrator committed unlawful insurance claim settlement practices that violate G.L. c. 93A.  This undertaking revealed that, to date, Granite State, proceeded appropriately with its handling of this matter where liability was not reasonably clear, and that the company complied fully with its contractual obligations and statutory duties.  For these reasons, Granite State and its claims administrators must respectfully reject your

---

[1] Please also note that AmWins served as the program claims administrator for Granite State under primary policy #02-LX-011739248-2 under the supervision of AIG Claims, Inc.

MORRISON MAHONEY LLP

Jeffrey S. Raphaelson, Esq.
November 4, 2019
Page 2

assertion they violated G.L. c. 176D, otherwise engaged in unfair deceptive acts or practices unlawful under c. 93A.

At the outset, we question the propriety of a post-judgment c. 93A demand for settlement relief to an insurer that is only sent *after* the insurer has fully paid and fully satisfied a final judgment obtained by the plaintiff. A legally sufficient demand letter must give reasonable notice of the injuries suffered and the relief demanded in a manner that provides the recipient with an opportunity to review the facts and law so as to decide upon a reasonable offer of settlement. *Spring v. Geriatric Authority of Holyoke*, 394 Mass. 294 (1985). At no time before the judgment in the underlying case or payment of that judgment did you or Mr. Hache demand any relief under c. 93A or raise concerns about how Granite State, AIG Claims, or the program administrator handled the claim. This is not surprising since, as set forth in greater detail below, liability, which includes causation and damages, was never reasonably clear. Regardless, given the timing of your demand letter in relation to the outcome of the underlying case, and the fact Granite State and the excess insurer have paid, in full, the judgment and all related interest, it is unclear exactly what specific relief Mr. Hache believes he is due from Granite State under the circumstances.

Turning to the facts of the claim, those concerning the defendant's legal responsibility for the accident are presently not subject of debate. Initial indications raised questions about whether and to what extent the defendant was liable to the plaintiff, with each side supporting its position with expert opinions. As you know, the defense ultimately conceded liability for the incident before trial based on facts disclosed later in the case during discovery. The fact that the defendant allegedly committed perjury and/or spoliated evidence to cover up fault for the incident in no way arose from or implicates conduct on the part of Granite State or its authorized representatives in the handling of the claim or efforts to negotiate settlement.

Briefly, on March 8, 2015, Alexander Hache, who was then 12 years old, fell 30 feet from a chairlift at the Wachusett Mountain Ski Area striking the ground. Mr. Hache had attempted to load the Polar-Express four-person chairlift; but he failed to become properly seated. An adult sitting next to him was able to hold him by a hand as he dangled from below the chair as the chair continued moving forward up the mountain. Lift riders immediately called out to the lift operator to stop the lift. After a period, the lift was brought to a brief stop and then was restarted at a faster pace in an attempt to get Mr. Hache to the top of the lift. As the lift again continued in motion, his ski encountered a snow-gun, and with the vibration of the chair as it went over support tracks, he slipped from the hand of the other rider falling to the ground. As a result, Mr. Hache sustained a non-displaced pelvic fracture and compression fractures of T11, T12, L3 and L4. He also suffered a

MORRISON MAHONEY LLP

Jeffrey S. Raphaelson, Esq.
November 4, 2019
Page 3

closed head injury consistent with a concussion which he claimed left him with permanent cognitive impairment.

In terms of orthopedic damages, there was little dispute, based on an objective review of the medical evidence, that Mr. Hache recovered well from his orthopedic injuries and had no clear permanent limitations relative to those injuries.  In fact, he was able to run cross-country and compete on the high school track team.  The critical damages issues in the case concerned the plaintiff's ability to establish a brain injury resulting in permanent cognitive impairment, and his more recent physical symptoms. The plaintiff argued that Mr. Hache sustained a diffuse brain injury resulting in functional impairments to memory, executive function and other related areas and that he has sustained an economic loss to his earnings capacity in the range of $1.5 to $2 million.  This evidence was hardly unequivocal and most certainly subject to fair debate and challenge by the defense since Mr. Hache had excelled at times in school, and there was conflicting experts opinions and no objective evidence of clear permanent impairment.  In the end, the jury awarded Alex only $275,000.00 for his future lost earnings due to the alleged cognitive impairment, an amount significantly less than what the plaintiff claimed and sought at trial.

