UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| ALEXANDER HACHE, | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) C.A. 1:20-CV-10652-PBS |
| AIG CLAIMS, INC., GRANITE STATE INSURANCE | ) |
| COMPANY, and AMWINS PROGRAM | ) |
| UNDERWRITERS, INC. | ) |
| Defendants. | ) |

_____ )

## FIRST AMENDED COMPLAINT

## PARTIES

1.     Plaintiff Alexander Hache resides in Hudson, Middlesex County, Massachusetts.

2.     Defendant AIG Claims, Inc. ("AIG Claims") is a corporation with a usual place of business at 99 Summer Street, Boston, Massachusetts. AIG Claims receives new claims addressed to P.O. Box 25967, Shawnee Mission, Kansas.

3.     Defendant Granite State Insurance Company ("Granite State") is a corporation with a principal place of business in Concord, New Hampshire.

4.     Defendant AmWins Program Underwriters, Inc. is a Pennsylvania corporation (AmWins).

## FACTS COMMON TO ALL COUNTS

5.     On April 12, 2016, Alexander Hache ("Alex") filed a lawsuit against Wachusett Mountain Ski Area, Inc. ("Wachusett") in the Middlesex Superior Court, Civil Action No.: 1681CV01055 (the "Underlying Action").

6.    Granite State provided a defense and $1 million of indemnity insurance coverage to Wachusett in the Underlying Action under primary policy number 000011739248 (the "Primary Policy").

7.    AmWins served as the program claims administrator for Granite State under the Primary Policy, and participated in the claims handling of the Underlying Action.  At all times relevant to the issues presented in this complaint, AmWins was Granite State's agent acting within the scope of its agency relationship.

8.    AIG Claims participated in, directed and/or supervised the claims handling of the Underlying Action. At all times relevant to the issues presented in this complaint, AIG was Granite State's agent acting within the scope of its agency relationship.

9.    On or about March 8, 2015, Alex approached the load here line of the Polar Express high-speed, detachable quad chair lift ("Polar Express Lift") at Wachusett Mountain Ski Area from the singles line to board a chair with three adult skiers whom he did not know.

10.    While in the loading area, Alex was not able to seat himself securely onto the chair, and as the chair moved through the loading area his body slipped off the chair, and he visibly was not seated in the chair.

11.    No Wachusett employee provided any help when Alex loaded onto the chair, or slowed or stopped the lift in the loading area to allow him to seat himself securely in the chair.

12.    While in the loading area, riders on Alex's chair reached out and held onto him, and he and the other riders yelled loudly to stop the lift.

13.    While in the loading area and as the chair began its ascent up the mountain, no Wachusett employee stopped the lift despite many persons yelling to stop the lift and the visible danger to Alex.

14.    The lift continued to ascend the mountain with Alex hanging from it for about three minutes. Shortly after Alex's skis hit a snowmaking gun Wachusett left underneath the chair lift in contravention to its usual business practice, the other chair riders lost hold of Alex and he fell thirty feet to the ground below.

15.    The Massachusetts Department of Public Safety ("DPS") performed an investigation into the circumstances surrounding Alex's incident and concluded that Wachusett failed to load Alex on the chair as required by Massachusetts regulations and failed to maintain the ski area in a "reasonably safe condition or manner" in violation of Massachusetts General Law.

16.    AmWins received a copy of the DPS report of its investigation of Alex's incident between April 2015 and June 2015.

17.    By April 12, 2016, the date Alex filed the Underlying Action, the Defendants knew the following facts regarding Alex's incident:

> (a)    The first and foremost duty of the lift attendant at the base of the Polar Express Lift is to ensure the safe load of each and every rider on each and every chair;

> (b)    On March 8, 2015, loading each and every rider safely onto the Polar Express Lift, including Alex, was the Polar Express Lift attendant's number one priority;

(c)     Per Wachusett's training protocols, in effect on March 8, 2015, the Polar Express Lift attendant at the base of the lift must watch and listen for problems to ensure that each rider loads each chair safely;

(d)     Per Wachusett's training protocols, in effect on March 8, 2015, the Polar Express Lift attendant at the base of the lift is required to assist any rider not able to sit securely on the chair, or to stop the lift immediately;

(e)     Per Wachusett's training protocols, in effect on March 8, 2015, if someone yells "stop the lift," the Polar Express Lift attendant at the base of the lift is required to immediately stop the lift irrespective of whether he understands the reason why the person is yelling to stop the lift;

(f)     Neither the Polar Express Lift attendant, nor any other Wachusett employee, maintained surveillance of Alex's chair when he and the other riders loaded, as the chair moved through the loading area, and when the chair left the loading area and began its ascent up the mountain; and

(g)     Wachusett failed to exercise reasonable care in the operation of the Polar Express Lift when Alex loaded the lift and as his chair moved through the loading area and ascended the mountain. The Polar Express Lift operator and attendant failed to confirm a safe and clean load of Alex's chair, and failed to

4

stop the lift or otherwise respond to Alex's emergency as required.

18.    The facts set forth in ¶ 17 (a) – 17 (g) were never in genuine dispute in the Underlying Action.

19.    On September 29, 2016, Alex produced in the Underlying Action medical records and billing information relating to the injuries he sustained in the fall.  The records established that Alex sustained five vertebral fractures and a pelvis fracture for which he underwent two rounds of physical therapy, post-traumatic stress disorder for which he underwent counseling, and a concussion with post-concussion symptoms for which he received treatment.  The billing records totaled more than $30,000.

20.    The injuries evidenced by the medical records, and the billing, referenced in ¶ 18 were never in genuine dispute in the Underlying Action.

21.    In January 2017, Alex testified in his deposition that he didn't know exactly what happened that led him to sit on the arm of the chair, but when he tried to sit down there was no space between him and Mr. Lavigne, the rider to his immediate left.  Depositions taken of the three other chair riders later in 2017, before September, confirmed their earlier witness statements that they knew of no lack of care on Alex's part. Defendants never possessed any admissible evidence from any source that Alex failed to use due care when loading the chair.

22.    Defendants knew or believed by September 2017 that Wachusettt was 100% responsible for Alex's incident.

23.    In his deposition in January 2017, Alex testified that he had ongoing physical and cognitive difficulties relating to his injuries, he could no longer participate in the contact sports he loved, and he no longer skied because of the injuries he sustained in the fall.

24.    Alex's testimony set forth in ¶ 23 was never in genuine dispute in the Underlying Action.

25.    In May 2017, Alex's mother, Heidi Hache, gave corroborating deposition testimony on the elements of damage set forth in ¶ 23. Defendants never possessed any admissible evidence to rebut Alex's testimony set forth in ¶ 23.

26.    In May or June 2017, Defendants received Dr. McGrath's first neuropsychological evaluation in which Dr. McGrath opined that Alex sustained significant and permanent cognitive impairment as a result of the mild traumatic brain injury he sustained in the fall.

27.    By the end of September 2017, Defendants knew that Wachusett had falsified a certified training certificate of an employee named Jacob Shepard ("Certified Transcript") in order to cover up that Dylan Wilson, the Wachusett employee acting as the base lift attendant when Alex loaded the chair, had not taken the required online Bullwheel training course.

28.    By the end of September 2017, Defendants knew that Wachusett had committed perjury and spoliated evidence in the Underlying Action in order to hide the falsification of the Certified Transcript.

29.    By the end of September 2017, Defendants knew Wachusett had engaged in bad faith litigation conduct designed to conceal its liability for Alex's injuries.

30.    By the end of September 2017, Wachusett's liability was reasonably clear and Granite State was required under M.G.L., c. 176D to promptly make a reasonable offer of settlement to include at a minimum compensation for the damages not in material dispute set forth in ¶¶ 19 and 23 above.

31.    Granite State did not promptly make an offer of settlement after Wachusett's liability became reasonably clear.

32.    Rather, at a mediation that took place on April 3, 2018, Granite State's agent offered $15,000, and only $15,000, to settle Alex's claim. Granite State's agent refused to increase the offer from $15,000 in response to Alex's reduction of his demand from $10 million to $9 million even though its agent had substantially greater settlement authority. The mediation ended abruptly when the agent refused to increase the $15,000 offer.

33.    At the mediation, and thereafter, Defendants deliberately withheld from Alex a reasonable offer of settlement despite knowing Wachusett's liability for the uncontested injuries and expenses set forth in ¶¶ 19 and 23 above was reasonably clear.

34.    After learning of Wachusett's bad faith litigation conduct, Defendants controlled or authorized actions undertaken in the Underlying Action designed to conceal from the court the truth about Wachusett's bad faith litigation conduct and its liability for Alex's injuries.

35.    At the mediation, and thereafter, Defendants took the steps outlined in ¶¶ 31-34 above hoping to wear down Alex and force him to accept a lower offer, knowing their conduct violated c. 176D and c. 93A. Defendant AIG Claims employed similar tactics in prior cases.

36.    Granite State made two additional offers of settlement before the trial in July 2019.  On November 2, 2018, after Wachusett admitted liability conditionally, Granite State served on Alex's counsel an offer of judgment for $425,000. In late June 2019, shortly before the trial, Granite State offered the $1 million coverage limit.

37.    On July 16, 2019, after a five-day trial, a Middlesex county jury returned a verdict in favor of Alex for $3,275,000.00 in the Underlying Action. Judgment in the amount of $4,560,105.20 entered on July 19, 2019.

38.    Granite State did not disclaim coverage for Wachusett's bad faith litigation conduct in the Underlying Action, despite Wachusett's apparent material breach of the cooperation clause in the Primary Policy. Rather, following the trial, Granite State forwarded to Alex an indemnity payment of $1,000,000 and a "Supplemental Payment" of $417,245 against the judgment.

<u>COUNT I</u>

(Violation of c. 93A – Granite State)

39.    Plaintiff repeats herein the allegations set forth in paragraphs 1 to 38 above.

40.    The acts of Granite State violated G.L. c. 176D, §§ 3(9) (d) and (f) and constitute unfair or deceptive acts or practices under G.L. c. 93A.  Granite State

engaged in these unfair or deceptive acts or practices willfully and with knowledge that it was violating Alex's rights under c. 176D and c. 93A.

41.     The unfair or deceptive acts or practices committed by Granite State occurred in the conduct or trade or commerce.

42.     As a direct and proximate result of the unfair or deceptive acts or practices of Granite State, Alex suffered harm.

43.     On or about October 4, 2019, Plaintiff mailed a demand letter to Granite State, pursuant to G.L. c. 93A, section 9(3). The demand letter identified Alex as the claimant, reasonably described Defendant's unfair or deceptive acts or practices and reasonably described the injury suffered by Alex as a result. A true and correct copy of Plaintiff's demand letter to Granite State is attached hereto as Exhibit A.

44.     Granite State received the demand letter and failed to make a reasonable offer of settlement within thirty days.  A true and correct copy of Granite State's response to Plaintiff's demand letter is attached hereto as Exhibit B.

WHEREFORE, Plaintiff demands judgment against Granite State in an amount to be determined, together with interest, costs, Plaintiff's reasonable attorneys' fees, double or treble damages for Defendant's willful and knowing violation of c. 93A, and any other relief which the Court deems just and proper.

COUNT II

(Violation of c. 93A – AmWins)

45.     Plaintiff repeats herein the allegations set forth in paragraphs 1 to 44 above.

46.     The acts of AmWins violated G.L. c. 176D, §§ 3(9) (d) and (f) and constitute unfair or deceptive acts or practices under G.L. c. 93A. AmWins engaged in these unfair or deceptive acts or practices willfully and with knowledge that it was violating Alex's rights under c. 176D and c. 93A.

47.     The unfair or deceptive acts or practices committed by AmWins occurred in the conduct or trade or commerce.

48.     As a direct and proximate result of the unfair or deceptive acts or practices of AmWins, Alex suffered harm.

49.     On or about November 27, 2019, Plaintiff mailed a demand letter to AmWins, pursuant to G.L. c. 93A, section 9(3). The demand letter identified Alex as the claimant, reasonably described Defendant's unfair or deceptive acts or practices and reasonably described the injury suffered by Alex as a result. A true and correct copy of Plaintiff's demand letter to AmWins is attached hereto as Exhibit C.

50.     AmWins received the demand letter and failed to make a reasonable offer of settlement within thirty days. A true and correct copy of AmWin's response to Plaintiff's demand letter is attached hereto as Exhibit D.

WHEREFORE, Plaintiff demands judgment against AmWins in an amount to be determined, together with interest, costs, Plaintiff's reasonable attorneys' fees, double or treble damages for Defendant's willful and knowing violation of c. 93A, and any other relief which the Court deems just and proper.

<u>COUNT III</u>

(Violation of c. 93A – AIG Claims)

51.     Plaintiff repeats herein the allegations set forth in paragraphs 1 to 50 above.

52.     The acts of AIG Claims violated G.L. c. 176D, §§ 3(9) (d) and (f) and constitute unfair or deceptive acts or practices under G.L. c. 93A. AIG Claims engaged in these unfair or deceptive acts or practices willfully and with knowledge that it was violating Alex's rights under c. 176D and c. 93A.

53.     The unfair or deceptive acts or practices committed by AIG Claims occurred in the conduct or trade or commerce.

54.     As a direct and proximate result of the unfair or deceptive acts or practices of AIG Claims, Alex suffered harm.

55.     On or about October 28, 2019, Plaintiff mailed a demand letter to AIG Claims, pursuant to G.L. c. 93A, section 9(3). The demand letter identified Alex as the claimant, reasonably described Defendant's unfair or deceptive acts or practices and reasonably described the injury suffered by Alex as a result. A true and correct copy of Plaintiff's demand letter to AIG Claims is attached hereto as Exhibit E.

56.     AIG Claims received the demand letter and made no offer of settlement within thirty days.

WHEREFORE, Plaintiff demands judgment against AIG Claims in an amount to be determined, together with interest, costs, Plaintiff's reasonable attorneys' fees, double or treble damages for Defendant's willful and knowing violation of c. 93A and

for Defendant's bad faith refusal to grant relief upon demand, and any other relief which the Court deems just and proper.

Respectfully submitted,

*/s/ Jeffrey S. Raphaelson*
_____
Jeffrey S. Raphaelson
BBO#552459
Raphaelson Law
15 Broad Street, 7th Floor
Boston, MA 02109
(617) 204-9800
jsr@raphlaw.com

Dated:  September 16, 2020          Attorneys for Plaintiff

**<u>CERTIFICATE OF SERVICE</u>**

I, Jeffrey S. Raphaelson, hereby certify that this document filed through the

CM/ECF system will be sent electronically to the registered participants identified on the

Notice of Electronic Filing (NEF) with paper copies sent to any non-registered

participants on this 16th day of September 2020.