More specifically, the plaintiff's own medical records and course of treatment, together with the defendant's evaluation as informed by the medical experts retained by counsel, raised genuine doubts about the severity of the injuries being claimed and the monetary value of the case for settlement purposes.  The defense had Mr. Hache's medical records reviewed by Stephen Sarfaty, Psy.D, Neuropsychologist with Comprehensive Neuropsychological Services, P.C.  Dr. Sarfaty did not believe that the plaintiff had any acquired brain or psychological impairment attributable to this incident (or the prior concussion).

Martha Shenton, Ph.D., Professor, Department of Psychiatry and Department of Radiology and Director, Psychiatry Neuroimaging Laboratory at the Brigham and Women's Hospital also assisted with the defense.  Dr. Shenton evaluated the neuroimaging data and its interpretation by Dr. Benson.  She concluded that DTI is not standardized for use in the clinic and at the patient level.  She opined that Dr. Benson had inappropriately used the post-processing analysis tools to compareMr. Hache to a poorly matched group of controls (other individuals) who are imaged on magnets of different strengths using different imaging sequences.  Accordingly, there were credible concerns about the interpretation of the DTI findings, including methodological and statistical problems, problems with the healthy control sample and problems with the assumptions regarding the validity of the approach used that provided a legitimate basis

MORRISON MAHONEY LLP

Jeffrey S. Raphaelson, Esq.
November 4, 2019
Page 4

for defense experts to opine that Dr. Benson's claims were overstated, speculative, and not valid.

Lastly, Nancy L. Segreve, a Certified Rehabilitation Counselor with Occupational Resource Network weighed in about the plaintiff's vocational prospects. She felt that he had developed coping strategies, and with accommodations focused on extended time for tests and projects, he had achieved academic success despite these limitations. Her conclusion was that there are no vocational losses as a result of the injuries from his fall. Again, the jury seemed to agree, at least in part, that any cognitive deficit was not as severe or impactful on plaintiff's future earnings as claimed.

With regards to efforts to settle the case, the parties voluntarily attended a mediation with Brian Mone on April 3, 2018. The facts and available evidence at that time did not support or establish clear liability on the part of the defendant for your settlement demand of $9,000,000.00, which you made at the outset of the mediation without any prior notice to the defendant or Granite State. The disparity between the parties' respective valuations of the case resulted in the early termination of the mediation process. Later efforts to revisit settlement at mediation were undermined by plaintiff's demand for a substantial offer ahead of time despite the fact that the excess insurer planned to participate.

As you know, Granite State later increased its offer of settlement to $425,000.00. This offer reflected the ongoing, genuine dispute and disagreement bearing on the plaintiff's alleged damages. Those damages remained a moving target up until the trial in July 2019, since the plaintiff presented evidence of more recent symptoms and treatment. When it became apparent that additional sums were necessary to settle the case before trial, Granite State authorized an offer of the full $1,000,000.00 primary limit. Settlement negotiations continued through trial, with the plaintiff spurning an offer from the excess liability insurer and primary in the amount of $3,000,000.00. Ultimately, the jury's verdict was more in line with the insurance companies' final settlement offer than the plaintiff's last settlement demand.

You raise two specific contentions Granite State's alleged conduct, which you believe violate the provisions of Chapter 93A. First, you allege that Granite State failed to pay the claim without conducting a reasonable investigation based upon all available information in violation of G.L. c. 176D, §3(9)(d). Second, you claim that Granite State violated G.L. c. 176D, §3(9)(f) because it failed to effectuate a prompt, fair and equitable settlement of the claim after liability became reasonably clear. Granite State denies these allegations, and we address each of contention below.