<u>/s/ *Jeffrey S. Raphaelson*</u>
Jeffrey S. Raphaelson

# EXHIBIT A

# RAPHAELSON

ATTORNEYS AT LAW

15 Broad Street, 7th Floor   617.204.9800 (phone)
Boston, MA 02109   617.204.9801 (fax)
www.raphlaw.com

October 4, 2019

By Hand Delivery, Signature Required,
And By Email

Granite State Insurance Company
AIG Domestic Claims, Inc.
c/o Matthew Sweet, Esq.
Hamel, Marcin, Dunn, Reardon & Shea, PC
24 Federal Street, 11th Floor
Boston, MA 02110

Re:   Demand Letter Under Chapter 93A of the Massachusetts General Laws

Dear Sirs/Madams:

As you know, this firm represents Alex Hache in connection with the serious injuries he sustained in a fall from a moving high-speed quad chairlift at the ski area owned and operated by your insured, Wachusett Mountain Ski Area, Inc. ("Wachusett"). This letter constitutes a demand for settlement under Chapter 93A of the Massachusetts General Laws from Granite State Insurance Company and its claims handler, which I understand is AIG Domestic Claims, Inc. If AIG Domestic Claims, Inc. is not the correct AIG entity, then consider this letter to be directed to the correct AIG entity.

As you know, the accident involving Alex occurred on March 8, 2015, when then 12-year-old Alex sat on the arm of a chair while loading onto the Polar Express lift at Wachusett. Having never seated, Alex's body immediately slipped off the chair and turned, so that his back was to the mountain and his legs were under the chair as the chair moved through the load area. One of the other riders on the chair grabbed hold of Alex and the other riders immediately yelled "stop the lift," but the lift continued to ascend the mountain with Alex hanging from it for about three minutes. Shortly after Alex's skis hit a snowmaking gun Wachusett negligently left underneath the chair lift, the other chair riders lost hold of Alex and he fell thirty feet to the ground below. He sustained a permanent brain injury, five fractured vertebrae with permanent back pain, and a fractured pelvis as a result of the fall. On July 16, 2019, after a five-day trial, the jury returned a verdict in favor of Alex for $3,275,000. Judgment in the amount of $4,560,105,20 entered on July 19, 2019.

Granite State Insurance Company
AIG Domestic Claims, Inc.
c/o Matthew Sweet, Esq.
93A Demand Letter
October 4, 2019
Page 2

Immediately following the incident in March 2015, Wachusett and the
Massachusetts Department of Public Safety ("DPS") performed investigations into
the surrounding circumstances. Your agent, Mr. Sweet, was involved in the
investigations from near the outset. You possessed the results of the investigations
when they concluded. The DPS found that your insured, Wachusett, failed to load
Alex on the chair as required by Massachusetts regulations, and that it failed to
maintain the ski area in a "reasonably safe condition or manner" in violation of
Massachusetts General Law.

On April 12, 2016, Alex filed a complaint against Wachusett. At that time,
Wachusett's negligence was reasonably clear. Alex never seated properly in the
chair. The danger posed to Alex would have obvious to the lift attendant while the
chair was in the load area had he been watching or listening to the riders on the
chair, as he was required to do to ensure a safe load. He was not watching and
listening when Alex loaded the chair and as a result the chair ascended up the
mountain with Alex hanging from it for three minutes until he fell 30 feet to the
ground below. Wachusett failed to follow its own policy and retract the
snowmaking gun before operations began that day, and Alex hit it, which
contributed to the fall. These facts have never been in dispute.

On September 29, 2016, Alex produced in the litigation medical records and
billing information relating to the injuries he sustained in the fall. The records
established that Alex sustained five vertebral fractures and a pelvis fracture for
which he underwent two rounds of physical therapy, post-traumatic stress disorder
for which he underwent counseling, and a concussion with post-concussion
symptoms for which he received treatment. The billing records totaled more than
$30,000.

On or before November 1, 2016, liability was reasonably clear and you were
required under M.G.L., c. 176D to promptly make a reasonable offer of settlement.
No timely offer was made.

In January 2017, Alex testified in his deposition that he didn't know exactly
what happened that led him to sit on the arm of the chair, but when he sat down
there was no space between him and Mr. Lavigne, the rider to his immediate left. In
light of Alex's testimony, there was no evidentiary basis for you to claim that Alex
had any comparative fault for the accident. Depositions taken of the three other
chair riders later in 2017 confirmed their earlier witness statements that they knew

Granite State Insurance Company
AIG Domestic Claims, Inc.
c/o Matthew Sweet, Esq.
93A Demand Letter
October 4, 2019
Page 3

of no lack of care on Alex's part. There was never any evidence from any source that Alex failed to use due care when loading the chair. You knew in January 2017 that Wachusett was 100% responsible for the accident.

In his deposition in January 2017, Alex also testified that he had ongoing physical and cognitive problems relating to his injuries, he could no longer participate in the contact sports he loved, and he no longer skied. In May 2017, Heidi Hache gave corroborating deposition testimony on these elements of damage. Also in May 2017, we forwarded to you Dr. McGrath's first neuropsychological evaluation evidencing that Alex sustained significant and permanent cognitive impairment as a result of the mild traumatic brain injury he sustained in the fall.

By September 2017, you knew that Wachusett had falsified its training records to show that the Polar Express base lift attendant had taken the online Bullwheel training course, and that it had committed perjury and spoliated evidence to hide the fraud.

In April 2018, you made your first offer of settlement. At the mediation that took place on April 3, you offered $15,000 to settle Alex's claims. The mediation ended abruptly after you refused to increase your offer despite a $1 million reduction in Alex's demand from $10 million to $9 million.

On November 2, 2018, you increased your offer to $425,000, shortly after Wachusett admitted liability. You did not increase your offer to the $1 million coverage limit until late June 2019, shortly before the trial, despite knowing for many months that the fair value of Alex's claims exceeded $3 million.

I refer you to the litigation file in this case, including the depositions, the interrogatory answers and document production responses, and the motions filed by the parties, including specifically Plaintiff's two motions for Fraud on the Court and Plaintiff's motion for c. 231, § 6F relief. I incorporate herein all three motions and their supporting documents.

"An insurance company commits an unfair claim settlement practice if it '[f]ail[s] to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear. ... '[A]ny person whose rights are affected by another person violating the provisions of [G.L. c. 176D, § 3(9) (f),]' is entitled to bring an action to recover for the violation under G.L. c. 93A, § 9. If there is a finding

Granite State Insurance Company
AIG Domestic Claims, Inc.
c/o Matthew Sweet, Esq.
93A Demand Letter
October 4, 2019
Page 4

in such an action that the insurer has failed to effectuate a prompt, fair, and equitable settlement causing injury, the plaintiff is entitled to the greater of actual damages or statutory damages of twenty-five dollars. ... However, if the judge finds the insurer's action was wilful or knowing, ... , the judge must grant double or treble damages." Rhodes v. AIG Domestic Claims, Inc., 461 Mass. 486, 494–95 (2012) (internal citations omitted). "If a defendant commits a wilful or knowing c. 93A violation that finds its roots in an event or a transaction that has given rise to a judgment in favor of the plaintiff, then the damages for the c. 93A violation are calculated by multiplying the amount of that judgment." Id. at 499.[1]

You both violated c. 176D, §§ 3(9) (d) and (f), and Chapter 93A, when you failed to pay Alex's claim without conducting a reasonable investigation based on all available evidence and failed to effectuate a prompt, fair and equitable settlement of Alex's claim after liability became reasonably clear. These violations were ongoing before, at, and after the mediation, and through when you tendered the coverage limit shortly before the July 2019 trial. Your actions in violation of Chapters 176D and 93A were willful and knowing.

As a result your violations of Chapters 176D and 93A, Alex sustained damages measured by the judgment entered in the underlying tort action, accrued interest, Alex's attorney's fees evidenced in the aforementioned 6F motion, and Alex's litigation expenses, a summary of which is attached hereto. Alex is also entitled to be reimbursed his attorneys' fees associated with this letter and his Chapter 93A claims, the reasonable value of which is currently $9,000 (20 hours at $450 an hour).

Alex hereby demands that each of you make a reasonable offer of settlement to resolve his Chapter 93A claims. Failure to do so may subject you to multiple damages measured by at least two times and up to three times the amount of Alex's actual damages. I look forward to hearing from you.

Sincerely,

Jeffrey S. Raphaelson

---

[1] In addition to the duty to make a prompt fair and equitable settlement offer, an insurer violates 176D, § 3(9) (d) it if fails to "pay claims without conducting a reasonable investigation based on all available evidence."

01/26/19

Jeffrey Raphaelson
HACHE Expenses
All Transactions

| Type | Date | Num | Name | Memo | Amount |
|---|---|---|---|---|---|
| **Expenses to be reimb by client** | | | | | |
| **Hache** | | | | | |
| Check | 02/01/2017 | 2171 | Neal McGrath, PhD | retainer for neuropsych eval | 2,500.00 |
| Check | 02/01/2017 | 2172 | Shawn C. Graham, Esq. | Hache - 32 miles SCG 1/17/17 rev docs | 28.08 |
| Check | 03/01/2017 | 2194 | QuickServ, Inc. | subpoena svc McCormack Cords #3774C | 69.00 |
| Check | 03/01/2017 | 2197 | UPS | 2/1/17 to Dr. McGrath #731AX1037 | 18.37 |
| Check | 03/27/2017 | 2206 | McCarthy Reporting | deposition transcripts | 923.50 |
| Check | 05/09/2017 | 2241 | Neal McGrath, PhD | balance inv #100399 for neuropsych eva | 1,800.00 |
| Check | 05/31/2017 | 2255 | McCarthy Reporting | -MULTIPLE- | 766.70 |
| Check | 06/06/2017 | 2263 | Rehabilitation & Re-Employment | Vocationzi | 2,000.00 |
| Check | 06/06/2017 | 2266 | Rye Risk Management LLC | expert - retainer | 5,000.00 |
| Check | 06/29/2017 | 2280 | Beetics | #KUS01-1 UMM | 26.93 |
| Check | 06/29/2017 | 2281 | Doris O. Wong | #100133 depo McDonald and Feeley | 649.00 |
| Check | 06/29/2017 | 2283 | Advanced Court Reporting | depos Darrell and Bonnie Towne | 679.20 |
| Check | 06/29/2017 | 2285 | QuickServ, Inc. | #282142 KOR Mt Wachusett CC, KOR | 176.00 |
| Check | 07/13/2017 | 2290 | Dr. Ain | Expert review | 6,000.00 |
| Check | 07/28/2017 | 2298 | Doris O. Wong | #100062 Crowley | 589.00 |
| Check | 07/28/2017 | 2301 | QuickServ, Inc. | subp Jacob Shepard | 70.00 |
| Check | 07/28/2017 | 2302 | UPS | 731AX1297 - UPS to Ain | 36.73 |
| Check | 07/28/2017 | 2304 | McCarthy Reporting | #176X122 Bishop and Coulan | 330.70 |
| Check | 08/02/2017 | 2311 | Noverant, Inc. | | 1,200.00 |
| Check | 03/23/2018 | 2470 | Commonwealth Mediation & Conciliati | #31608 mediation cost | 2,500.00 |
| Check | 03/23/2017 | 2340 | Rehabilitation & Re-Employment | Vocationzl - bel retainer | 500.00 |
| Check | 03/31/2017 | 2319 | QuickServ, Inc. | subp Jonathan Jean #283376 | 70.00 |
| Check | 09/01/2017 | 2326 | McCarthy Reporting | -MULTIPLE- | 485.33 |
| Check | 09/16/2017 | 2341 | McCarthy Reporting | -MULTIPLE- | 434.90 |
| Bill | 01/31/2018 | 288 | Rye Risk Management LLC | June 2017 through January 2018 | 5,871.68 |
| Check | 03/14/2018 | 2497 | Veatch Occupational Consulting | retainer | 3,000.00 |
| Bill | 03/26/2018 | 4EE86118 | UPS | 03-14-18 Next Day Air Early to Deborah | 4,040.00 |
| Credit Card Charge | 04/09/2018 | 13823 | Advanced Court Reporting | 03-05-17 depositions of Brian & Heidi F | 420.00 |
| Bill | 05/01/2018 | 293 | Amazon | Amazon order | 43.54 |
| Check | 06/13/2018 | 2503 | Rye Risk Management LLC | March 2018 through April 2018 | 1,200.00 |
| Bill | 08/18/2018 | 100627 | Richard Frederick, Ph.D. | | 500.00 |
| Bill | 09/10/2018 | 091018 | Neal McGrath, PhD | -MULTIPLE- | 5,220.10 |
| Bill | 09/11/2018 | 2506 | Veatch Occupational Consulting | 03/15/18 to 09/10/18 vocational consulti | 2,550.00 |
| Check | 09/11/2018 | 2506 | Veatch Occupational Consulting | 30.7 hrs 03-19-18 to 08-03-18 less retain | 6,245.70 |
| Check | 09/20/2018 | 2507 | Dr. David Schap | 8 hrs review vocational report, case anal | 2,080.00 |
| Credit Card Charge | 09/25/2018 | | U.S Post Office | USPS | 14.50 |
| Credit Card Charge | 09/30/2018 | | Amazon | Amazon order | 90.86 |
| Check | 10/10/2018 | 2510 | Middlesex Rehabilitation | patient records request fee | 40.00 |
| Check | 10/15/2018 | 2511 | Children's Hospital Boston | 11 copies | 33.38 |
| Credit Card Charge | 10/16/2018 | | JetBlue | 10-30-18 flight to Raleigh/Durham | 206.40 |
| Check | 10/19/2018 | 2512 | Boston Digital Productions | production of animated recreation (1/3 to | 3,522.19 |
| Credit Card Charge | 10/23/2018 | 54496 | Medivisuals Inc | visuals of fractures | 1,261.00 |
| Credit Card Charge | 10/26/2018 | | UPS | shipment 10-20-18 | 25.48 |
| Credit Card Charge | 10/29/2018 | 299933 | QuickServ, Inc. | subpoena service to Dr. Marco Rodrizue | 69.00 |
| Credit Card Charge | 10/30/2018 | | RDU Taxi | Raleigh taxi | 48.48 |
| Credit Card Charge | 10/30/2018 | | Logan Parking | airport parking | 35.00 |
| Credit Card Charge | 10/30/2018 | | CPK RDU | Raleigh food | 20.21 |
| Check | 10/31/2018 | 2488 | Noverant, Inc. | deposition | 1,500.00 |
| Bill | 11/03/2018 | OCT2018 | Comprehensive Neuro Psych | gathering 1099 and 1099S | 220.00 |
| Credit Card Charge | 11/03/2018 | | U.S Post Office | USPS | 6.70 |
| Bill | 11/06/2018 | 300220 | QuickServ, Inc. | subpoena service - 7 subpoenas | 483.00 |
| Check | 11/07/2018 | 2513 | Noverant, Inc. | fee | 75.00 |
| Check | 11/09/2018 | 2514 | Boston Digital Productions | production of animated recreation (2/3 to | 3,522.19 |
| Bill | 11/09/2018 | 300389 | QuickServ, Inc. | subpoena service - 2 subpoenas | 132.00 |
| Bill | 11/09/2018 | 300413 | QuickServ, Inc. | subpoena service - patient accounts UM: | 71.00 |
| Bill | 11/09/2018 | 520163987 | UMASS Memorial Medical Center | copy of bill | 31.18 |
| Credit Card Charge | 11/09/2018 | | U.S Post Office | USPS | 6.70 |
| Bill | 11/12/2018 | 300445 | QuickServ, Inc. | subpoena service - Dr. Christine Wallace | 66.00 |
| Bill | 11/14/2018 | 300557 | QuickServ, Inc. | subpoena service - Paul Geragliano, PT | 71.00 |
| Bill | 11/14/2018 | PXXSL-1 | Sharecare | 127 copies Emerson Hospital | 124.06 |
| Check | 11/19/2018 | 2515 | Boston Digital Productions | production of animated recreation (3/3 to | 3,522.19 |
| Credit Card Charge | 11/21/2018 | | Medivisuals Inc | 30" X 40" enlargement | 275.00 |
| Bill | 11/27/2018 | 13157 | Ruffin Consulting | court reporting and videographer | 676.40 |
| Bill | 11/30/2018 | 125782 | Marathon Courier | -MULTIPLE- | 23.25 |
| Bill | 12/01/2018 | 02400P000724 | FedEx | 02400P000724 /8.5 11/21/18 | 83.29 |
| Bill | 12/01/2018 | AUG-NOV2018 | Jeffrey S. Raphaelson | -MULTIPLE- | 272.52 |
| Credit Card Charge | 01/31/2019 | | U.S Post Office | | 7.85 |
| Check | 01/31/2019 | 2520 | Whitelaw, George MD | IME | 650.00 |
| Check | 05/16/2019 | 2529 | Alexandra Stillman, MD | assessment and report | 2,600.00 |
| Credit Card Charge | 05/22/2019 | | UPS | shipment from 02109 to 02109 on 05-18 | 15.96 |
| Bill | 06/04/2019 | 308192 | QuickServ, Inc. | subpoena service - KOR New England E | 132.00 |
| Credit Card Charge | 06/11/2019 | | MRO Corp | | 44.01 |
| Credit Card Charge | 06/14/2019 | | U.S Post Office | 06-11-19 charge | 7.85 |
| Credit Card Charge | 06/19/2019 | 301743 | QuickServ, Inc. | subpoena service - 7 subpoenas | 480.00 |
| Credit Card Charge | 06/19/2019 | | U.S Post Office | | 7.85 |
| Bill | 06/21/2019 | 301827 | QuickServ, Inc | subpoena service - 1 subpoenas - Paul G | 69.00 |
| Bill | 06/24/2019 | RWVU6-1 | Sharecare | 17 copies Whittier Rehabilitation Hospit | 39.49 |
| Bill | 06/30/2019 | 126482 | Marathon Courier | 06-21-19 standard delivery to Will Charl | 15.00 |
| Check | 07/03/2019 | | Davy Schean | | 450.75 |
| Credit Card Charge | 07/03/2019 | 2536 | Neal McGrath, PhD | trial retainer | 1,500.00 |
| Credit Card Charge | 07/09/2019 | | Legal Sea Food | | 62.91 |
| Credit Card Charge | 07/10/2019 | | Strega Prime | | 61.09 |
| Credit Card Charge | 07/12/2019 | | Hilton Boston | | 1,282.75 |
| Bill | 07/16/2019 | 38323 | National Video Reporters | trial presentation specialists, Middlesex S | 6,525.00 |
| Check | 07/16/2019 | 2537 | Alexandra Stillman, MD | preparation and testimony | 11,650.00 |
| Credit Card Charge | 07/16/2019 | | Strega Prime | | 49.01 |
| Bill | 07/17/2019 | 100810 | Neal McGrath, PhD | 10/01/18 - 07/15/19 phone consultation: | 3,046.67 |
| Credit Card Charge | 07/18/2019 | | Hilton Boston | | 1,672.35 |
| Credit Card Charge | 07/18/2019 | | Crowne Plaza Boston | | 1,132.35 |
| Credit Card Charge | 07/20/2019 | | Staples | | 278.35 |
| Credit Card Charge | 07/26/2019 | | Staples | | 13.43 |
| Credit Card Charge | 07/26/2019 | | Staples | | 195.26 |
| Bill | 08/02/2019 | 080219 | National Video Reporters | 07-09-19 rental | 3,512.44 |
| Credit Card Charge | 08/08/2019 | | U.S Post Office | | 11.50 |
| Bill | 08/26/2019 | 082619 | Shawn C. Graham, Esq. | trial expenses: parking and supplies | 304.30 |
| **Total Hache** | | | | | |
| **Total Expenses to be reimb by client** | | | | | 104,389.12 |
| **TOTAL** | | | | | |