MORRISON MAHONEY LLP

Jeffrey S. Raphaelson, Esq.
November 4, 2019
Page 5

First, you contend Granite State violated G.L. c. 176D, § 9(3)(d) because it allegedly refused to pay the claim without conducting a reasonable investigation based upon all available information. Nowhere in your letter, however, have you identified any information that Granite State or its claim administrators failed, refused, or neglected to consider. To prevail on a claim under Section 3(9)(d), a claimant must show what the insurer actually failed to do, or what additional steps the insurer could have taken. *O'Sullivan v. Hingham Mut. Fire Ins. Co.*, 2009 WL 2438329, at *3 (Mass. App. Ct. July 30, 2009). "In other words, [a claimant must detail] what a reasonable investigation should have entailed." *Id*. No such showing is made in your letter. Instead, you simply conclude that the insurer's investigation of the claim was inadequate. This type of reasoning is not a sufficient basis to establish a violation of G.L. c. 176D, § 9(3)(d). Indeed, and contrary to your assertion, Granite State conducted a reasonable investigation and considered all available information in the context of informing its decisions regarding settlement.

Second, you allege Granite State violated G.L. c. 176D, §3(9)(f) because it failed to effectuate a prompt, fair and equitable settlement of the claim after liability became reasonably clear. However, Granite State had no legal obligation to tender an offer of settlement because the defendant's liability was not reasonably clear based on the parties' genuine dispute over damages. *See Hopkins v. Liberty Mut. Ins. Co.*, 434 Mass. 556 (2001). In this regard, the term "liability" encompasses both fault and damages. *See Hopkins*, 434 Mass. at 566. Deciding whether liability is "reasonably clear" involves "an objective standard of inquiry into the facts and the applicable law." *Demeo v. State Farm Mut. Auto. Ins. Co.*, 38 Mass. App. Ct. 955, 956 (1995). The question whether liability is reasonably clear depends on "'whether a reasonable person, with knowledge of the relevant facts and law, would probably have concluded, for good reason, that the insurer was liable to the plaintiff.'" *Nyer v. Winterthur Int'l*, 290 F.3d 456, 461 (1st Cir. 2002) (*quoting Demeo*, 38 Mass. App. Ct. at 956). This objective standard takes into account the totality of the circumstances. It does not rely on subjective considerations or conclusory allegations.

An insurer such as Granite State is "not required to put a fair and reasonable offer on the table until liability and damages [are] apparent" or if "there exist[s] a legitimate difference of opinion as to the extent" of liability. *Bobick v. U.S. Fid. & Guar. Co.*, 439 Mass. 652, 658-60 (2003). Suffice it to say that each side presented evidence in support of their respective positions on damages which, in our view, belies the allegation that liability on the part of the defendant was reasonably clear within the meaning of G.L. c. 176D, §3(9)(f). More to the point, our clients did make several good faith efforts to effectuate a settlement of the claim. Those efforts were unsuccessful based on your subjective view about the settlement value of the claim and unwillingness to engage in settlement discussions absent concessions from Granite State to offer its limit as a condition precedent to further negotiations.

M%%orrison M%%ahoney llp

Jeffrey S. Raphaelson, Esq.
November 4, 2019
Page 6

We also note that the parties' good faith disagreement over the value of the case is not actionable under c. 93A. Granite State its representatives had legitimate, good faith doubt that the insured's liability is reasonably clear, and questioned, in good faith, the justification for the plaintiffs' extraordinary $9,000,000.00 settlement demand which, at one point, you reduced to $5,000,000.00 only to increase the demand back to $9,000,000.00 before trial. Indeed, even assuming liability were reasonably clear, which it was not, the reasonable settlement value of the case was nowhere near this sum.

Well-established precedent indicates that Granite State and its representatives did not engage in any unfair or deceptive conduct which violates G.L. c. 176D or G.L. c. 93A simply because they disagreed with the plaintiff's settlement demand or views about fault or damages. Granite State, on several occasions, made good faith efforts to effectuate settlement and, therefore, fulfilled its statutory obligations to the plaintiff. Perfection is not the standard that Chapter 176D imposes upon the handling of a claim. Moreover, several decisions hold that where multiple reasons support an insurer's evaluation of a claim and conduct during settlement negotiations, there is no violation of either G.L. c. 93A or G.L. c. 176D. *See, e.g., Bobick*, 439 Mass. at 658-62; *Guity v. Commerce Ins. Co.*, 36 Mass. App. Ct. 339, 343-44 (1994).