Page 1 of 1

# EXHIBIT B

# MORRISON MAHONEY LLP

### COUNSELLORS AT LAW

William A. Schneider, Partner
Direct Dial: 617 439-7573
Direct Fax: 617 342-4951
wschneider@morrisonmahoney.com

250 SUMMER STREET
BOSTON, MA 02210-1181
617-439-7500

| | |
|---|---|
| MASSACHUSETTS | NEW HAMPSHIRE |
| BOSTON | MANCHESTER |
| FALL RIVER | |
| SPRINGFIELD | NEW JERSEY |
| WORCESTER | PARSIPPANY |
| CONNECTICUT | NEW YORK |
| HARTFORD | NEW YORK |
| STAMFORD | |
| | RHODE ISLAND |
| ENGLAND | PROVIDENCE |
| LONDON | |

November 4, 2019

*Via E-Mail: jsr@raphlaw.com*
*And First Class Mail*

Jeffrey S. Raphaelson, Esq.
**Raphaelson Attorneys at Law**
15 Broad Street, 7th Floor
Boston MA 02109

Re: **Insured:**       **Wachusett Mountain Assoc.**
    **Claimant:**      **Alexander Hache**
    **Claim No.:**     **3157464777US**
    **Date of Loss:**  **March 8, 2015**
    <u>**Our File No.:**</u>   <u>**10081363**</u>

Dear Attorney Raphaelson:

This law firm represents Granite State Insurance Company ("Granite State") in connection with the matter referenced above. We write on behalf of our client concerning your October 4, 2019, correspondence addressed to Granite State and AIG Domestic Claims, Inc., care of Attorney Matthew Sweet with the firm of Hamel, Marcin, Dunn, Reardon & Shea, PC. Please be advised that neither Attorney Sweet nor his firm are authorized to accept service of demand letters for Granite State or AIG Claims, Inc., (formerly AIG Domestic Claims, Inc.).[1]

Nevertheless, following our clients receipt of your letter, we undertook to review the handling of this personal injury claim in light of your assertions that they Granite State and its claim administrator committed unlawful insurance claim settlement practices that violate G.L. c. 93A. This undertaking revealed that, to date, Granite State, proceeded appropriately with its handling of this matter where liability was not reasonably clear, and that the company complied fully with its contractual obligations and statutory duties. For these reasons, Granite State and its claims administrators must respectfully reject your

---

[1] Please also note that AmWins served as the program claims administrator for Granite State under primary policy #02-LX-011739248-2 under the supervision of AIG Claims, Inc.

MORRISON MAHONEY LLP

Jeffrey S. Raphaelson, Esq.
November 4, 2019
Page 2

assertion they violated G.L. c. 176D, otherwise engaged in unfair deceptive acts or practices unlawful under c. 93A.

At the outset, we question the propriety of a post-judgment c. 93A demand for settlement relief to an insurer that is only sent *after* the insurer has fully paid and fully satisfied a final judgment obtained by the plaintiff. A legally sufficient demand letter must give reasonable notice of the injuries suffered and the relief demanded in a manner that provides the recipient with an opportunity to review the facts and law so as to decide upon a reasonable offer of settlement. *Spring v. Geriatric Authority of Holyoke*, 394 Mass. 294 (1985). At no time before the judgment in the underlying case or payment of that judgment did you or Mr. Hache demand any relief under c. 93A or raise concerns about how Granite State, AIG Claims, or the program administrator handled the claim. This is not surprising since, as set forth in greater detail below, liability, which includes causation and damages, was never reasonably clear. Regardless, given the timing of your demand letter in relation to the outcome of the underlying case, and the fact Granite State and the excess insurer have paid, in full, the judgment and all related interest, it is unclear exactly what specific relief Mr. Hache believes he is due from Granite State under the circumstances.

Turning to the facts of the claim, those concerning the defendant's legal responsibility for the accident are presently not subject of debate. Initial indications raised questions about whether and to what extent the defendant was liable to the plaintiff, with each side supporting its position with expert opinions. As you know, the defense ultimately conceded liability for the incident before trial based on facts disclosed later in the case during discovery. The fact that the defendant allegedly committed perjury and/or spoiliated evidence to cover up fault for the incident in no way arose from or implicates conduct on the part of Granite State or its authorized representatives in the handling of the claim or efforts to negotiate settlement.

Briefly, on March 8, 2015, Alexander Hache, who was then 12 years old, fell 30 feet from a chairlift at the Wachusett Mountain Ski Area striking the ground. Mr. Hache had attempted to load the Polar-Express four-person chairlift; but he failed to become properly seated. An adult sitting next to him was able to hold him by a hand as he dangled from below the chair as the chair continued moving forward up the mountain. Lift riders immediately called out to the lift operator to stop the lift. After a period, the lift was brought to a brief stop and then was restarted at a faster pace in an attempt to get Mr. Hache to the top of the lift. As the lift again continued in motion, his ski encountered a snow-gun, and with the vibration of the chair as it went over support tracks, he slipped from the hand of the other rider falling to the ground. As a result, Mr. Hache sustained a non-displaced pelvic fracture and compression fractures of T11, T12, L3 and L4. He also suffered a

MORRISON MAHONEY LLP

Jeffrey S. Raphaelson, Esq.
November 4, 2019
Page 3

closed head injury consistent with a concussion which he claimed left him with permanent cognitive impairment.

In terms of orthopedic damages, there was little dispute, based on an objective review of the medical evidence, that Mr. Hache recovered well from his orthopedic injuries and had no clear permanent limitations relative to those injuries. In fact, he was able to run cross-country and compete on the high school track team. The critical damages issues in the case concerned the plaintiff's ability to establish a brain injury resulting in permanent cognitive impairment, and his more recent physical symptoms. The plaintiff argued that Mr. Hache sustained a diffuse brain injury resulting in functional impairments to memory, executive function and other related areas and that he has sustained an economic loss to his earnings capacity in the range of $1.5 to $2 million. This evidence was hardly unequivocal and most certainly subject to fair debate and challenge by the defense since Mr. Hache had excelled at times in school, and there was conflicting experts opinions and no objective evidence of clear permanent impairment. In the end, the jury awarded Alex only $275,000.00 for his future lost earnings due to the alleged cognitive impairment, an amount significantly less than what the plaintiff claimed and sought at trial.

More specifically, the plaintiff's own medical records and course of treatment, together with the defendant's evaluation as informed by the medical experts retained by counsel, raised genuine doubts about the severity of the injuries being claimed and the monetary value of the case for settlement purposes. The defense had Mr. Hache's medical records reviewed by Stephen Sarfaty, Psy.D, Neuropsychologist with Comprehensive Neuropsychological Services, P.C. Dr. Sarfaty did not believe that the plaintiff had any acquired brain or psychological impairment attributable to this incident (or the prior concussion).

Martha Shenton, Ph.D., Professor, Department of Psychiatry and Department of Radiology and Director, Psychiatry Neuroimaging Laboratory at the Brigham and Women's Hospital also assisted with the defense. Dr. Shenton evaluated the neuroimaging data and its interpretation by Dr. Benson. She concluded that DTI is not standardized for use in the clinic and at the patient level. She opined that Dr. Benson had inappropriately used the post-processing analysis tools to compare Mr. Hache to a poorly matched group of controls (other individuals) who are imaged on magnets of different strengths using different imaging sequences. Accordingly, there were credible concerns about the interpretation of the DTI findings, including methodological and statistical problems, problems with the healthy control sample and problems with the assumptions regarding the validity of the approach used that provided a legitimate basis

MORRISON MAHONEY LLP

Jeffrey S. Raphaelson, Esq.
November 4, 2019
Page 4

for defense experts to opine that Dr. Benson's claims were overstated, speculative, and not valid.

Lastly, Nancy L. Segreve, a Certified Rehabilitation Counselor with Occupational Resource Network weighed in about the plaintiff's vocational prospects. She felt that he had developed coping strategies, and with accommodations focused on extended time for tests and projects, he had achieved academic success despite these limitations. Her conclusion was that there are no vocational losses as a result of the injuries from his fall. Again, the jury seemed to agree, at least in part, that any cognitive deficit was not as severe or impactful on plaintiff's future earnings as claimed.

With regards to efforts to settle the case, the parties voluntarily attended a mediation with Brian Mone on April 3, 2018. The facts and available evidence at that time did not support or establish clear liability on the part of the defendant for your settlement demand of $9,000,000.00, which you made at the outset of the mediation without any prior notice to the defendant or Granite State. The disparity between the parties' respective valuations of the case resulted in the early termination of the mediation process. Later efforts to revisit settlement at mediation were undermined by plaintiff's demand for a substantial offer ahead of time despite the fact that the excess insurer planned to participate.

As you know, Granite State later increased its offer of settlement to $425,000.00. This offer reflected the ongoing, genuine dispute and disagreement bearing on the plaintiff's alleged damages. Those damages remained a moving target up until the trial in July 2019, since the plaintiff presented evidence of more recent symptoms and treatment. When it became apparent that additional sums were necessary to settle the case before trial, Granite State authorized an offer of the full $1,000,000.00 primary limit. Settlement negotiations continued through trial, with the plaintiff spurning an offer from the excess liability insurer and primary in the amount of $3,000,000.00. Ultimately, the jury's verdict was more in line with the insurance companies' final settlement offer than the plaintiff's last settlement demand.