This is also true in situations where an insurer is ultimately found to have been incorrect or even low in its evaluation. *See Forcucci v. United States Fidelity & Guar. Co.*, 11 F.3d 1 (1st Cir. 1993)(recognizing that negotiation of a settlement is a legitimate bargaining process in which an insurer is only obligated to make an offer within the scope of reasonableness, which is considered in light of the situation as a whole. In such circumstances the insurer has not violated the statute, even if a judge or jury would ultimately find the insurer's evaluation of a claim was incorrect or low). Granite and AIG Claims have consistently employed their honest business judgment in good faith in making its evaluation of the claim for settlement purposes and is not held to standards of omniscience or perfection. *See Peckham v. Continental Cas. Ins. Co.*, 895 F.2d 830, 835 (1st Cir. 1990).

Moreover, as noted at the outset, no Massachusetts case law has expressly sanctioned a post-judgment demand for relief under c. 93A after the judgment is fully satisfied, based on the allegation that the insurer failed to effectuate settlement beforehand. Notwithstanding the above, in an effort to resolve your client's belated c. 93A claims, Granite State is prepared to make a reasonable tender of settlement in relation to injury that may have actually been suffered by your client as provided by the "safe harbor" provisions of c. 93A.

M<span>ORRISON</span> M<span>AHONEY</span> LLP

Jeffrey S. Raphaelson, Esq.
November 4, 2019
Page 7

In your letter, you allege the insurer's statutory transgressions resulted in damages: 1) measured by the underlying judgment; 2) accrued interest; 3) attorney's fees as evidenced in a referenced G.L. c. 231, §6F motions; 4) scheduled litigation expenses; and 5) your fees to author the c. 93A letter.  However, as noted below, the majority of these items do not appear to be damages presently owed to your client, or injury caused by the insurer's alleged conduct.

First, to the extent that your client allegedly suffered damages measured by the judgment which entered in the underlying tort action, Granite State and the excess insurer have already paid the judgment, in full, inclusive of both pre-judgment interest and post-judgment interest.  Therefore, the basis for these claimed damages no longer exists.  This renders your demand for relief based upon the judgment and accrued interest both defective and improper.  Your client is not entitled to these amounts again.

As for attorney's fees, plaintiff would have had to pay his attorney's fee whether the case resolved by settlement or judgment.  Your letter does not reflect that Mr. Hache incurred any greater attorney's fee as a result of having to take his case to trial.  Further, to the extent you apparently base any claim to attorney's fees on the conduct of the underlying defendant, that conduct is presently the subject of unresolved, opposed motions pending before the court.  More significantly, however, is the fact that an insurer such as Granite State does not insure its policyholder against the consequences of fraud or the type of conduct alleged in your motion and it is not responsible for the activities alleged.   As such, your client has not incurred attorney fees as a result of the actions of Granite State or its claims representations regardless of the outcome of the pending motion.

Finally, to the extent that plaintiff has incurred litigation expenses that have not been otherwise reimbursed and that may arguably be causally related to this case not resolving sooner as argued by plaintiff's c. 93A failure to settle allegations, Granite State hereby tenders the sum of $104,389.14 as attached to your October 4, 2019 letter demand representing incurred litigation expenses, as well as an additional $9,000.00 representing the attorney fees claimed to draft the demand letter.  As noted above, this tender is made pursuant to the "safe harbor" provisions of c. 93A, and should not be considered an admission of liability in subsequent proceedings, if any.

MORRISON MAHONEY LLP

Jeffrey S. Raphaelson, Esq.
November 4, 2019
Page 8

     We hope the foregoing responds to your concerns.  In the event you have any questions, please do not hesitate to call or write.

                   Sincerely,

                   MORRISON MAHONEY LLP

                   *William A. Schneider*

                   William A. Schneider

WAS/ckb