You raise two specific contentions Granite State's alleged conduct, which you believe violate the provisions of Chapter 93A. First, you allege that Granite State failed to pay the claim without conducting a reasonable investigation based upon all available information in violation of G.L. c. 176D, §3(9)(d). Second, you claim that Granite State violated G.L. c. 176D, §3(9)(f) because it failed to effectuate a prompt, fair and equitable settlement of the claim after liability became reasonably clear. Granite State denies these allegations, and we address each of contention below.

MORRISON MAHONEY LLP

Jeffrey S. Raphaelson, Esq.
November 4, 2019
Page 5

First, you contend Granite State violated G.L. c. 176D, § 9(3)(d) because it allegedly refused to pay the claim without conducting a reasonable investigation based upon all available information. Nowhere in your letter, however, have you identified any information that Granite State or its claim administrators failed, refused, or neglected to consider. To prevail on a claim under Section 3(9)(d), a claimant must show what the insurer actually failed to do, or what additional steps the insurer could have taken. *O'Sullivan v. Hingham Mut. Fire Ins. Co.*, 2009 WL 2438329, at *3 (Mass. App. Ct. July 30, 2009). "In other words, [a claimant must detail] what a reasonable investigation should have entailed." *Id.* No such showing is made in your letter. Instead, you simply conclude that the insurer's investigation of the claim was inadequate. This type of reasoning is not a sufficient basis to establish a violation of G.L. c. 176D, § 9(3)(d). Indeed, and contrary to your assertion, Granite State conducted a reasonable investigation and considered all available information in the context of informing its decisions regarding settlement.

Second, you allege Granite State violated G.L. c. 176D, §3(9)(f) because it failed to effectuate a prompt, fair and equitable settlement of the claim after liability became reasonably clear. However, Granite State had no legal obligation to tender an offer of settlement because the defendant's liability was not reasonably clear based on the parties' genuine dispute over damages. *See Hopkins v. Liberty Mut. Ins. Co.*, 434 Mass. 556 (2001). In this regard, the term "liability" encompasses both fault and damages. *See Hopkins*, 434 Mass. at 566. Deciding whether liability is "reasonably clear" involves "an objective standard of inquiry into the facts and the applicable law." *Demeo v. State Farm Mut. Auto. Ins. Co.*, 38 Mass. App. Ct. 955, 956 (1995). The question whether liability is reasonably clear depends on "'whether a reasonable person, with knowledge of the relevant facts and law, would probably have concluded, for good reason, that the insurer was liable to the plaintiff.'" *Nyer v. Winterthur Int'l*, 290 F.3d 456, 461 (1st Cir. 2002) (*quoting Demeo*, 38 Mass. App. Ct. at 956). This objective standard takes into account the totality of the circumstances. It does not rely on subjective considerations or conclusory allegations.

An insurer such as Granite State is "not required to put a fair and reasonable offer on the table until liability and damages [are] apparent" or if "there exist[s] a legitimate difference of opinion as to the extent" of liability. *Bobick v. U.S. Fid. & Guar. Co.*, 439 Mass. 652, 658-60 (2003). Suffice it to say that each side presented evidence in support of their respective positions on damages which, in our view, belies the allegation that liability on the part of the defendant was reasonably clear within the meaning of G.L. c. 176D, §3(9)(f). More to the point, our clients did make several good faith efforts to effectuate a settlement of the claim. Those efforts were unsuccessful based on your subjective view about the settlement value of the claim and unwillingness to engage in settlement discussions absent concessions from Granite State to offer its limit as a condition precedent to further negotiations.

MORRISON MAHONEY LLP

Jeffrey S. Raphaelson, Esq.
November 4, 2019
Page 6

   We also note that the parties' good faith disagreement over the value of the case is not actionable under c. 93A. Granite State its representatives had legitimate, good faith doubt that the insured's liability is reasonably clear, and questioned, in good faith, the justification for the plaintiffs' extraordinary $9,000,000.00 settlement demand which, at one point, you reduced to $5,000,000.00 only to increase the demand back to $9,000,000.00 before trial. Indeed, even assuming liability were reasonably clear, which it was not, the reasonable settlement value of the case was nowhere near this sum.

   Well-established precedent indicates that Granite State and its representatives did not engage in any unfair or deceptive conduct which violates G.L. c. 176D or G.L. c. 93A simply because they disagreed with the plaintiff's settlement demand or views about fault or damages. Granite State, on several occasions, made good faith efforts to effectuate settlement and, therefore, fulfilled its statutory obligations to the plaintiff. Perfection is not the standard that Chapter 176D imposes upon the handling of a claim. Moreover, several decisions hold that where multiple reasons support an insurer's evaluation of a claim and conduct during settlement negotiations, there is no violation of either G.L. c. 93A or G.L. c. 176D. *See, e.g., Bobick*, 439 Mass. at 658-62; *Guity v. Commerce Ins. Co.*, 36 Mass. App. Ct. 339, 343-44 (1994).

   This is also true in situations where an insurer is ultimately found to have been incorrect or even low in its evaluation. *See Forcucci v. United States Fidelity & Guar. Co.*, 11 F.3d 1 (1st Cir. 1993)(recognizing that negotiation of a settlement is a legitimate bargaining process in which an insurer is only obligated to make an offer within the scope of reasonableness, which is considered in light of the situation as a whole. In such circumstances the insurer has not violated the statute, even if a judge or jury would ultimately find the insurer's evaluation of a claim was incorrect or low). Granite and AIG Claims have consistently employed their honest business judgment in good faith in making its evaluation of the claim for settlement purposes and is not held to standards of omniscience or perfection. *See Peckham v. Continental Cas. Ins. Co.*, 895 F.2d 830, 835 (1st Cir. 1990).

   Moreover, as noted at the outset, no Massachusetts case law has expressly sanctioned a post-judgment demand for relief under c. 93A after the judgment is fully satisfied, based on the allegation that the insurer failed to effectuate settlement beforehand. Notwithstanding the above, in an effort to resolve your client's belated c. 93A claims, Granite State is prepared to make a reasonable tender of settlement in relation to injury that may have actually been suffered by your client as provided by the "safe harbor" provisions of c. 93A.

MORRISON MAHONEY LLP

Jeffrey S. Raphaelson, Esq.
November 4, 2019
Page 7

In your letter, you allege the insurer's statutory transgressions resulted in damages: 1) measured by the underlying judgment; 2) accrued interest; 3) attorney's fees as evidenced in a referenced G.L. c. 231, §6F motions; 4) scheduled litigation expenses; and 5) your fees to author the c. 93A letter. However, as noted below, the majority of these items do not appear to be damages presently owed to your client, or injury caused by the insurer's alleged conduct.

First, to the extent that your client allegedly suffered damages measured by the judgment which entered in the underlying tort action, Granite State and the excess insurer have already paid the judgment, in full, inclusive of both pre-judgment interest and post-judgment interest. Therefore, the basis for these claimed damages no longer exists. This renders your demand for relief based upon the judgment and accrued interest both defective and improper. Your client is not entitled to these amounts again.

As for attorney's fees, plaintiff would have had to pay his attorney's fee whether the case resolved by settlement or judgment. Your letter does not reflect that Mr. Hache incurred any greater attorney's fee as a result of having to take his case to trial. Further, to the extent you apparently base any claim to attorney's fees on the conduct of the underlying defendant, that conduct is presently the subject of unresolved, opposed motions pending before the court. More significantly, however, is the fact that an insurer such as Granite State does not insure its policyholder against the consequences of fraud or the type of conduct alleged in your motion and it is not responsible for the activities alleged. As such, your client has not incurred attorney fees as a result of the actions of Granite State or its claims representations regardless of the outcome of the pending motion.

Finally, to the extent that plaintiff has incurred litigation expenses that have not been otherwise reimbursed and that may arguably be causally related to this case not resolving sooner as argued by plaintiff's c. 93A failure to settle allegations, Granite State hereby tenders the sum of $104,389.14 as attached to your October 4, 2019 letter demand representing incurred litigation expenses, as well as an additional $9,000.00 representing the attorney fees claimed to draft the demand letter. As noted above, this tender is made pursuant to the "safe harbor" provisions of c. 93A, and should not be considered an admission of liability in subsequent proceedings, if any.

MORRISON MAHONEY LLP

Jeffrey S. Raphaelson, Esq.
November 4, 2019
Page 8

We hope the foregoing responds to your concerns.  In the event you have any
questions, please do not hesitate to call or write.

Sincerely,

MORRISON MAHONEY LLP

*William A. Schneider*

William A. Schneider

WAS/ckb

# EXHIBIT C



RAPHAELSON
LAW

November 27, 2019

<u>By Priority Mail</u>

AmWins Group, Inc.
Claims Manager
4725 Piedmont Row Drive, Ste 600
Charlotte, NC 28210

Re:     <u>Demand Letter Under Chapter 93A of the Massachusetts General Laws</u>

Dear Sirs/Madams:

As you know, this firm represents Alex Hache in connection with the serious injuries he sustained in a fall from a moving high-speed quad chairlift at the ski area owned and operated by your insured, Wachusett Mountain Ski Area, Inc. ("Wachusett"). This letter constitutes a demand for settlement under Chapter 93A of the Massachusetts General Laws from Granite State Insurance Company's claims handler under primary policy #02-LX-011739248-2. The claim number reportedly is 3157464777US.

As you know, the accident involving Alex occurred on March 8, 2015, when then 12-year-old Alex sat on the arm of a chair while loading onto the Polar Express lift at Wachusett. Having never seated, Alex's body immediately slipped off the chair and turned, so that his back was to the mountain and his legs were under the chair as the chair moved through the load area. One of the other riders on the chair grabbed hold of Alex and the other riders immediately yelled "stop the lift," but the lift continued to ascend the mountain with Alex hanging from it for about three minutes. Shortly after Alex's skis hit a snowmaking gun Wachusett negligently left underneath the chair lift, the other chair riders lost hold of Alex and he fell thirty feet to the ground below. He sustained a permanent brain injury, five fractured vertebrae with permanent back pain, and a fractured pelvis as a result of the fall. On July 16, 2019, after a five-day trial, the jury returned a verdict in favor of Alex for $3,275,000. Judgment in the amount of $4,560,105,20 entered on July 19, 2019.

AmWins Group, Inc.
93A Demand Letter
November 27, 2019
Page 2

Immediately following the incident in March 2015, Wachusett and the Massachusetts Department of Public Safety ("DPS") performed investigations into the surrounding circumstances. Granite's agent, Mr. Sweet, was involved in the investigations from near the outset. You possessed the results of the investigations when they concluded. The DPS found that your insured, Wachusett, failed to load Alex on the chair as required by Massachusetts regulations, and that it failed to maintain the ski area in a "reasonably safe condition or manner" in violation of Massachusetts General Law.

On April 12, 2016, Alex filed a complaint against Wachusett. At that time, Wachusett's negligence was reasonably clear. Alex never seated properly in the chair. The danger posed to Alex would have obvious to the lift attendant while the chair was in the load area had he been watching or listening to the riders on the chair, as he was required to do to ensure a safe load. He was not watching and listening when Alex loaded the chair and as a result the chair ascended up the mountain with Alex hanging from it for three minutes until he fell 30 feet to the ground below. Wachusett failed to follow its own policy and retract the snowmaking gun before operations began that day, and Alex hit it, which contributed to the fall. These facts have never been in dispute.

On September 29, 2016, Alex produced in the litigation medical records and billing information relating to the injuries he sustained in the fall. The records established that Alex sustained five vertebral fractures and a pelvis fracture for which he underwent two rounds of physical therapy, post-traumatic stress disorder for which he underwent counseling, and a concussion with post-concussion symptoms for which he received treatment. The billing records totaled more than $30,000.

On or before November 1, 2016, liability was reasonably clear and you were required under M.G.L., c. 176D to promptly make a reasonable offer of settlement. No timely offer was made.

In January 2017, Alex testified in his deposition that he didn't know exactly what happened that led him to sit on the arm of the chair, but when he sat down there was no space between him and Mr. Lavigne, the rider to his immediate left. In light of Alex's testimony, there was no evidentiary basis for you to claim that Alex had any comparative fault for the accident. Depositions taken of the three other chair riders later in 2017 confirmed their earlier witness statements that they knew

AmWins Group, Inc.
93A Demand Letter
November 27, 2019
Page 3

of no lack of care on Alex's part. There was never any evidence from any source that Alex failed to use due care when loading the chair. You knew in January 2017 that Wachusett was 100% responsible for the accident.

In his deposition in January 2017, Alex also testified that he had ongoing physical and cognitive problems relating to his injuries, he could no longer participate in the contact sports he loved, and he no longer skied. In May 2017, Heidi Hache gave corroborating deposition testimony on these elements of damage. Also in May 2017, we forwarded to you Dr. McGrath's first neuropsychological evaluation evidencing that Alex sustained significant and permanent cognitive impairment as a result of the mild traumatic brain injury he sustained in the fall.

By September 2017, you knew that Wachusett had falsified its training records to show that the Polar Express base lift attendant had taken the online Bullwheel training course, and that it had committed perjury and spoliated evidence to hide the fraud.

In April 2018, you made your first offer of settlement. At the mediation that took place on April 3, you offered $15,000 to settle Alex's claims. The mediation ended abruptly after you refused to increase your offer despite a $1 million reduction in Alex's demand from $10 million to $9 million.

On November 2, 2018, you increased your offer to $425,000, shortly after Wachusett admitted liability. You did not increase your offer to the $1 million coverage limit until late June 2019, shortly before the trial, despite knowing for many months that the fair value of Alex's claims exceeded $3 million.

I refer you to the litigation file in this case, including the depositions, the interrogatory answers and document production responses, and the motions filed by the parties, including specifically Plaintiff's two motions for Fraud on the Court and Plaintiff's motion for c. 231, § 6F relief. I incorporate herein all three motions and their supporting documents.

"An insurance company commits an unfair claim settlement practice if it '[f]ail[s] to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear. ... '[A]ny person whose rights are affected by another person violating the provisions of [G.L. c. 176D, § 3(9) (f),]' is entitled to bring an action to recover for the violation under G.L. c. 93A, § 9. If there is a finding

AmWins Group, Inc.
93A Demand Letter
November 27, 2019
Page 4

in such an action that the insurer has failed to effectuate a prompt, fair, and
equitable settlement causing injury, the plaintiff is entitled to the greater of actual
damages or statutory damages of twenty-five dollars. ... However, if the judge finds
the insurer's action was wilful or knowing, ... , the judge must grant double or treble
damages." <u>Rhodes v. AIG Domestic Claims, Inc.</u>, 461 Mass. 486, 494–95 (2012)
(internal citations omitted). "If a defendant commits a wilful or knowing c. 93A
violation that finds its roots in an event or a transaction that has given rise to a
judgment in favor of the plaintiff, then the damages for the c. 93A violation are
calculated by multiplying the amount of that judgment." <u>Id.</u> at 499.[1]

     You both violated c. 176D, §§ 3(9) (d) and (f), and Chapter 93A, when you
failed to pay Alex's claim without conducting a reasonable investigation based on all
available evidence and failed to effectuate a prompt, fair and equitable settlement of
Alex's claim after liability became reasonably clear.  These violations were ongoing
before, at, and after the mediation, and through when you tendered the coverage
limit shortly before the July 2019 trial.  Your actions in violation of Chapters 176D
and 93A were willful and knowing.

     As a result your violations of Chapters 176D and 93A, Alex sustained
damages measured by the judgment entered in the underlying tort action, accrued
interest, Alex's attorney's fees evidenced in the aforementioned 6F motion, and
Alex's litigation expenses, a summary of which is attached hereto.  Alex is also
entitled to be reimbursed his attorneys' fees associated with this letter and his
Chapter 93A claims, the reasonable value of which is currently $9,000 (20 hours at
$450 an hour).

     Alex hereby demands that you make a reasonable offer of settlement to
resolve his Chapter 93A claims. Failure to do so may subject you to multiple
damages measured by at least two times and up to three times the amount of Alex's
actual damages.  I look forward to hearing from you.

Sincerely,

Jeffrey S. Raphaelson

---

[1] In addition to the duty to make a prompt fair and equitable settlement offer, an
insurer violates 176D, § 3(9) (d) it if fails to "pay claims without conducting a
reasonable investigation based on all available evidence."

Jeffrey Raphaelson
HACHE Expenses
with interest through 11-4-19

| Type | Date | Num | Name | Memo | Amount | Number of Days Thru 11/4/19 | Interest at 12% |
|---|---|---|---|---|---|---|---|
| Expenses to be reimb by client | | | | | | | |
| Hache | | | | | | | |
| Check | 02/01/2017 | 2171 | Neal McGrath, PhD | retainer for neuropsych eval | 2,500.00 | 1,006 | 826.85 |
| Check | 02/01/2017 | 2172 | Sharon C. Graham, Esq. | Hache - 52 miles SCG 1/17/17 rev docs | 28.08 | 1,006 | 9.29 |
| Check | 03/01/2017 | 2194 | QuickServ, Inc. | subpoena svc McCormack Corda #2774 | 69.00 | 978 | 22.19 |
| Check | 03/01/2017 | 2197 | UPS | 2/1/17 to Dr. McGrath #731AX1057 | 18.37 | 978 | 5.91 |
| Check | 03/27/2017 | 2206 | McCarthy Reporting | #161203 - Biliouris depo transcript | 925.50 | 952 | 289.67 |
| Check | 05/09/2017 | 2241 | Neal McGrath, PhD | balance inv #100399 for neuropsych eva | 1,800.00 | 909 | 537.93 |
| Check | 05/31/2017 | 2255 | McCarthy Reporting | -MULTIPLE- | 766.70 | 887 | 223.58 |
| Check | 06/06/2017 | 2263 | Rehabilitation & Re-Employment | Vocationist | 2,000.00 | 881 | 579.29 |
| Check | 06/06/2017 | 2266 | Rye Risk Management LLC | expert - retainer | 5,000.00 | 881 | 1,448.22 |
| Check | 06/29/2017 | 2280 | Bactes | #KUS01-1 UMM | 26.93 | 858 | 7.60 |
| Check | 06/29/2017 | 2281 | Doris O. Wong | #100135 depo McDonald and Feeley | 649.00 | 858 | 183.07 |
| Check | 06/29/2017 | 2283 | Advanced Court Reporting | depos Darrell and Bonnie Towne | 679.20 | 858 | 191.59 |
| Check | 06/29/2017 | 2285 | QuickServ, Inc. | #282142 KOR Mt Wachusett CC, KOR | 176.00 | 858 | 49.65 |
| Check | 07/13/2017 | 2290 | Dr. Ain | Expert review | 6,000.00 | 844 | 1,664.88 |
| Check | 07/28/2017 | 2298 | Doris O. Wong | #100062 Crowley | 589.00 | 829 | 160.53 |
| Check | 07/28/2017 | 2301 | QuickServ, Inc. | subp Jacob Shepart | 70.00 | 829 | 19.08 |
| Check | 07/28/2017 | 2302 | UPS | 731AX1297 - UPS to Ain | 36.73 | 829 | 10.01 |
| Check | 07/28/2017 | 2304 | McCarthy Reporting | #170672 Bishop and Goulart | 330.70 | 829 | 90.13 |
| Check | 08/08/2017 | 2311 | Noverant, Inc. | | 1,200.00 | 818 | 322.72 |
| Check | 08/23/2017 | 2470 | Commonwealth Mediation & Conciliati | #31608 mediation cost | 2,500.00 | 803 | 660.00 |
| Check | 08/23/2017 | 2340 | Rehabilitation & Re-Employment | Vocationist - bal retainer | 500.00 | 803 | 132.00 |
| Check | 08/31/2017 | 2319 | QuickServ, Inc. | subp Jonathan Jean #283576 | 71.00 | 795 | 18.56 |
| Check | 09/01/2017 | 2326 | McCarthy Reporting | -MULTIPLE- | 485.35 | 794 | 126.70 |
| Check | 09/18/2017 | 2341 | McCarthy Reporting | -MULTIPLE- | 434.90 | 777 | 111.10 |
| Bill | 01/31/2018 | 288 | Rye Risk Management LLC | June 2017 through January 2018 | 5,871.68 | 642 | 1,239.33 |
| Check | 03/14/2018 | 2497 | Veatch Occupational Consulting | retainer | 3,000.00 | 600 | 591.78 |
| Bill | 03/17/2018 | 4EE86118 | UPS | 03-14-18 Next Day Air Early to Debora | 34.29 | 597 | 6.73 |
| Check | 03/19/2018 | 2498 | CNS | Inv #2017-1572 03-19-18 Comprehensive Medical Repo | | 595 | - |
| Bill | 03/26/2018 | 13823 | Advanced Court Reporting | 05-05-17 depositions of Brian & Heidi I | 420.00 | 588 | 81.19 |
| Credit Card Charge | 04/09/2018 | | Amazon | Amazon order | 45.54 | 574 | 8.59 |
| Bill | 05/01/2018 | 293 | Rye Risk Management LLC | March 2018 through April 2018 | 1,200.00 | 552 | 217.78 |
| Check | 06/13/2018 | 2503 | Richard Frederick, Ph.D. | | 500.00 | 509 | 83.67 |
| Bill | 08/18/2018 | 100627 | Neal McGrath, PhD | -MULTIPLE- | 5,220.10 | 443 | 760.28 |
| Bill | 09/10/2018 | 091018 | Veatch Occupational Consulting | 03/19/18 to 09/10/18 vocational consult | 2,550.00 | 420 | 352.11 |
| Check | 09/11/2018 | 2506 | Veatch Occupational Consulting | 30.7 hrs 03-19-18 to 08-03-18 less retai | 6,245.70 | 419 | 860.37 |
| Check | 09/12/2018 | 2507 | Dr. David Schap | 8 hrs review vocational report, case ana | 2,080.00 | 418 | 285.84 |
| Credit Card Charge | 09/25/2018 | | U.S.Post Office | USPS | 14.50 | 405 | 1.93 |
| Credit Card Charge | 09/30/2018 | | Amazon | Amazon order | 90.86 | 400 | 11.95 |
| Check | 10/10/2018 | 2510 | Middlesex Rehabilitation | patient records request fee | 40.00 | 390 | 5.13 |
| Check | 10/15/2018 | 2511 | Children's Hospital Boston | 11 copies | 33.38 | 385 | 4.23 |
| Credit Card Charge | 10/16/2018 | | JetBlue | 10-30-18 flight to Raleigh/Durham | 206.40 | 384 | 26.06 |
| Check | 10/17/2018 | 2512 | Boston Digital Productions | production of animated recreation (1/3 | 3,522.19 | 383 | 443.51 |
| Credit Card Charge | 10/23/2018 | 54496 | Medivisuals Inc | visuals of fractures | 1,261.00 | 377 | 156.29 |
| Credit Card Charge | 10/26/2018 | | UPS | shipment 10-20-18 | 25.48 | 374 | 3.13 |
| Bill | 10/29/2018 | 299933 | QuickServ, Inc. | subpoena service to Dr. Marco Rodrigu | 69.00 | 371 | 8.42 |
| Credit Card Charge | 10/30/2018 | | RDU Taxi | Raleigh taxi | 48.48 | 370 | 5.90 |
| Credit Card Charge | 10/30/2018 | | Logan Parking | airport parking | 35.00 | 370 | 4.26 |
| Credit Card Charge | 10/30/2018 | | CPK RDU | Raleigh food | 20.21 | 370 | 2.46 |
| Check | 10/31/2018 | 2488 | Noverant, Inc. | deposition | 1,500.00 | 369 | 181.97 |
| Bill | 11/05/2018 | OCT2018 | Comprehensive Neuro Psych | gathering 1099 and 1099S | 220.00 | 364 | 26.33 |
| Credit Card Charge | 11/05/2018 | | U.S.Post Office | USPS | 6.70 | 364 | 0.80 |
| Bill | 11/06/2018 | 300220 | QuickServ, Inc. | subpoena service - 7 subpoenas | 483.00 | 363 | 57.64 |
| Check | 11/07/2018 | 2513 | Noverant, Inc. | fee | 75.00 | 362 | 8.93 |
| Check | 11/09/2018 | 2514 | Boston Digital Productions | production of animated recreation (2/3 | 3,522.19 | 360 | 416.87 |
| Bill | 11/09/2018 | 300389 | QuickServ, Inc. | subpoena service - 2 subpoenas | 132.00 | 360 | 15.62 |
| Bill | 11/09/2018 | 300413 | QuickServ, Inc. | subpoena service - patient accounts UM | 71.00 | 360 | 8.40 |
| Bill | 11/09/2018 | 520163987 | UMASS Memorial Medical Center | copy of bill | 31.18 | 360 | 3.69 |
| Credit Card Charge | 11/09/2018 | | U.S.Post Office | USPS | 6.70 | 360 | 0.79 |
| Bill | 11/12/2018 | 300445 | QuickServ, Inc. | subpoena service - Dr. Christine Wallao | 66.00 | 357 | 7.75 |
| Bill | 11/14/2018 | 300557 | QuickServ, Inc. | subpoena service - Paul Garagliano, PT | 71.00 | 355 | 8.29 |
| Bill | 11/14/2018 | PXXSL-1 | Sharecare | 127 copies Emerson Hospital | 124.06 | 355 | 14.48 |
| Check | 11/20/2018 | 2515 | Boston Digital Productions | production of animated recreation (3/3 | 3,522.19 | 349 | 404.14 |
| Credit Card Charge | 11/21/2018 | | Medivisuals Inc | 30" X 40" enlargement | 275.00 | 348 | 31.46 |
| Bill | 11/27/2018 | 13157 | Ruffin Consulting | court reporting and videographer | 676.40 | 342 | 76.05 |
| Bill | 11/30/2018 | 125782 | Marathon Courier | -MULTIPLE- | 23.25 | 339 | 2.59 |
| Bill | 12/01/2018 | 02480P000724 | | 02480P000724 &5 11/21/18 | 83.29 | 338 | 9.26 |
| Bill | 12/01/2018 | AUG-NOV2018 | Jeffrey S. Raphaelson | -MULTIPLE- | 272.52 | 338 | 30.28 |
| Credit Card Charge | 01/31/2019 | | U.S.Post Office | USPS | 7.85 | 277 | 0.71 |
| Check | 01/31/2019 | 2520 | Whitelaw, George MD | IME | 650.00 | 277 | 59.19 |

Jeffrey Raphaelson
HACHE Expenses
with interest through 11-4-19

| Type | Date | Num | Name | Memo | Amount | Number of Days Thru 11/4/19 | Interest at 12% |
|---|---|---|---|---|---|---|---|
| Check | 05/16/2019 | 2529 | Alexandra Stillman, MD | assessment and report | 2,600.00 | 172 | 147.02 |
| Credit Card Charge | 05/22/2019 | | UPS | shipment from 02109 to 02109 on 05-1! | 15.96 | 166 | 0.87 |
| Bill | 06/04/2019 | 308192 | QuickServ, Inc. | subpoena service - KOR New England I | 132.00 | 153 | 6.64 |
| Credit Card Charge | 06/11/2019 | | MRO Corp | 06-11-19 charge | 44.01 | 146 | 2.11 |
| Credit Card Charge | 06/14/2019 | | U.S.Post Office | | 7.85 | 143 | 0.37 |
| Bill | 06/19/2019 | 308743 | QuickServ, Inc. | subpoena service - 7 subpoenas | 480.00 | 138 | 21.78 |
| Credit Card Charge | 06/19/2019 | | U.S.Post Office | | 7.85 | 138 | 0.36 |
| Bill | 06/21/2019 | 308827 | QuickServ, Inc. | subpoena service - 1 subpoenas - Pual C | 69.00 | 136 | 3.09 |
| Bill | 06/24/2019 | RWVU6-1 | Sharecare | 17 copies Whittier Rehabilitation Hospi | 39.49 | 133 | 1.73 |
| Bill | 06/30/2019 | 126482 | Marathon Courier | 06-21-19 standard delivery to Will Chai | 15.00 | 127 | 0.63 |
| Credit Card Charge | 07/08/2019 | | Darcy Schram | | 450.75 | 119 | 17.63 |
| Check | 07/08/2019 | 2536 | Neal McGrath, PhD | trial retainer | 1,500.00 | 119 | 58.68 |
| Credit Card Charge | 07/09/2019 | | Legal Sea Foods | | 62.91 | 118 | 2.44 |
| Credit Card Charge | 07/10/2019 | | Strega Prime | | 61.09 | 117 | 2.35 |
| Credit Card Charge | 07/12/2019 | | Hilton Boston | | 1,282.75 | 115 | 48.50 |
| Bill | 07/16/2019 | 38323 | National Video Reporters | trial presentation specialist, Middlesex ! | 6,525.00 | 111 | 238.12 |
| Check | 07/16/2019 | 2537 | Alexandra Stillman, MD | preparation and testimony | 11,650.00 | 111 | 425.15 |
| Credit Card Charge | 07/16/2019 | | Strega Prime | | 49.01 | 111 | 1.79 |
| Bill | 07/17/2019 | 100810 | Neal McGrath, PhD | 10/01/18 - 07/15/19 phone consultation | 3,046.67 | 110 | 110.18 |
| Bill | 07/18/2019 | 071819 | Sharon C. Graham, Esq. | trial expenses, hotel, parking and suppli | 0.00 | 109 | - |
| Credit Card Charge | 07/18/2019 | | Hilton Boston | | 1,672.55 | 109 | 59.94 |
| Credit Card Charge | 07/18/2019 | | Crowne Plaza Boston | | 1,152.35 | 109 | 41.30 |
| Credit Card Charge | 07/20/2019 | | Staples | | 278.35 | 107 | 9.79 |
| Credit Card Charge | 07/26/2019 | | Staples | | 13.43 | 101 | 0.45 |
| Credit Card Charge | 07/26/2019 | | Staples | | 195.26 | 101 | 6.48 |
| Bill | 08/02/2019 | 080219 | National Video Reporters | 07-09-19 reental | 1,512.44 | 94 | 46.74 |
| Credit Card Charge | 08/08/2019 | | U.S. Post Office | | 11.50 | 88 | 0.33 |
| Bill | 08/26/2019 | 082619 | Sharon C. Graham, Esq. | trial expenses: parking and supplies | 304.30 | 70 | 7.00 |
| Total Hache | | | | | 104,389.12 | | 15,478.20 |

# EXHIBIT D

# LYNN, LYNN, BLACKMAN & MANITSKY, P.C.

December 23, 2019                              *VIA EMAIL AND FIRST CLASS MAIL*

Jeffrey S. Raphaelson, Esq.
Raphaelson Attorneys at Law
15 Broad Street, 7th Floor
Boston MA 02109
jsr@raphlaw.com

RE:    *Demand Letter Under Chapter 93A of the Massachusetts General Law;*
       *Hache v. Wachusett Mountain Assoc.*

Dear Mr. Raphaelson:

Our firm represents AmWins Group, Inc. ("AmWins") with regard to your November 27, 2019 demand letter under M.G.L. c. 93A and c. 176D. Please consider this AmWin's response. M.G.L. c. 93A § 9(3).

The assertions in your November 27, 2019 demand letter were thoroughly addressed in Attorney William Schneider's November 4, 2019 letter to you on behalf of Granite State Insurance Company, which is attached hereto and incorporated by reference as if set forth in its entirety.

In sum, contrary to your assertions, liability for Mr. Hache's claims was not reasonably clear. Wachusett and its insurers conducted a reasonable investigation of the claims concerning causation and damages and acted in good faith in efforts to resolve the claims. At no time did AmWins engage in unfair deceptive acts or practices unlawful under M.G.L. c. 93A and c. 176D.

The standard for determining the adequacy of an insurer's response to a demand for relief under c. 93A is "whether, in the circumstances, and in light of the complainant's demands, the offer is reasonable." *Clegg v. Butler*, 424 Mass. 413, 420 (1997). "So long as the insurer acts in good faith, the insurer is not held to standards of omniscience or perfection; it has leeway to use, and should consistently employ, its honest business judgment." *Bolden v. O'Connor Café of Worcester*, 50 Mass. App. Ct. 56, 67 (2000). "Negotiating a settlement, particularly when the damages are unliquidated, is, to an extent, a legitimate bargaining process. The statute [M.G.L. c. 176D, § 3(9)] does not call for a defendant's final offer, and experienced negotiators do not expect it or take

seriously a representation that it is." *Forucci v. U.S. Fiduciary & Guaranty Co.*, 1 F.3d 1, 2 (1st Cir. 1993).

As long as an insurer has a plausible legal or factual position, even one that ultimately turns out to be mistaken or unsuccessful, the insurer's actions in assessing the claim do not violate M.G.L. c. 93A or c. 176D. *See Bolden*, 50 Mass. App. Ct. at 66–67 ("what matters in the G.L.c. 93A case is whether [the insurer] reasonably believed that [the insured's] liability was not clear or was unreasonable in holding that belief"); *See also Guity v. Commerce Ins. Co.*, 36 Mass. App. Ct. 339 (1992) (as long as an insurer has a plausible legal or factual position, even one that ultimately turns out to be mistaken or unsuccessful, the insurer's actions in assessing the claim do not violate M.G.L.c. 93A or c. 176D); *O'Leary–Alison v. Metropolitan Prop. & Cas. Ins. Co.*, 52 Mass. App. Ct. 214, 217 (affirming trial judge's determination that the insurer's offers of settlement were reasonable and made in good faith and that the insurer had multiple reasons to be skeptical of the injured party's damage claims); *Clegg*, 424 Mass. at 421 (where the term "liability" in the context of c. 176D § 3(9)(f) "encompasses both fault and damages ... [o]ur decisions ... in no way penalize insurers who delay in good faith when liability is not clear and requires further investigation").

Here, for all of the reasons stated in Mr. Schneider's letter, Defendant's insurers acted in good faith regarding settlement. The parties had reasonable differences as to the value of the case, particularly concerning damages. Defendant's insurers conducted a reasonable investigation, retaining and relying on experts in neuropsychology, psychiatry neuroimaging, and occupational therapy as a basis to contest the extent of the physical and brain injury damage claims. Defendant's insurers incrementally increased their offers, reaching the policy limit of $1 million dollars, and further engaging the excess insurer to offer a total settlement amount of $3 million. Defendant's settlement offers were reasonable under the circumstances, and ultimately in line with the outcome at trial, which did not approach Plaintiff's demands. Indeed, even Defendant's initial settlement offer of $15,000 was closer to the jury's $3.275 million dollar verdict than Plaintiff's initial demands of $10 and $9 million dollars.

Plaintiff was required to prove his case and Defendant was entitled to rely on its experts and defenses. AmWins did not engage in unfair deceptive acts or practices with regard to settlement. The jury award and judgment have adequately compensated Mr. Hache. He is not entitled to more.

Without waiver, as you are aware, Mr. Schneider's November 4, 2019 letter tendered the sum of $104,389.14, representing incurred litigation expenses, and an additional $9,000.00, representing the attorney fees for drafting the demand letter, as a full resolution of your demand arising out of the litigation.

Your November 27, 2019 letter includes the identical demand directed to AmWins. However, the Granite State Insurance Company tender includes all of Wachusett's insurers involved in the litigation. As that tender constitutes any claimed actual damages, AmWims tenders an additional twenty-five dollars ($25.00), pursuant to M.G.L. c. 93A § 9(3). As with the Granite State Insurance Company tender, AmWins' tender is made under to the "safe harbor" provisions of c. 93A and should not be considered an admission of liability in subsequent proceedings, if any. We hope that this resolves any remaining dispute.

2

Please contact me with questions or concerns.  Thank you.

Sincerely,

LYNN, LYNN, BLACKMAN & MANITSKY, P.C.

*/s/ Sean M. Toohey*

Sean M. Toohey, Esq.
stoohey@lynnlawvt.com

Enclosure

# MORRISON MAHONEY LLP

### COUNSELLORS AT LAW

William A. Schneider, Partner
Direct Dial: 617 439-7573
Direct Fax: 617 342-4951
wschneider@morrisonmahoney.com

250 SUMMER STREET
BOSTON, MA 02210-1181
617-439-7500

| | |
|---|---|
| MASSACHUSETTS | NEW HAMPSHIRE |
| BOSTON | MANCHESTER |
| FALL RIVER | |
| SPRINGFIELD | NEW JERSEY |
| WORCESTER | PARSIPPANY |
| CONNECTICUT | NEW YORK |
| HARTFORD | NEW YORK |
| STAMFORD | |
| | RHODE ISLAND |
| ENGLAND | PROVIDENCE |
| LONDON | |

November 4, 2019

*Via E-Mail: jsr@raphlaw.com*
*And First Class Mail*

Jeffrey S. Raphaelson, Esq.
**Raphaelson Attorneys at Law**
15 Broad Street, 7th Floor
Boston MA 02109

Re: **Insured:**      **Wachusett Mountain Assoc.**
    **Claimant:**      **Alexander Hache**
    **Claim No.:**      **3157464777US**
    **Date of Loss:**      **March 8, 2015**
    **Our File No.:**      **10081363**

Dear Attorney Raphaelson:

This law firm represents Granite State Insurance Company ("Granite State") in connection with the matter referenced above. We write on behalf of our client concerning your October 4, 2019, correspondence addressed to Granite State and AIG Domestic Claims, Inc., care of Attorney Matthew Sweet with the firm of Hamel, Marcin, Dunn, Reardon & Shea, PC. Please be advised that neither Attorney Sweet nor his firm are authorized to accept service of demand letters for Granite State or AIG Claims, Inc., (formerly AIG Domestic Claims, Inc.).[1]

Nevertheless, following our clients receipt of your letter, we undertook to review the handling of this personal injury claim in light of your assertions that they Granite State and its claim administrator committed unlawful insurance claim settlement practices that violate G.L. c. 93A. This undertaking revealed that, to date, Granite State, proceeded appropriately with its handling of this matter where liability was not reasonably clear, and that the company complied fully with its contractual obligations and statutory duties. For these reasons, Granite State and its claims administrators must respectfully reject your

---

[1] Please also note that AmWins served as the program claims administrator for Granite State under primary policy #02-LX-011739248-2 under the supervision of AIG Claims, Inc.

MORRISON MAHONEY LLP

Jeffrey S. Raphaelson, Esq.
November 4, 2019
Page 2

assertion they violated G.L. c. 176D, otherwise engaged in unfair deceptive acts or practices unlawful under c. 93A.

At the outset, we question the propriety of a post-judgment c. 93A demand for settlement relief to an insurer that is only sent *after* the insurer has fully paid and fully satisfied a final judgment obtained by the plaintiff. A legally sufficient demand letter must give reasonable notice of the injuries suffered and the relief demanded in a manner that provides the recipient with an opportunity to review the facts and law so as to decide upon a reasonable offer of settlement. *Spring v. Geriatric Authority of Holyoke*, 394 Mass. 294 (1985). At no time before the judgment in the underlying case or payment of that judgment did you or Mr. Hache demand any relief under c. 93A or raise concerns about how Granite State, AIG Claims, or the program administrator handled the claim. This is not surprising since, as set forth in greater detail below, liability, which includes causation and damages, was never reasonably clear. Regardless, given the timing of your demand letter in relation to the outcome of the underlying case, and the fact Granite State and the excess insurer have paid, in full, the judgment and all related interest, it is unclear exactly what specific relief Mr. Hache believes he is due from Granite State under the circumstances.

Turning to the facts of the claim, those concerning the defendant's legal responsibility for the accident are presently not subject of debate. Initial indications raised questions about whether and to what extent the defendant was liable to the plaintiff, with each side supporting its position with expert opinions. As you know, the defense ultimately conceded liability for the incident before trial based on facts disclosed later in the case during discovery. The fact that the defendant allegedly committed perjury and/or spoliated evidence to cover up fault for the incident in no way arose from or implicates conduct on the part of Granite State or its authorized representatives in the handling of the claim or efforts to negotiate settlement.

Briefly, on March 8, 2015, Alexander Hache, who was then 12 years old, fell 30 feet from a chairlift at the Wachusett Mountain Ski Area striking the ground. Mr. Hache had attempted to load the Polar-Express four-person chairlift; but he failed to become properly seated. An adult sitting next to him was able to hold him by a hand as he dangled from below the chair as the chair continued moving forward up the mountain. Lift riders immediately called out to the lift operator to stop the lift. After a period, the lift was brought to a brief stop and then was restarted at a faster pace in an attempt to get Mr. Hache to the top of the lift. As the lift again continued in motion, his ski encountered a snow-gun, and with the vibration of the chair as it went over support tracks, he slipped from the hand of the other rider falling to the ground. As a result, Mr. Hache sustained a non-displaced pelvic fracture and compression fractures of T11, T12, L3 and L4. He also suffered a

MORRISON MAHONEY LLP

Jeffrey S. Raphaelson, Esq.
November 4, 2019
Page 3

closed head injury consistent with a concussion which he claimed left him with permanent cognitive impairment.

In terms of orthopedic damages, there was little dispute, based on an objective review of the medical evidence, that Mr. Hache recovered well from his orthopedic injuries and had no clear permanent limitations relative to those injuries. In fact, he was able to run cross-country and compete on the high school track team. The critical damages issues in the case concerned the plaintiff's ability to establish a brain injury resulting in permanent cognitive impairment, and his more recent physical symptoms. The plaintiff argued that Mr. Hache sustained a diffuse brain injury resulting in functional impairments to memory, executive function and other related areas and that he has sustained an economic loss to his earnings capacity in the range of $1.5 to $2 million. This evidence was hardly unequivocal and most certainly subject to fair debate and challenge by the defense since Mr. Hache had excelled at times in school, and there was conflicting experts opinions and no objective evidence of clear permanent impairment. In the end, the jury awarded Alex only $275,000.00 for his future lost earnings due to the alleged cognitive impairment, an amount significantly less than what the plaintiff claimed and sought at trial.

More specifically, the plaintiff's own medical records and course of treatment, together with the defendant's evaluation as informed by the medical experts retained by counsel, raised genuine doubts about the severity of the injuries being claimed and the monetary value of the case for settlement purposes. The defense had Mr. Hache's medical records reviewed by Stephen Sarfaty, Psy.D, Neuropsychologist with Comprehensive Neuropsychological Services, P.C. Dr. Sarfaty did not believe that the plaintiff had any acquired brain or psychological impairment attributable to this incident (or the prior concussion).

Martha Shenton, Ph.D., Professor, Department of Psychiatry and Department of Radiology and Director, Psychiatry Neuroimaging Laboratory at the Brigham and Women's Hospital also assisted with the defense. Dr. Shenton evaluated the neuroimaging data and its interpretation by Dr. Benson. She concluded that DTI is not standardized for use in the clinic and at the patient level. She opined that Dr. Benson had inappropriately used the post-processing analysis tools to compare Mr. Hache to a poorly matched group of controls (other individuals) who are imaged on magnets of different strengths using different imaging sequences. Accordingly, there were credible concerns about the interpretation of the DTI findings, including methodological and statistical problems, problems with the healthy control sample and problems with the assumptions regarding the validity of the approach used that provided a legitimate basis

MORRISON MAHONEY LLP

Jeffrey S. Raphaelson, Esq.
November 4, 2019
Page 4

for defense experts to opine that Dr. Benson's claims were overstated, speculative, and not valid.

Lastly, Nancy L. Segreve, a Certified Rehabilitation Counselor with Occupational Resource Network weighed in about the plaintiff's vocational prospects. She felt that he had developed coping strategies, and with accommodations focused on extended time for tests and projects, he had achieved academic success despite these limitations. Her conclusion was that there are no vocational losses as a result of the injuries from his fall. Again, the jury seemed to agree, at least in part, that any cognitive deficit was not as severe or impactful on plaintiff's future earnings as claimed.

With regards to efforts to settle the case, the parties voluntarily attended a mediation with Brian Mone on April 3, 2018. The facts and available evidence at that time did not support or establish clear liability on the part of the defendant for your settlement demand of $9,000,000.00, which you made at the outset of the mediation without any prior notice to the defendant or Granite State. The disparity between the parties' respective valuations of the case resulted in the early termination of the mediation process. Later efforts to revisit settlement at mediation were undermined by plaintiff's demand for a substantial offer ahead of time despite the fact that the excess insurer planned to participate.

As you know, Granite State later increased its offer of settlement to $425,000.00. This offer reflected the ongoing, genuine dispute and disagreement bearing on the plaintiff's alleged damages. Those damages remained a moving target up until the trial in July 2019, since the plaintiff presented evidence of more recent symptoms and treatment. When it became apparent that additional sums were necessary to settle the case before trial, Granite State authorized an offer of the full $1,000,000.00 primary limit. Settlement negotiations continued through trial, with the plaintiff spurning an offer from the excess liability insurer and primary in the amount of $3,000,000.00. Ultimately, the jury's verdict was more in line with the insurance companies' final settlement offer than the plaintiff's last settlement demand.

You raise two specific contentions Granite State's alleged conduct, which you believe violate the provisions of Chapter 93A. First, you allege that Granite State failed to pay the claim without conducting a reasonable investigation based upon all available information in violation of G.L. c. 176D, §3(9)(d). Second, you claim that Granite State violated G.L. c. 176D, §3(9)(f) because it failed to effectuate a prompt, fair and equitable settlement of the claim after liability became reasonably clear. Granite State denies these allegations, and we address each of contention below.

MORRISON MAHONEY LLP

Jeffrey S. Raphaelson, Esq.
November 4, 2019
Page 5

First, you contend Granite State violated G.L. c. 176D, § 9(3)(d) because it allegedly refused to pay the claim without conducting a reasonable investigation based upon all available information. Nowhere in your letter, however, have you identified any information that Granite State or its claim administrators failed, refused, or neglected to consider. To prevail on a claim under Section 3(9)(d), a claimant must show what the insurer actually failed to do, or what additional steps the insurer could have taken. *O'Sullivan v. Hingham Mut. Fire Ins. Co.*, 2009 WL 2438329, at *3 (Mass. App. Ct. July 30, 2009). "In other words, [a claimant must detail] what a reasonable investigation should have entailed." *Id.* No such showing is made in your letter. Instead, you simply conclude that the insurer's investigation of the claim was inadequate. This type of reasoning is not a sufficient basis to establish a violation of G.L. c. 176D, § 9(3)(d). Indeed, and contrary to your assertion, Granite State conducted a reasonable investigation and considered all available information in the context of informing its decisions regarding settlement.

Second, you allege Granite State violated G.L. c. 176D, §3(9)(f) because it failed to effectuate a prompt, fair and equitable settlement of the claim after liability became reasonably clear. However, Granite State had no legal obligation to tender an offer of settlement because the defendant's liability was not reasonably clear based on the parties' genuine dispute over damages. *See Hopkins v. Liberty Mut. Ins. Co.*, 434 Mass. 556 (2001). In this regard, the term "liability" encompasses both fault and damages. *See Hopkins*, 434 Mass. at 566. Deciding whether liability is "reasonably clear" involves "an objective standard of inquiry into the facts and the applicable law." *Demeo v. State Farm Mut. Auto. Ins. Co.*, 38 Mass. App. Ct. 955, 956 (1995). The question whether liability is reasonably clear depends on "'whether a reasonable person, with knowledge of the relevant facts and law, would probably have concluded, for good reason, that the insurer was liable to the plaintiff.'" *Nyer v. Winterthur Int'l*, 290 F.3d 456, 461 (1st Cir. 2002) (*quoting Demeo*, 38 Mass. App. Ct. at 956). This objective standard takes into account the totality of the circumstances. It does not rely on subjective considerations or conclusory allegations.

An insurer such as Granite State is "not required to put a fair and reasonable offer on the table until liability and damages [are] apparent" or if "there exist[s] a legitimate difference of opinion as to the extent" of liability. *Bobick v. U.S. Fid. & Guar. Co.*, 439 Mass. 652, 658-60 (2003). Suffice it to say that each side presented evidence in support of their respective positions on damages which, in our view, belies the allegation that liability on the part of the defendant was reasonably clear within the meaning of G.L. c. 176D, §3(9)(f). More to the point, our clients did make several good faith efforts to effectuate a settlement of the claim. Those efforts were unsuccessful based on your subjective view about the settlement value of the claim and unwillingness to engage in settlement discussions absent concessions from Granite State to offer its limit as a condition precedent to further negotiations.

MORRISON MAHONEY LLP

Jeffrey S. Raphaelson, Esq.
November 4, 2019
Page 6

We also note that the parties' good faith disagreement over the value of the case is not actionable under c. 93A. Granite State its representatives had legitimate, good faith doubt that the insured's liability is reasonably clear, and questioned, in good faith, the justification for the plaintiffs' extraordinary $9,000,000.00 settlement demand which, at one point, you reduced to $5,000,000.00 only to increase the demand back to $9,000,000.00 before trial. Indeed, even assuming liability were reasonably clear, which it was not, the reasonable settlement value of the case was nowhere near this sum.

Well-established precedent indicates that Granite State and its representatives did not engage in any unfair or deceptive conduct which violates G.L. c. 176D or G.L. c. 93A simply because they disagreed with the plaintiff's settlement demand or views about fault or damages. Granite State, on several occasions, made good faith efforts to effectuate settlement and, therefore, fulfilled its statutory obligations to the plaintiff. Perfection is not the standard that Chapter 176D imposes upon the handling of a claim. Moreover, several decisions hold that where multiple reasons support an insurer's evaluation of a claim and conduct during settlement negotiations, there is no violation of either G.L. c. 93A or G.L. c. 176D. *See, e.g., Bobick,* 439 Mass. at 658-62; *Guity v. Commerce Ins. Co.,* 36 Mass. App. Ct. 339, 343-44 (1994).

This is also true in situations where an insurer is ultimately found to have been incorrect or even low in its evaluation. *See Forcucci v. United States Fidelity & Guar. Co.,* 11 F.3d 1 (1st Cir. 1993)(recognizing that negotiation of a settlement is a legitimate bargaining process in which an insurer is only obligated to make an offer within the scope of reasonableness, which is considered in light of the situation as a whole. In such circumstances the insurer has not violated the statute, even if a judge or jury would ultimately find the insurer's evaluation of a claim was incorrect or low). Granite and AIG Claims have consistently employed their honest business judgment in good faith in making its evaluation of the claim for settlement purposes and is not held to standards of omniscience or perfection. *See Peckham v. Continental Cas. Ins. Co.,* 895 F.2d 830, 835 (1st Cir. 1990).

Moreover, as noted at the outset, no Massachusetts case law has expressly sanctioned a post-judgment demand for relief under c. 93A after the judgment is fully satisfied, based on the allegation that the insurer failed to effectuate settlement beforehand. Notwithstanding the above, in an effort to resolve your client's belated c. 93A claims, Granite State is prepared to make a reasonable tender of settlement in relation to injury that may have actually been suffered by your client as provided by the "safe harbor" provisions of c. 93A.

MORRISON MAHONEY LLP

Jeffrey S. Raphaelson, Esq.
November 4, 2019
Page 7

In your letter, you allege the insurer's statutory transgressions resulted in damages: 1) measured by the underlying judgment; 2) accrued interest; 3) attorney's fees as evidenced in a referenced G.L. c. 231, §6F motions; 4) scheduled litigation expenses; and 5) your fees to author the c. 93A letter.  However, as noted below, the majority of these items do not appear to be damages presently owed to your client, or injury caused by the insurer's alleged conduct.

First, to the extent that your client allegedly suffered damages measured by the judgment which entered in the underlying tort action, Granite State and the excess insurer have already paid the judgment, in full, inclusive of both pre-judgment interest and post-judgment interest. Therefore, the basis for these claimed damages no longer exists. This renders your demand for relief based upon the judgment and accrued interest both defective and improper. Your client is not entitled to these amounts again.

As for attorney's fees, plaintiff would have had to pay his attorney's fee whether the case resolved by settlement or judgment. Your letter does not reflect that Mr. Hache incurred any greater attorney's fee as a result of having to take his case to trial. Further, to the extent you apparently base any claim to attorney's fees on the conduct of the underlying defendant, that conduct is presently the subject of unresolved, opposed motions pending before the court. More significantly, however, is the fact that an insurer such as Granite State does not insure its policyholder against the consequences of fraud or the type of conduct alleged in your motion and it is not responsible for the activities alleged.  As such, your client has not incurred attorney fees as a result of the actions of Granite State or its claims representations regardless of the outcome of the pending motion.

Finally, to the extent that plaintiff has incurred litigation expenses that have not been otherwise reimbursed and that may arguably be causally related to this case not resolving sooner as argued by plaintiff's c. 93A failure to settle allegations, Granite State hereby tenders the sum of $104,389.14 as attached to your October 4, 2019 letter demand representing incurred litigation expenses, as well as an additional $9,000.00 representing the attorney fees claimed to draft the demand letter.  As noted above, this tender is made pursuant to the "safe harbor" provisions of c. 93A, and should not be considered an admission of liability in subsequent proceedings, if any.

MORRISON MAHONEY LLP

Jeffrey S. Raphaelson, Esq.
November 4, 2019
Page 8

   We hope the foregoing responds to your concerns.  In the event you have any
questions, please do not hesitate to call or write.


                    Sincerely,

                    MORRISON MAHONEY LLP

                    *William A. Schneider*

                    William A. Schneider

WAS/ckb

# EXHIBIT E

# RAPHAELSON

15 Broad Street, 7th Floor    617.204.9800 (phone)
Boston, MA 02109    617.204.9801 (fax)
www.raphlaw.com

ATTORNEYS AT LAW

October 28, 2019

<u>By Priority Mail</u>

AIG Domestic Claims, Inc.
Claims Manager
P.O. Box 25967
Shawnee Mission, KS 66225

Re:    <u>Demand Letter Under Chapter 93A of the Massachusetts General Laws</u>

Dear Sirs/Madams:

As you know, this firm represents Alex Hache in connection with the serious injuries he sustained in a fall from a moving high-speed quad chairlift at the ski area owned and operated by your insured, Wachusett Mountain Ski Area, Inc. ("Wachusett"). This letter constitutes a demand for settlement under Chapter 93A of the Massachusetts General Laws from Granite State Insurance Company and its claims handler, which I understand is AIG Domestic Claims, Inc. If AIG Domestic Claims, Inc. is not the correct AIG entity, then consider this letter to be directed to the correct AIG entity.

As you know, the accident involving Alex occurred on March 8, 2015, when then 12-year-old Alex sat on the arm of a chair while loading onto the Polar Express lift at Wachusett. Having never seated, Alex's body immediately slipped off the chair and turned, so that his back was to the mountain and his legs were under the chair as the chair moved through the load area. One of the other riders on the chair grabbed hold of Alex and the other riders immediately yelled "stop the lift," but the lift continued to ascend the mountain with Alex hanging from it for about three minutes. Shortly after Alex's skis hit a snowmaking gun Wachusett negligently left underneath the chair lift, the other chair riders lost hold of Alex and he fell thirty feet to the ground below. He sustained a permanent brain injury, five fractured vertebrae with permanent back pain, and a fractured pelvis as a result of the fall. On July 16, 2019, after a five-day trial, the jury returned a verdict in favor of Alex for $3,275,000. Judgment in the amount of $4,560,105,20 entered on July 19, 2019.

AIG Domestic Claims, Inc.
93A Demand Letter
October 28, 2019
Page 2

Immediately following the incident in March 2015, Wachusett and the Massachusetts Department of Public Safety ("DPS") performed investigations into the surrounding circumstances. Your agent, Mr. Sweet, was involved in the investigations from near the outset. You possessed the results of the investigations when they concluded. The DPS found that your insured, Wachusett, failed to load Alex on the chair as required by Massachusetts regulations, and that it failed to maintain the ski area in a "reasonably safe condition or manner" in violation of Massachusetts General Law.

On April 12, 2016, Alex filed a complaint against Wachusett. At that time, Wachusett's negligence was reasonably clear. Alex never seated properly in the chair. The danger posed to Alex would have obvious to the lift attendant while the chair was in the load area had he been watching or listening to the riders on the chair, as he was required to do to ensure a safe load. He was not watching and listening when Alex loaded the chair and as a result the chair ascended up the mountain with Alex hanging from it for three minutes until he fell 30 feet to the ground below. Wachusett failed to follow its own policy and retract the snowmaking gun before operations began that day, and Alex hit it, which contributed to the fall. These facts have never been in dispute.

On September 29, 2016, Alex produced in the litigation medical records and billing information relating to the injuries he sustained in the fall. The records established that Alex sustained five vertebral fractures and a pelvis fracture for which he underwent two rounds of physical therapy, post-traumatic stress disorder for which he underwent counseling, and a concussion with post-concussion symptoms for which he received treatment. The billing records totaled more than $30,000.

On or before November 1, 2016, liability was reasonably clear and you were required under M.G.L., c. 176D to promptly make a reasonable offer of settlement. No timely offer was made.

In January 2017, Alex testified in his deposition that he didn't know exactly what happened that led him to sit on the arm of the chair, but when he sat down there was no space between him and Mr. Lavigne, the rider to his immediate left. In light of Alex's testimony, there was no evidentiary basis for you to claim that Alex had any comparative fault for the accident. Depositions taken of the three other chair riders later in 2017 confirmed their earlier witness statements that they knew

AIG Domestic Claims, Inc.
93A Demand Letter
October 28, 2019
Page 3

of no lack of care on Alex's part. There was never any evidence from any source that Alex failed to use due care when loading the chair. You knew in January 2017 that Wachusettt was 100% responsible for the accident.

In his deposition in January 2017, Alex also testified that he had ongoing physical and cognitive problems relating to his injuries, he could no longer participate in the contact sports he loved, and he no longer skied. In May 2017, Heidi Hache gave corroborating deposition testimony on these elements of damage. Also in May 2017, we forwarded to you Dr. McGrath's first neuropsychological evaluation evidencing that Alex sustained significant and permanent cognitive impairment as a result of the mild traumatic brain injury he sustained in the fall.

By September 2017, you knew that Wachusett had falsified its training records to show that the Polar Express base lift attendant had taken the online Bullwheel training course, and that it had committed perjury and spoliated evidence to hide the fraud.

In April 2018, you made your first offer of settlement. At the mediation that took place on April 3, you offered $15,000 to settle Alex's claims. The mediation ended abruptly after you refused to increase your offer despite a $1 million reduction in Alex's demand from $10 million to $9 million.

On November 2, 2018, you increased your offer to $425,000, shortly after Wachusett admitted liability. You did not increase your offer to the $1 million coverage limit until late June 2019, shortly before the trial, despite knowing for many months that the fair value of Alex's claims exceeded $3 million.

I refer you to the litigation file in this case, including the depositions, the interrogatory answers and document production responses, and the motions filed by the parties, including specifically Plaintiff's two motions for Fraud on the Court and Plaintiff's motion for c. 231, § 6F relief. I incorporate herein all three motions and their supporting documents.

"An insurance company commits an unfair claim settlement practice if it '[f]ail[s] to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear. ... '[A]ny person whose rights are affected by another person violating the provisions of [G.L. c. 176D, § 3(9) (*f*),]' is entitled to bring an action to recover for the violation under G.L. c. 93A, § 9. If there is a finding

AIG Domestic Claims, Inc.
93A Demand Letter
October 28, 2019
Page 4

in such an action that the insurer has failed to effectuate a prompt, fair, and equitable settlement causing injury, the plaintiff is entitled to the greater of actual damages or statutory damages of twenty-five dollars. ... However, if the judge finds the insurer's action was wilful or knowing, ... , the judge must grant double or treble damages." Rhodes v. AIG Domestic Claims, Inc., 461 Mass. 486, 494–95 (2012) (internal citations omitted). "If a defendant commits a wilful or knowing c. 93A violation that finds its roots in an event or a transaction that has given rise to a judgment in favor of the plaintiff, then the damages for the c. 93A violation are calculated by multiplying the amount of that judgment." Id. at 499.[1]

    You both violated c. 176D, §§ 3(9) (d) and (f), and Chapter 93A, when you failed to pay Alex's claim without conducting a reasonable investigation based on all available evidence and failed to effectuate a prompt, fair and equitable settlement of Alex's claim after liability became reasonably clear.  These violations were ongoing before, at, and after the mediation, and through when you tendered the coverage limit shortly before the July 2019 trial.  Your actions in violation of Chapters 176D and 93A were willful and knowing.

    As a result your violations of Chapters 176D and 93A, Alex sustained damages measured by the judgment entered in the underlying tort action, accrued interest, Alex's attorney's fees evidenced in the aforementioned 6F motion, and Alex's litigation expenses, a summary of which is attached hereto.  Alex is also entitled to be reimbursed his attorneys' fees associated with this letter and his Chapter 93A claims, the reasonable value of which is currently $9,000 (20 hours at $450 an hour).

    Alex hereby demands that each of you make a reasonable offer of settlement to resolve his Chapter 93A claims. Failure to do so may subject you to multiple damages measured by at least two times and up to three times the amount of Alex's actual damages.  I look forward to hearing from you.

                                                Sincerely,

                                                Jeffrey S. Raphaelson

---

[1] In addition to the duty to make a prompt fair and equitable settlement offer, an insurer violates 176D, § 3(9) (d) it if fails to "pay claims without conducting a reasonable investigation based on all available evidence."

08/26/19

Jeffrey Raphaelson
HACHE Expenses
All Transactions

| Type | Date | Num | Name | Memo | Amount |
|------|------|-----|------|------|--------|

**Expenses to be reimb by client**
**Hache**

| Type | Date | Num | Name | Memo | Amount |
|------|------|-----|------|------|--------|
| Check | 02/01/2017 | 2171 | Neal McGrath, PhD | retainer for neuropsych eval | 2,500.00 |
| Check | 02/01/2017 | 2172 | Sharon C. Graham, Esq. | Hache - 52 miles SCG 1/17/17 rev docs | 28.08 |
| Check | 03/01/2017 | 2194 | QuickServ, Inc. | subpoena svc McCormack Cords #2774C | 69.00 |
| Check | 03/01/2017 | 2197 | UPS | 2/1/17 to Dr. McGrath #731AX11057 | 18.37 |
| Check | 03/27/2017 | 2206 | McCarthy Reporting | deposition transcripts | 925.50 |
| Check | 05/09/2017 | 2241 | Neal McGrath, PhD | balance inv #100399 for neuropsych eva | 1,800.00 |
| Check | 05/31/2017 | 2255 | McCarthy Reporting | -MULTIPLE- | 766.70 |
| Check | 06/06/2017 | 2263 | Rehabilitation & Re-Employment | Vocationist | 2,000.00 |
| Check | 06/06/2017 | 2266 | Rye Risk Management LLC | expert - retainer | 5,000.00 |
| Check | 06/29/2017 | 2280 | Bartes | #KUS01-1 UMM | 26.93 |
| Check | 06/29/2017 | 2281 | Doris O. Wang | #100135 depo McDonald and Feeley | 649.00 |
| Check | 06/29/2017 | 2283 | Advanced Court Reporting | depos Darmil and Bonnie Towne | 679.20 |
| Check | 06/29/2017 | 2285 | QuickServ, Inc. | #282142 KOR Mt Wachusett CC. KOR | 176.00 |
| Check | 07/13/2017 | 2290 | Dr. Ain | Expert review | 6,000.00 |
| Check | 07/28/2017 | 2298 | Doris O. Wang | #100063 Crowley | 589.00 |
| Check | 07/28/2017 | 2301 | QuickServ, Inc. | subp Jacob Shepart | 70.00 |
| Check | 07/28/2017 | 2302 | UPS | 731AX12197 - UPS to Ain | 36.73 |
| Check | 07/28/2017 | 2304 | McCarthy Reporting | #170672 Bishop and Goulart | 531.90 |
| Check | 08/08/2017 | 2311 | Noverant, Inc. | | 1,200.00 |
| Check | 01/23/2017 | 2470 | Commonwealth Mediation & Conciliatic | #31608 mediation cost | 2,500.00 |
| Check | 01/23/2017 | 2340 | Rehabilitation & Re-Employment | Vocationist - bal retainer | 500.00 |
| Check | 01/31/2017 | 2319 | QuickServ, Inc. | subp Jonathan Jenn #283576 | 71.00 |
| Check | 09/01/2017 | 2326 | McCarthy Reporting | -MULTIPLE- | 485.35 |
| Check | 09/18/2017 | 2341 | McCarthy Reporting | -MULTIPLE- | 434.90 |
| Bill | 01/01/2018 | 288 | Rye Risk Management LLC | June 2017 through January 2018 | 5,871.68 |
| Check | 03/14/2018 | 2497 | Veatch Occupational Consulting | retainer | 3,000.00 |
| Bill | 03/17/2018 | 4EE36111 | UPS | 03-14-18 Next Day Air Early to Deberd | 34.39 |
| Bill | 03/26/2018 | 13823 | Advanced Court Reporting | 05-05-17 depositions of Brian & Heidi I | 420.00 |
| Credit Card Charge | 04/09/2018 | | Amazon | Amazon order | 45.54 |
| Bill | 05/01/2018 | 293 | Rye Risk Management LLC | March 2018 through April 2018 | 1,200.00 |
| Check | 06/13/2018 | 2503 | Richard Frederick, Ph.D. | | 500.00 |
| Bill | 08/18/2018 | 100627 | Neal McGrath, PhD | -MULTIPLE- | 5,220.10 |
| Bill | 09/10/2018 | 091018 | Veatch Occupational Consulting | 03/19/18 to 09/10/18 vocational consult | 2,350.00 |
| Check | 09/11/2018 | 2506 | Veatch Occupational Consulting | 30.7 hrs 03-19-18 to 08-03-18 fees retair | 6,245.70 |
| Check | 09/12/2018 | 2507 | Dr. David Schap | 8 hrs review vocational report, case anal | 2,080.00 |
| Credit Card Charge | 09/25/2018 | | U.S.Post Office | USPS | 14.50 |
| Credit Card Charge | 09/30/2018 | | Amazon | Amazon order | 90.86 |
| Check | 10/10/2018 | 2510 | Middlesex Rehabilitation | patient records request fee | 40.00 |
| Check | 10/15/2018 | 2511 | Children's Hospital Boston | 11 copies | 33.38 |
| Credit Card Charge | 10/16/2018 | | JetBlue | 10-30-18 flight to Raleigh/Durham | 206.40 |
| Check | 10/17/2018 | 2512 | Boston Digital Productions | production of animated recreation (1/3 is | 3,522.19 |
| Credit Card Charge | 10/23/2018 | 54496 | Medivisuals Inc | visuals of fractures | 1,261.00 |
| Credit Card Charge | 10/26/2018 | | UPS | shipment 10-20-18 | 25.48 |
| Bill | 10/29/2018 | 399933 | QuickServ, Inc. | subpoena service to Dr. Marco Rodrigue | 69.00 |
| Credit Card Charge | 10/30/2018 | | RDU Taxi | Raleigh taxi | 48.48 |
| Credit Card Charge | 10/30/2018 | | Logan Parking | airport parking | 35.00 |
| Credit Card Charge | 10/30/2018 | | CPK RDU | Raleigh food | 20.21 |
| Bill | 10/01/2018 | 2488 | Noverant, Inc. | deposition | 1,500.00 |
| Bill | 11/05/2018 | OCT2018 | Comprehensive Neuro Psych | gathering 1099 and 1099S | 220.00 |
| Credit Card Charge | 11/05/2018 | | U.S.Post Office | USPS | 6.70 |
| Bill | 11/06/2018 | 300220 | QuickServ, Inc. | subpoena service - 7 subpoenas | 483.00 |
| Check | 11/07/2018 | 2513 | Noverant, Inc. | fee | 75.00 |
| Check | 11/09/2018 | 2514 | Boston Digital Productions | production of animated recreation (2/3 is | 3,522.19 |
| Bill | 11/09/2018 | 300389 | QuickServ, Inc. | subpoena service - 2 subpoenas | 132.00 |
| Bill | 11/09/2018 | 300413 | QuickServ, Inc. | subpoena service - patient accounts UMa | 71.00 |
| Bill | 11/09/2018 | 520163987 | UMASS Memorial Medical Center | copy of bill | 31.18 |
| Credit Card Charge | 11/09/2018 | | U.S.Post Office | USPS | 6.70 |
| Bill | 11/12/2018 | 300445 | QuickServ, Inc. | subpoena service - Dr. Christine Wallace | 66.00 |
| Bill | 11/14/2018 | 300557 | QuickServ, Inc. | subpoena service - Paul Garagliano, PT | 71.00 |
| Bill | 11/14/2018 | PIXSL-1 | Sharecare | 127 copies Emerson Hospital | 124.06 |
| Check | 11/20/2018 | 2515 | Boston Digital Productions | production of animated recreation (3/3 is | 3,522.19 |
| Credit Card Charge | 11/21/2018 | | Medivisuals Inc | 30" X 40" enlargements | 275.00 |
| Bill | 11/27/2018 | 13157 | Ruffin Consulting | court reporting and videographer | 676.40 |
| Bill | 11/30/2018 | 125782 | Marathon Courier | -MULTIPLE- | 23.23 |
| Bill | 12/01/2018 | 02480P000724 | FedEx | 02480P000724 &5 11/21/18 | 83.29 |
| Bill | 12/01/2018 | AUG-NOV2018 | Jeffrey S. Raphaelson | -MULTIPLE- | 272.52 |
| Credit Card Charge | 01/01/2019 | | U.S.Post Office | | 7.85 |
| Check | 01/01/2019 | 2520 | Whitelaw, George MD | IME | 650.00 |
| Check | 05/16/2019 | 2529 | Alexandra Stillman, MD | assessment and report | 2,600.00 |
| Credit Card Charge | 05/22/2019 | | UPS | shipment from 02109 to 02109 on 05-18 | 15.96 |
| Bill | 06/04/2019 | 301192 | QuickServ, Inc. | subpoena service - KOR New England E | 132.00 |
| Credit Card Charge | 06/11/2019 | | MRO Corp | 06-11-19 charge | 44.02 |
| Credit Card Charge | 06/14/2019 | | U.S.Post Office | | 7.85 |
| Bill | 06/19/2019 | 301743 | QuickServ, Inc | subpoena service - 7 subpoenas | 480.00 |
| Credit Card Charge | 06/19/2019 | | U.S.Post Office | | 7.85 |
| Bill | 06/21/2019 | 301827 | QuickServ, Inc. | subpoena service - 1 subpoenas - Paul G | 69.00 |
| Bill | 06/24/2019 | RWVU6-1 | Sharecare | 17 copies Whittier Rehabilitation Hospit | 39.49 |
| Credit Card Charge | 06/30/2019 | 126482 | Marathon Courier | 06-21-19 standard delivery to Will Chael | 15.00 |
| Credit Card Charge | 07/02/2019 | | Darcy Schram | | 450.75 |
| Check | 07/03/2019 | 2536 | Neal McGrath, PhD | trial retainer | 1,500.00 |
| Credit Card Charge | 07/09/2019 | | Legal Sea Foods | | 62.91 |
| Credit Card Charge | 07/10/2019 | | Strega Prime | | 61.09 |
| Credit Card Charge | 07/13/2019 | | Hilton Boston | | 1,282.75 |
| Bill | 07/16/2019 | 38323 | National Video Reporters | trial presentation specialist, Middlesex S | 6,525.00 |
| Credit Card Charge | 07/16/2019 | 2537 | Alexandra Stillman, MD | preparation and testimony | 11,650.00 |
| Check | 07/16/2019 | | Strega Prime | | 49.01 |
| Bill | 07/17/2019 | 100810 | Neal McGrath, PhD | 10/01/18 - 07/15/19 phone consultations | 3,046.67 |
| Credit Card Charge | 07/18/2019 | | Hilton Boston | | 1,672.55 |
| Credit Card Charge | 07/20/2019 | | Crowne Plaza Boston | | 1,152.35 |
| Credit Card Charge | 07/20/2019 | | Staples | | 278.35 |
| Credit Card Charge | 07/24/2019 | | Staples | | 13.43 |
| Bill | 08/02/2019 | 080219 | National Video Reporters | 07-09-19 rental | 195.26 |
| Credit Card Charge | 08/01/2019 | | U.S. Post Office | | 1,512.44 |
| Bill | 08/26/2019 | 082619 | Sharon C. Graham, Esq. | trial expenses; parking and supplies | 11.50 |
| | | | | | 104.30 |

| | | | | | |
|------|------|-----|------|------|--------|
| **Total Hache** | | | | | |
| **Total Expenses to be reimb by client** | | | | | |
| **TOTAL** | | | | | **104,389.12** |