# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALEXANDER HACHE, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| AIG CLAIMS, INC., GRANITE STATE | ) |
| INSURANCE COMPANY, and AMWINS | ) |
| PROGRAM UNDERWRITERS, INC., | ) |
| | ) |
| Defendants. | ) |

CIVIL ACTION
NO. 20-CV-10652-PBS

## ORDER ON DEFENDANTS' MOTIONS FOR PROTECTIVE ORDER

June 15, 2022

DEIN, U.S.M.J.

### I.   INTRODUCTION

The plaintiff, Alexander Hache ("Alexander" or "Hache"), has brought this diversity

action against AIG Claims, Inc. ("AIG"), Granite State Insurance Company ("Granite State") and

AmWINS Program Underwriters, Inc. ("AmWINS"), claiming that the defendants violated

Massachusetts General Laws chapters 93A and 176D by engaging in unfair insurance claim

settlement practices in connection with the state court case of <u>Heidi Hache, Individually and as</u>

<u>Mother and Next Friend of Alexander Hache and Brian Hache, Individually v. Wachusett</u>

<u>Mountain Ski Area, Inc.,</u> C.A. No. 1681CV01055 (the "Underlying Action").  The matter is before

the court on "AmWINS Program Underwriters Inc.'s Motion for a Protective Order to Preclude

Any Use of Privileged Documents Produced in Remand Proceedings in this Action" (Docket No.

123) and the "Defendants' Motion for Protective Order Precluding Plaintiff from Using

Privileged Documents Disclosed in Underlying Case" (Docket No. 124), by which AIG, Granite State and AmWINS are seeking an order precluding Hache from using certain documents and/or information derived therefrom in this action and compelling him to destroy the documents or return them to the defendants.  The defendants claim that the documents, which Hache obtained in the Underlying Action, are covered by the attorney-client privilege and/or the work product doctrine and should not have been produced.  However, Hache contends that the defendants implicitly waived their claims of privilege and work product protection when they chose not to intervene to protect the documents in the state court proceedings.  While this court is cognizant of the defendants' efforts to preserve their right to assert the attorney-client privilege and work product protection over the contested documents in this action, it finds that their decision not to intervene to assert their rights in the Underlying Action was unreasonable under the circumstances presented in this case and resulted in an implicit waiver of their attorney-client privilege and work product claims.  Therefore, and for all the reasons described below, the defendants' motions for a protective order are DENIED.

## II.  BACKGROUND

As described above, this case arises out of the defendants' involvement in an Underlying Action that was filed in Massachusetts Superior Court by Heidi Hache, individually and as next friend to her sons Alexander and Brian, against Wachusett Mountain Ski Area, Inc. ("Wachusett").  By her claims in the Underlying Action, Heidi Hache was seeking to hold Wachusett liable for serious injuries that Alexander sustained when, at the age of twelve, he fell from a Wachusett ski lift.  See Hache v. Wachusett Mountain Ski Area, Inc., 99 Mass. App. Ct. 1126, 170 N.E.3d 345, 2021 WL 2065901, at *1 (May 24, 2021).  At the time of Hache's injury,

Wachusett was insured under a general liability insurance policy that had been issued by

defendant Granite State and provided coverage up to $1 million.  (Schneider Aff. (Docket No.

126) ¶ 10).  The policy was managed and administered by defendant AmWINS, with financial

oversight from defendant AIG.  (Id.)  Wachusett was also insured under a commercial umbrella

insurance policy that had been issued by National Union Fire Insurance Company ("National

Union") and was administered directly by AIG.  (Id. ¶ 11).  National Union is not a party to the

instant action.

Wachusett was represented in the Underlying Action by the law firm of Hamel Marcin

Dunn Reardon & Shea, P.C. ("Hamel Marcin").  (Id. ¶ 12).  Hamel Marcin was formally retained

by AmWINS to defend Wachusett, and Granite State funded the firm's defense of Wachusett

through trial.  (AIG Mem. (Docket No. 125) at 3).  Thus, the insurers communicated with and

relied on advice from Hamel Marcin as part of a joint defense with Wachusett.  (See id. at 12-

13; AmWINS Mot. (Docket No. 123) at 2).  On July 16, 2019, following a five-day trial, a jury

returned a verdict for $3,275,000 in favor of Hache, and on July 19, 2019, the state court

entered judgment for the plaintiff in the amount of $4,560,105.20.  (Schneider Aff. ¶ 13).  On

September 6, 2019, Granite State issued a $1,417,245 payment to Hache, which included the

full amount of the coverage available under its policy, as well as a proportionate share of the

prejudgment and post-judgment interest that Granite State owed under the Supplementary

Payment provisions of the policy.  (Id. ¶ 17).  The remainder of the judgment was paid by

National Union under the terms of its umbrella policy. (Id. ¶ 18).

[3]

## The "Fraud on the Court" Claims

During discovery in the Underlying Action, the plaintiff uncovered evidence that a Wachusett employee had altered the training records of the individual who was operating the ski lift at the time of Alexander's injury.  See Hache, 2021 WL 2065901, at **1-2.  After the Superior Court entered judgment for the plaintiff, Hache filed two post-trial motions relating to that conduct.  Therein, Hache requested a finding that Wachusett committed fraud on the court by falsifying an employee training record to hide the lack of training, producing the falsified record in discovery, testifying to the authenticity of the doctored training record and spoliating company records to conceal the fraud.  Id.  The plaintiff also moved for an increased rate of interest on the judgment, attorneys' fees, and costs pursuant to Mass. Gen. Laws c. 231, § 6F (collectively, the "Fraud on the Court Claims").  (Schneider Aff. ¶ 14).  The Superior Court denied both post-trial motions and Hache appealed the Fraud on the Court Claims to the Massachusetts Appeals Court.  (Id. ¶¶ 15-16, 20).  On February 18, 2020, while the appeal from the Superior Court's order remained pending, Hache filed the instant lawsuit against AIG, Granite State and AmWINS in state court.  (See Docket No. 16).  The defendants removed the matter to this court on April 1, 2020.  (Docket No. 1).

Throughout the course of this proceeding, AmWINS, AIG, and Granite State have asserted attorney-client privilege and work product claims over various documents and communications from the Underlying Action (the "Privileged Documents").  (Schneider Aff. ¶ 8).  Those materials, which include communications among Wachusett, National Union, Hamel Marcin and the defendants, are identified in a privilege log that has been produced to Hache.  (Id. & Ex. A thereto; O'Donnell Aff. (Docket No. 122) ¶ 6).  After electing to forego an advice of

counsel defense in this action, the defendants took affirmative steps to protect the Privileged Documents from discovery in this case.  (Schneider Aff. ¶ 8).  It is undisputed that the defendants have acted diligently "to preserve their rights to rely upon attorney/client and work product grounds to prevent [Hache] from pursuing discovery into, and/or using any reports, emails, or other types of electronic or hard copy documents that reference and/or memorialize communications between Wachusett's defense counsel in the Underlying Action, Hamel Marcin, ... and the Defendants' representatives to pursue his G.L. c. 93A claims" in this litigation.  (O'Donnell Aff. ¶ 6).

On May 24, 2021, the Massachusetts Appeals Court issued a decision vacating the Superior Court's order denying Hache's motion for a finding of fraud on the court in the Underlying Action and remanding the matter for an evidentiary hearing on Hache's Fraud on the Court Claims.  Hache, 2021 WL 2065901, at **1, 5.  Following the remand, Hamel Marcin withdrew as counsel for Wachusett due to concerns about the possibility that its attorneys would be called as witnesses at the hearing.  (Schneider Aff. ¶ 21).  From that point forward, Attorney Douglas Radigan from the law firm of Bowditch & Dewey, LLP represented Wachusett in connection with the Fraud on the Court Claims in the Underlying Action.  (Id.).  As further described below, the Superior Court held an evidentiary hearing on those Claims on November 19, 2021.  (Raphaelson Aff. (Docket No. 129) ¶ 8).   It is undisputed that AIG, Granite State and AmWINS were not parties to the remand proceedings and had no involvement in the evidentiary hearing.

National Union continued to fund the defense of Wachusett in the remand proceedings, subject to a reservation of rights.  (Schneider ¶ 19).  As part of this arrangement, Attorney

[5]

Radigan reported to Charles Creamer, the claims representative for National Union, regarding strategy for defending the Fraud on the Court Claims.[1]  (See id. ¶ 28).  On September 23, 2021, Attorney Radigan informed Mr. Creamer that Wachusett was considering the implications of waiving the attorney-client privilege in connection with its defense.  (Id.).  However, according to counsel for AIG, Granite State and AmWINS, neither Mr. Creamer nor Attorney Radigan informed them or their clients of this development at any time prior to October 29, 2021.  (Id. ¶ 29; O'Donnell Aff. ¶¶ 2-6).

### Wachusett's Production of Privileged Documents

On October 22, 2021, Attorney Radigan informed Hache's counsel, Attorney Jeffrey Raphaelson, that Wachusett intended to make a limited waiver of the attorney-client privilege in order to support its defenses to Hache's Fraud on the Court Claims in the Underlying Action.[2] (Schneider Aff. ¶ 22; see also O'Donnell Aff. ¶ 2).  Several days later, on October 25, 2021, Wachusett voluntarily produced 3,610 pages of documents to Hache.  (Schneider Aff. ¶ 23). The production included communications relating to the assessment and defense of the Underlying Action, such as litigation reports and evaluations, and communications regarding settlement, that Hamel Marcin had sent to AmWINS and AIG during the course of that Action.

---

[1] Hache contends that Mr. Creamer was representing AIG in the Underlying Action.  (Pl. Opp. Mem. (Docket No. 128) at 3).  While there is evidence that Mr. Creamer worked at AIG, the record shows that in connection with Hache's Fraud on the Court Claims, Mr. Creamer was responsible for handling coverage under the National Union umbrella policy.  (See Raphaelson Aff. ¶ 10 & Ex. 4 thereto at ECF Pages 5-6 of 12; Schneider Aff. ¶ 11 & Ex. C thereto).

[2] Attorney Radigan explained that the waiver would be "strictly limited" to the time period from the date of Hache's accident on March 8, 2015 to the date of the judgment in the Underlying Action, July 18, 2019.  (Schneider Aff. ¶ 22 & Ex. E thereto).

(Id. ¶ 25).  Thus, it is undisputed that Wachusett disclosed documents that constitute Privileged Documents in the instant case.  (See Schneider Aff., Ex. G at 2).

AmWINS, AIG, and Granite State were not aware of Wachusett's limited waiver prior to the production of the materials to Hache.  (Schneider Aff. ¶ 24; O'Donnell Aff. ¶ 6).  However, on October 29, 2021, Attorney Radigan notified counsel for AmWINS, Attorney Barbara O'Donnell, that Wachusett had waived the attorney-client privilege in connection with the Fraud on the Court Claims, and that Wachusett had already completed its production of Privileged Documents to Hache.  (O'Donnell Aff. ¶¶ 2-3).  On the same day, counsel for Granite State and AIG, Attorney William Schneider, learned that Wachusett had elected to waive the attorney-client privilege.  (Schneider Aff. ¶ 24).  Attorney Schneider spoke with Attorney Radigan on October 30, 2021 and confirmed that Wachusett had already produced the documents to Hache's counsel.  (Id.).  Two days later, on November 1, 2021, Attorney Schneider was able to download the 3,610 pages of documents that Wachusett had produced and confirm that they included Privileged Documents.  (See id. ¶ 25).  There is no indication that AIG, Granite State or AmWINS objected to the production at that time or attempted to intervene in the state court to prevent or limit the use of those Documents.  (See id.; Raphaelson Aff. ¶¶ 3,8).

On November 4, 2021, in connection with the Fraud on the Court Claims, Hache's counsel conducted the deposition of Wachusett's Chief Executive Officer, James Crowley.[3]

---

[3] Prior to Mr. Crowley's deposition, Wachusett filed a motion for a protective order and to quash subpoenas that Hache had issued to Mr. Crowley and another witness in the Underlying Action. (Raphaelson Aff. ¶ 12 & Ex. 6 thereto).  Wachusett argued that the Appeals Court had not authorized additional discovery in advance of the evidentiary hearing on Hache's Fraud on the Court Claims, and that further discovery was unreasonable at that stage in the litigation.  (Raphaelson Aff., Ex. 6 at 4-5).  It

(Schneider Aff. ¶ 26; Raphaelson Aff. ¶ 7).  During the deposition, Hache's counsel used certain of the Privileged Documents to examine Mr. Crowley.  (See Schneider Aff. ¶ 26 & Ex. F thereto at 16-17, 34-36, 49-51).  Those Documents, and Mr. Crowley's testimony, addressed privileged communications between Wachusett's counsel and its insurers during the Underlying Action. (Id.).

One week later, on November 11, 2021, counsel for AIG, Granite State and AmWINS wrote to Hache's counsel to confirm their continued assertion of attorney-client privilege and work product protection over documents produced by Wachusett in the Underlying Action. (Schneider Aff., Ex. G; O'Donnell Aff., Exs. A & B).  Specifically, in his letter, Attorney Schneider stated in relevant part as follows:

> We write on behalf of Granite State Insurance Company ("Granite State") and AIG Claims, Inc. ("AIG Claims") in connection with [Alexander Hache v. AmWINS Program Underwriters, Inc., et al., D. Mass., C.A. 1:20-cv-10652-PBS].  The purpose and intent of this letter is to affirm our clients' assertion of the attorney-client privilege over any and all documents that were withheld from production in this case on the grounds of the attorney-client privilege and or work product pursuant to the provisions of Fed. R. Civ. P. 26, and to secure an unconditional agreement on the part of the plaintiff that he will not use those documents or the information contained therein *in the present case* for any purpose whatsoever.

(Schneider Aff., Ex. G at 1) (emphasis added).  After explaining that his clients had never consented to Wachusett's waiver of the privilege, Attorney Schneider asserted that "[t]he unilateral decision made by Wachusett to produce privileged documents to the plaintiff

---

also noted that Hache had already deposed Mr. Crowley prior to trial in the Underlying Action and that following the Appeals Court's decision, Wachusett had "voluntarily produced documents to Plaintiff concerning the subject of the evidentiary hearing that would otherwise be protected by privilege."  (Id. at 2-3).  The Superior Court denied the motion, thereby allowing Hache to pursue discovery. (Raphaelson Aff. ¶ 12).

should not ... result in the waiver of the privilege asserted by our clients in the 93A case." (Id.

at 3).  He further demanded, on behalf of Granite State and AIG, that

> the plaintiff stipulate that, with regards to the pending 93A litigation: 1) not to
> use any privileged documents that were produced by Wachusett; and 2) not to
> use any of the information obtained from those documents.  We also demand
> that you and Mr. Hache immediately destroy the communications between
> Hamel Marcin and the insurer, Granite State, and its claim administrator(s).
> Barring your commitment to this relief, or our ability to reach such an
> agreement, we will move on our own to secure a protective order.  Accordingly,
> if the plaintiff is not amenable to the proposal above, please consider this an
> invitation to conference pursuant to Local Rule 37.1.

(Id. at 4).  Notably, while Attorney Schneider acknowledged in his letter that Hache's counsel

had used Privileged Documents "at recent depositions plaintiff took this past week" in the

Underlying Action, he did not demand that Hache refrain from relying on that evidence during

the upcoming evidentiary hearing on his Fraud on the Court Claims.  (See id. at 2-4).  Nor did

AIG and Granite State attempt to intervene in the state court to preclude Hache's further use of

the Privileged Documents or otherwise protect their interests in the Documents.

Attorney O'Donnell sent a separate letter to Hache's counsel on behalf of AmWINS.

(O'Donnell Aff., Ex. B).  Therein, Attorney O'Donnell confirmed AmWINS' "assertion of the

attorney-client privilege over all documents which have been withheld from productions on

attorney-client privilege and or work product grounds in [the federal court] action."  (Id. at 1).

She also incorporated, by reference, the entirety of Attorney Schneider's November 11, 2021

letter, including his demand that Hache "refrain from any attempt to use or otherwise draw

upon any documents or information" in the instant case that he had obtained from

Wachusett's counsel in the Underlying Action.  (Id.).  Additionally, Attorney O'Donnell informed

Hache's counsel as follows:

had AmWINS been provided with advance notice of Wachusett's intent to forego the assertion of the attorney-client and/or work produce privileges concerning its communications with its Underlying Action defense counsel and their files prior to its October 22, 2021 production in connection with the remand proceedings now scheduled for an evidentiary hearing on November 19, AmWINS would have taken prompt measures to renew its motion for a protective order to preclude plaintiff from obtaining access to privileged documents and information in defense counsel's files and/or using same in this Action.

(Id. at 2). However, AmWINS took no further steps to preclude Hache's use of Privileged Documents in connection with the November 19, 2021 evidentiary hearing in the Underlying Action or otherwise protect its interests in the Documents.

**Events Leading Up to the Filing of the Instant Motions**

Hache's counsel did not respond to the defendants' letters and the evidentiary hearing on Hache's Fraud on the Court Claims took place on November 19, 2021 as scheduled. (Raphaelson Aff. ¶ 8). During the hearing, the parties in the Underlying Action introduced Privileged Documents and information derived therefrom into the record. (See Hache v. Wachusett Mountain Ski Area, Inc., C.A. No. 1681CV1055, Docket No. 94 at 4-5 ("At the Hearing, Plaintiff called Crowley as its only witness, and offered forty-nine exhibits in evidence, including several communications from Wachusett's attorney, Matthew Sweet [of Hamel Marcin].")). Ultimately, the Superior Court relied on Privileged Documents and information derived therefrom in its decision denying the plaintiff relief. (See id. at 4-6).

On December 1, 2021, the parties in this action held a "meet and confer" in which they discussed Hache's intent to use Privileged Documents in this litigation. (O'Donnell Aff. ¶ 8). During the discussion, Hache's counsel declined to destroy any of the Privileged Documents that he had obtained from Wachusett in the Underlying Action and confirmed his intent to use

[10]

those Documents in this proceeding.  (Id.).  Attorney Raphaelson further expressed his view

that the defendants' right to withhold the Documents as privileged had been waived.  (Id. ¶¶ 8-

9).

On January 12, 2022, the parties filed a Joint Motion to Modify Discovery Deadline in

this case in which they jointly requested that the pretrial discovery deadlines be amended to

allow the defendants to file motions for a protective order and give Hache an opportunity to

conduct additional depositions.  (Docket No. 115).  In their motion, the parties described

Wachusett's waiver of the attorney-client privilege and its production of Privileged Documents

in the Underlying Action.  (Id. at 1-2).  They also requested that the court set a deadline of

February 4, 2022 for the defendants to file motions for a protective order to prevent or limit

Hache's ability to use in this action any of the Privileged Documents that he obtained in the

Underlying Action.  (Id. at 2).  The Joint Motion was allowed and on February 4, 2022, the

defendants filed their instant motions for a protective order.   At no point have the defendants

sought to intervene in the Underlying Action in order to seek protection over the Privileged

Documents.

### III.  ANALYSIS

The defendants have brought their motions for a protective order pursuant to Federal

Rule of Civil Procedure 26(c), which permits "[a] party or any person from whom discovery is

sought [to] move for a protective order in the court where the action is pending[.]"  Fed. R. Civ.

P. 26(c)(1).  Specifically, the defendants are seeking an order (1) requiring Hache to return or

destroy all of the Privileged Documents he received from Wachusett in the Underlying Action

and (2) precluding Hache and his attorneys, experts, or any other person from using in this

[11]

action any of the Privileged Documents or information derived therefrom.  (AIG Mem. at 19-20; AmWINS Mot. at 11).  For the reasons that follow, this court finds that the defendants are not entitled to the requested relief.

### A.  Scope of the Court's Authority Under Federal Rule of Civil Procedure 26(c)

As an initial matter, this court cannot grant defendants' request, pursuant to Rule 26(c), that it issue an order requiring Hache to return or destroy the Privileged Documents that he received from Wachusett in the Underlying Action.  Rule 26(c) authorizes federal courts, upon a finding of "good cause," to "issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense," by limiting the scope of or methods through which discovery can be conducted.  Fed. R. Civ. P. 26(c)(1).  However, the Rule "provides no authority for the issuance of protective orders purporting to regulate the use of information or documents obtained through means other than discovery in the pending proceeding."  Kirshner v. Uniden Corp. of Am., 842 F.2d 1074, 1080 (9th Cir. 1988) (citing Bridge C.A.T. Scan Assocs. v. Technicare Corp., 710 F.2d 940 (2d Cir. 1983)); see Culinary Foods, Inc. v. Raychem Corp., 153 F.R.D. 614, 615 (N.D. Ill. 1993) ("[T]his court's power to control discovery does not extend to material discovered in other cases.").  "The remedy for a party seeking the return of material improperly discovered in a *separate* action is to seek a protective order from the court that presided over the discovery process in that discrete proceeding."  Kirshner, 842 F.2d at 1081 (emphasis in original).  Because there is no question that Hache received the Privileged Documents in a separate state court proceeding rather than through any disclosures or discovery in this action, this court cannot order Hache to return or destroy those Documents.

[12]

Nevertheless, this court is not precluded from limiting the use of the Privileged Documents in the proceedings before it to the extent the defendants are able to show that the documents remain privileged.  See Smith v. Armour Pharm., Co., 838 F. Supp. 1573, 1578 (S.D. Fla. 1993) (prohibiting plaintiff from referencing attorney-client privileged memorandum in the future course of the litigation even though it was available from sources outside the litigation and had been disclosed to the public).  "A bright-line rule prohibiting a court from regulating the use of information or documents obtained through means other than discovery in the pending proceeding would result in inequitable consequences and could undermine the integrity of a court's judicial proceedings."  Id.  Accordingly, this court's analysis will focus on whether the defendants have shown that the documents at issue remain protected by the attorney-client privilege and work product doctrine, or whether, as the plaintiff argues, any such protections have been waived.

**B.  Attorney-Client Privilege and Work Product Protection – In General**

The defendants assert that the documents at issue are protected by both the attorney-client privilege and the work product doctrine and should therefore not be discoverable or used to support Hache's claims in this action.  (AmWINS Mot. at 6; AIG Mem. at 6).  Because this action has been brought pursuant to the court's diversity jurisdiction and involves only state law claims, the defendants' claim of attorney-client privilege is governed by state law.  See Fed. R. Evid. 501 ("[I]n a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision."); Vicor Corp. v. Vigilant Ins. Co., 674 F.3d 1, 17 n.15 (1st Cir. 2012) ("State law undergirds our analysis of the attorney-client privilege in this diversity case.").  The defendants' work product claim, however, is governed by federal law.  See

[13]

Felisberto v. Dumdey, 541 F. Supp. 3d 142, 147 (D. Mass. 2021) ("[F]ederal courts apply federal law when addressing the work product doctrine, even in diversity cases lacking any federal question.").

Massachusetts law provides that "the attorney-client privilege shields from the view of third parties all confidential communications between a client and its attorney undertaken for the purpose of obtaining legal advice." Clair v. Clair, 464 Mass. 205, 215, 982 N.E.2d 32, 40 (2013) (quoting Suffolk Constr. Co. v. Division of Capital Asset Mgmt., 449 Mass. 444, 448, 870 N.E.2d 33, 37 (2007)).  The attorney-client privilege is narrowly construed.  Id.  "A party asserting the attorney-client privilege . . . has the burden to show that the privilege applies." Hanover Ins. Co. v. Rapo & Jepsen Ins. Servs., Inc., 449 Mass. 609, 619, 870 N.E.2d 1105, 1114 (2007).  "This burden extends not only to a showing of the existence of the attorney-client relationship but to all other elements involved in the determination of the existence of the privilege, including . . . [that] the privilege as to these communications has not been waived." Matter of Reorganization of Elec. Mut. Liab. Ins. Co., Ltd. (Bermuda), 425 Mass. 419, 421, 681 N.E.2d 838, 840 (1997).  Under Massachusetts law, the attorney-client privilege may be waived "either expressly or implicitly."  Commonwealth v. Woodberry, 26 Mass. App. Ct. 636, 637, 530 N.E.2d 1260, 1261 (1988); see Clair, 464 Mass. at 219, 982 N.E.2d at 43 (recognizing circumstances in which privilege may be waived other than by express waiver).

"The work product doctrine protects against disclosure of materials that a party, her attorney, or her representative prepares in anticipation of litigation[.]"  In re Grand Jury Subpoena, 220 F.R.D. 130, 141 (D. Mass. 2004).  The party asserting work product protection has the burden of establishing that the protection applies.  Id. at 140.  The purpose of the work

product doctrine is to create "a 'zone of privacy' in which a party, his attorney, and in many cases his non-attorney 'representative' can prepare for litigation, 'free from unnecessary intrusion by his adversaries.'"  Bryan Corp. v. Chemwerth, Inc., 296 F.R.D. 31, 37 (D. Mass. 2013) (quoting In re Grand Jury Subpoena, 220 F.R.D. at 141).  Work product protection may be waived by disclosure when such disclosure is inconsistent with the purpose of the doctrine.  Id. at 38.  "[T]he work product privilege does not exist to protect a confidential relationship, but rather to promote the adversary system by safeguarding the fruits of an attorney's trial preparations from the discovery attempts of the opponent.  The purpose of the work product privilege is to protect information against *opposing parties*, rather than against *all others* outside a particular confidential relationship, in order to encourage effective trial preparation[.]"  Id. (emphasis in original) (quoting In re Raytheon Sec. Litig., 218 F.R.D. 354, 359-60 (D. Mass. 2003)).  Accordingly, work product protection is not automatically waived by disclosure to a third party, but it may be lost "when disclosure 'substantially increases the opportunity for potential adversaries to obtain the information.'"  Id. at 40 (quoting Schanfield v. Sojitz Corp. of Am., 258 F.R.D. 211, 214 (S.D.N.Y. 2009)).

As the parties asserting attorney-client and work product protections, the burden is on the defendants to establish both that the protections apply and that they have not been waived.  Hache does not dispute, for purposes of the present motions, that the Privileged Documents were protected by the attorney-client privilege and the work product doctrine at the time they were created in the course of Hamel Marcin's joint representation of Wachusett and the defendants in the Underlying Action.  (See Pl. Opp. Mem. (Docket No. 128) at 1-2).  See also Hanover Ins. Co., 449 Mass. at 614, 870 N.E.2d at 1110 (determining that under

Massachusetts law, the attorney-client privilege applies to information shared in confidence by multiple clients with a common legal interest in a joint defense relationship); <u>Felisberto</u>, 541 F. Supp. 3d at 147 (explaining that work product doctrine applies to materials prepared "in anticipation of litigation or for trial" (quoting Fed. R. Civ. P. 26(b)(3)(A)).  It is also undisputed that the defendants in this case did not expressly consent to Wachusett's waiver of attorney-client privilege or work product protection over Privileged Documents.  The issue before the court, therefore, is whether the defendants' actions or inaction following Wachusett's waiver constituted an implicit waiver.  This court finds that a waiver occurred under the circumstances presented.

### C.  <u>Defendants' Waiver Through Response to the Involuntary Disclosure</u>

The defendants assert that "[a]t no time have [they] expressly or impliedly waived the privilege" over the documents at issue.  (AIG Mem. at 14).  In particular, they argue that they have not waived the attorney-client privilege by relying on an advice of counsel defense in this action.  (AIG Mem. at 14-15).  They further argue that in a joint client relationship, such as their relationship with Wachusett in the Underlying Action, all clients "must agree to waive their right to withhold documents or information protected by the attorney-client and/or work product privileges to effectuate a valid waiver vis a vis the plaintiff's counsel or any other third party."  (AmWINS Mot. ¶ 17; <u>see also</u> AIG Mem. at 15).  Thus, the defendants maintain that Wachusett's unilateral decision to produce Privileged Documents in the Underlying Action did not waive or in any way limit their right to continue to assert attorney-client and work product protections over those Documents in the instant litigation.  (<u>See</u> AmWINS Mot. ¶ 20; AIG Mem. at 17).

[16]

The plaintiff, on the other hand, argues that the defendants waived any such protections over the Privileged Documents when they "deliberately chose not to intervene in the fraud on the court proceeding to protect the alleged privileged documents." (Pl. Opp. Mem. at 1). According to Hache, all the defendants and their counsel in this action knew, by October 29, 2021 at the latest,[4] that Wachusett had decided to execute a limited waiver of the privilege in connection with Hache's Fraud on the Court Claims. (Id. at 3-5). They also confirmed, within two days thereafter, that Wachusett had already produced Privileged Documents to the plaintiff in the Underlying Action. (Id. at 5). Hache contends that at that point, "Defendants, as holders of the privilege, had both the obligation and the clear means to protect" the information by filing a motion for a protective order in the Underlying Action. (Id. at 1). By failing to do so, Hache argues, the defendants knowingly allowed Wachusett, Hache, and the state court to use and rely on Privileged Documents in connection with the Fraud on the Court Claims. (Id. at 2). Accordingly, he contends that the "Defendants waived their privilege by implication when they failed to timely seek judicial relief." (Id. at 15).

It is well established, as the defendants argue, that Wachusett's unilateral production of the Privileged Documents alone was insufficient to effectuate a waiver on behalf AIG, Granite State and AmWINS. See ZVI Constr. Co., LLC v. Levy, 90 Mass. App. Ct. 412, 424-25, 60 N.E.3d

---

[4] The plaintiff contends that AIG knew, by as early as September 23, 2021, that Wachusett was considering whether to waive the attorney-client privilege, because it is undisputed that Wachusett's counsel, Attorney Radigan, informed Mr. Creamer that Wachusett planned to weigh the implications of doing so. (See Pl. Opp. Mem. at 3; Schneider Aff. ¶ 28). However, the record shows that at that time, Mr. Creamer was representing National Union with respect to coverage for Wachusett under the umbrella policy. (See Schneider Aff. ¶ 11 & Ex. C thereto). Moreover, the defendants deny that AIG, Granite State or AmWINS had any actual knowledge of Wachusett's waiver until after Wachusett had produced Privileged Documents to Hache in the Underlying Action. (Schneider Aff. ¶ 24; O'Donnell Aff. ¶ 6). This disagreement about the earliest date that the defendants knew about the waiver is not relevant to this court's analysis, and the issue will not be addressed further.

368, 378 (2016) (following prevailing authority to conclude that in "'common interest' or 'joint defense' agreement, all of the clients must waive the attorney-client privilege for a waiver to occur") and cases cited; <u>Magnetar Tech. Corp. v. Six Flags Theme Park Inc.</u>, 886 F. Supp. 2d 466, 483 (D. Del. 2012) ("[A] waiver of a joint privilege can only occur with the consent of all the parties of the joint representation.").[5]   However, once the defendants learned of Wachusett's production of Privileged Documents to a current adversary on October 29, 2021, and in the face of that adversary's continuing use of those Documents in connection with the Fraud on the Court Claims, it was incumbent upon the defendants to make reasonable efforts to protect the confidentiality of the disclosed information.   See <u>ZVI Const. Co.</u>, 90 Mass. App. Ct. at 426, 60 N.E.3d at 379 (having learned of disclosure by other parties to joint defense agreement, objecting party still had the obligation "to protect the privilege of the subject communications").   Because the defendants made no attempt to intervene in the Underlying Action, or to seek a protective order to maintain the attorney-client privilege and work product protection over the Privileged Documents before or even after the Documents were introduced into evidence at the evidentiary hearing, this court finds that the defendants have implicitly waived those protections.[6]

---

[5] Massachusetts courts often rely on federal case law to guide their decisions regarding the attorney-client privilege, including on the issue of waiver.  See, e.g., <u>Matter of Reorganization of Elec. Mut. Liab. Ins. Co., Ltd. (Bermuda)</u>, 425 Mass. at 421-23, 681 N.E.2d at 840-41 (looking to federal law for guidance in determining whether disclosure of a privileged document by an anonymous source may result in a waiver of the attorney-client privilege); <u>ZVI Constr. Co., LLC</u>, 90 Mass. App. Ct. at 424 (relying on federal case law in determining that "all of the clients" involved in a common interest or joint defense agreement "must waive the attorney-client privilege for a waiver to occur.").

[6] Since it is well established that "all of the clients must waive the attorney-client privilege for a waiver to occur[,]" it is a definite possibility that the defendants could have prevented the use of the Privileged Documents in the Underlying Action.  See <u>ZVI Const. Co.</u>, 90 Mass. App. Ct. at 424, 60 N.E.3d at 378.  It is the plaintiff's contention that the defendants made a strategic decision not to prohibit their insured

**Implicit Waivers Following Involuntary Disclosure**

Wachusett's production in the state court proceeding is best described as causing an involuntary disclosure of the defendants' attorney-client privileged and work product information.  An "involuntary disclosure" occurs "where a third party over whom the holder of the privilege has no control is in possession of the materials and discloses them."  Bowles v. Nat'l Ass'n of Home Builders, 224 F.R.D. 246, 253 (D.D.C. 2004).  That is what happened in the instant case.  Here, the record establishes that Wachusett's disclosure of the Privileged Documents was voluntary and deliberate rather than inadvertent or accidental.[7]  It further establishes that at the time Wachusett produced the Privileged Documents to Hache in the Underlying Action, Wachusett was represented by its own counsel from Bowditch & Dewey and the defendants were no longer in a joint client relationship with Wachusett.  Therefore, the defendants had no control over Wachusett's legal strategy or its decision to produce the Privileged Documents to Hache.

---

from using the documents.  The issue of the defendants' motivation does not have to be resolved.  Even if the defendants could not have prevented Hache's use of the Privileged Documents in the state court evidentiary hearing, they could have sought other means of protecting the Documents, such as an order to place all privileged information under seal or restricting its use outside of the state court remand proceedings.

[7] The defendants argue that the disclosure of the Privileged Documents is "analogous" to an "inadvertent production of privileged documents or information" and therefore required Attorney Raphaelson to comply with Fed. R. Civ. P. 26(b)(5)(B).  (AmWINS Mot. ¶ 22; AIG Mem. at 9-10).  Under that Rule, a party who receives notice that privileged information has inadvertently been produced to him in discovery "must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; [and] must take reasonable steps to retrieve the information if the party disclosed it before being notified[.]  Fed. R. Civ. P. 26(b)(5)(B). In this case, however, it is undisputed that Wachusett voluntarily produced the Privileged Documents to Attorney Raphaelson during the normal course of discovery in the Underlying Action. Rule 26(b)(5)(B) has no application here.

Massachusetts courts have not directly addressed the issue whether an involuntary disclosure resulting from the deliberate conduct of a party in another proceeding may result in an implicit waiver of the attorney-client privilege and work product protection, but state court decisions involving similar situations emphasize the need for the party claiming privilege to take reasonable actions to protect the confidential nature of the information both before and after the disclosure by a third party.  Thus, in Matter of Reorganization of Elec. Mut. Liab. Ins. Co., Ltd. (Bermuda), the Supreme Judicial Court ("SJC") considered whether the disclosure of a company's privileged documents by an anonymous source and the resulting loss of confidentiality over their contents resulted in a per se waiver of the attorney-client privilege. 425 Mass. at 420, 681 N.E.2d at 839-40.  The SJC determined, after looking to federal law for guidance, that "the disclosure of a [privileged] document by an anonymous source may not, by itself, mandate a conclusion that any privilege has been waived ... if adequate steps have been taken to ensure [the] document's confidentiality."  425 Mass. at 423, 681 N.E.2d at 841.  The SJC concluded that "[w]here it can be shown . . . that reasonable precautionary steps were taken, the presumption will be that the disclosure was not voluntary and therefore unlikely that there has been a waiver."  Id.  Notably, in that case, however, the holder of the privilege objected to the recipient's further disclosure of the privileged information, which the holder had obtained from an anonymous source, and prevented its further dissemination.  See id. at 420-21, 681 N.E.2d at 840.  Similarly, in ZVI Constr. Co., the Massachusetts Appeals Court considered whether an intentional waiver of the attorney-client privilege by two of three clients to a joint defense arrangement resulted in an implicit waiver by the third client.  90 Mass. App. Ct. at 423-26, 60 N.E.3d at 377-79.  The Court held that the unilateral waiver of the privilege by

the two clients did not result in a waiver of the third client's claim of attorney-client privilege since the consent of all holders of the privilege was needed.  Id. at 424, 60 N.E.3d at 378. Significantly, in determining whether there had been an implicit waiver of the privilege, the Appeals Court looked at the conduct of the privilege holder after the involuntary disclosure was made known.  The Appeals Court found that the third client did not implicitly waive the privilege where the record showed that the client "acted repeatedly and successfully to protect the privilege of the subject communications" and to prevent their use in the litigation.  Id. at 425-26 & n.18, 60 N.E.3d at 379 & n.18.  In particular, the court noted that the client asserting the privilege refused several requests to waive the privilege, successfully opposed a motion to compel production of the privileged communications, and successfully moved to strike privileged documents attached to their opponent's summary judgment filing.  Id. at 426 & n.18, 60 N.E.3d at 379 & n.18.  Accordingly, the Appeals Court concluded that a waiver could not be implied by a "failure to react" after the party's co-clients waived the attorney-client privilege. Id. at 425-26, 60 N.E.3d at 379.

The rulings by the SJC and the Massachusetts Appeals Court are consistent with federal case law in which courts considering the effect of involuntary disclosures have "consistently held" that in such cases, an implied waiver of the attorney-client privilege and work product protection "occurs ... when the holder has failed to take reasonable steps to reclaim the protected material."  Bowles, 224 F.R.D. at 253 (quoting Sec. & Exchange Comm'n v. Lavin, 111 F.3d 921, 930 (D.C. Cir. 1997)); see United States v. Ary, 518 F.3d 775, 785 (10th Cir. 2008) ("Thus, in the case of an involuntary disclosure, the party asserting the work-product doctrine or attorney-client privilege must pursue all reasonable means to preserve the confidentiality of

[21]

the material."); In re Grand Jury (Impounded), 138 F.3d 978, 981 (3d Cir. 1998) ("[T]he party

asserting the work product doctrine must pursue all reasonable means to restore the

confidentiality of the materials and to prevent further disclosures within a reasonable period to

continue to receive the protection of the privilege."); United States v. de la Jara, 973 F.2d 746,

750 (9th Cir. 1992) ("When the disclosure is involuntary, we will find the privilege preserved if

the privilege holder has made efforts 'reasonably designed' to protect and preserve the

privilege.  Conversely, we will deem the privilege to be waived if the privilege holder fails to

pursue all reasonable means of preserving the confidentiality of the privileged matter."

(internal citations omitted)).

  "Requiring assertions of privilege and work product to be made expeditiously serves the

goals underlying the attorney-client privilege and work product doctrine." Ary, 518 F.3d at 784.

Parties must act to protect and recover information over which they assert attorney-client

privilege because confidentiality is "[a] quintessential element of the attorney-client

privilege[.]" In re Grand Jury Investigation, 437 Mass. 340, 352, 772 N.E.2d 9, 18 (2002); United

States v. Mass. Inst. of Tech., 129 F.3d 681, 687 (1st Cir. 1997) ("The privilege, it is said, is

designed to protect confidentiality, so that any disclosure outside the magic circle is

inconsistent with the privilege").  With respect to the work product doctrine, when an

adversary has access to, and the opportunity to use, an attorney's work product, any delay in

asserting the claim of privilege "directly undermine[s] the purpose of the attorney work

product privilege of protecting confidential documents prepared in anticipation of litigation

from a party's adversary."  See In re Grand Jury (Impounded), 138 F.3d at 982.

To assess whether the privilege holder has waived its rights by failing to take reasonable steps to remedy an involuntary disclosure, courts will take "into account the circumstances surrounding the disclosure, ... whether protection was asserted in a timely fashion, and whether additional steps, such as judicial action, were necessary for protection." Ary, 518 F.3d at 785.  With respect to timeliness, "[t]he key is that the party seeking protection must treat the document or communication as confidential.  When a party delays in asserting protection, however, the adverse party is free to continue to use the material, thereby negating its confidential character." Id. at 784; see de la Jara, 973 F.2d at 750 (concluding that privilege was waived when privilege holder "did nothing to recover the letter or protect its confidentiality during the six month interlude between its seizure and introduction into evidence").  Judicial intervention may be necessary where the adversary refuses to acknowledge the party's privilege.  See In re Grand Jury (Impounded), 138 F.3d at 982 (recognizing that judicial intervention may be needed where adversary has possession of privileged material).  Applying these principles in the instant case compels the conclusion that the actions undertaken by the defendants were insufficient to maintain attorney-client privilege and work product protection over the Privileged Documents.

### Defendants' Failure to Take Reasonable Actions to Protect the Privilege

The facts before this court closely resemble those before the Third Circuit in In re Grand Jury (Impounded).  Here, as in that case, the defendants' adversary obtained privileged information by way of an involuntary disclosure that took place before the defendants learned of the disclosure.  See id. at 979-80 (client and his attorneys learned of opposing party's seizure of file containing work product material only after the seizure occurred).  Additionally, the

[23]

defendants in this action, like the party claiming privilege in <u>In re Grand Jury (Impounded)</u>, expressed their concerns about the disclosure over the phone with opposing counsel and in letters asserting the defendants' view that the documents remained protected by the attorney-client privilege and work product doctrine.  <u>See</u> <u>id.</u> at 980 (describing counsel's efforts, in telephone discussions and letters, to convince opposing party that seized documents included attorney work product and attorney-client privileged information).  Moreover, although the parties claiming privilege in both cases knew that their adversaries intended to make use of the privileged information, they failed to act expeditiously to seek judicial enforcement of their rights to protect the information.  <u>See</u> <u>id.</u> at 982 (holding that district court did not abuse its discretion in finding that a waiver occurred where party's assertion of the privilege to his adversary was insufficient to prevent the adversary's continuing use of the privileged material).  "Merely asserting the privilege to an adversary is not sufficient to protect the privilege in these circumstances inasmuch as the adversary has possession of the materials claimed to be privileged and thus can make use of them."  <u>Id.</u>  As in the case of <u>In re Grand Jury (Impounded)</u>, "[j]udicial enforcement of the privilege was the only remedy that [AIG, Granite State and AmWINS] could have obtained which would have foreclosed the [plaintiff] from further use" of the privileged material.  <u>Id.</u>  Therefore, this court finds that they acted unreasonably by failing to move expeditiously to seek judicial intervention in the state court.  <u>See</u> <u>id.</u> ("In short, when a party's adversary has obtained possession of a party's work product and refuses to recognize the work product privilege, the party asserting the privilege must move expeditiously for relief").

[24]

Although the defendants were not parties to the Underlying Action at the time Wachusett produced the Privileged Documents to Hache, there were steps they could have taken to prevent the use and further dissemination of the Documents in the Superior Court. See, e.g., Sec. & Exchange Comm'n v. Lavin, 111 F.3d 921, 924, 931 (D.C. Cir. 1997) (detailing privilege holders' efforts to intervene in each proceeding in which the issue of their privilege arose).  Their failure to do so was unreasonable under the circumstances of this case.  All of the defendants knew, by no later than October 30, 2021, that Wachusett had produced Privilege Documents to Hache.  (O'Donnell Aff. ¶¶ 2-3; Schneider Aff. ¶ 24).  They also knew, by no later than November 11, 2021, that Hache was using the Privileged Documents in depositions and had the opportunity to use them in the November 19, 2021 evidentiary hearing on the Fraud on the Court Claims.  (See Schneider Aff., Ex. G at 2; O'Donnell Aff., Ex. B).  Nevertheless, the defendants failed to seek judicial enforcement of their rights over the Privileged Documents.  Even after Hache informed the defendants, during the "meet and confer" held on December 1, 2021 in this action, that he would not destroy the Privileged Documents and that he intended to use them in this case as well, the defendants took no immediate action to seek judicial intervention from the Superior Court.  (See O'Donnell Aff. ¶ 8).  Therefore, they failed to take timely and adequate measures to protect their rights.

To the extent the defendants suggest that they had no right to intervene in the state court proceedings, any such assertion is insufficient to excuse their inaction.  As an initial

matter, there is nothing to suggest that an effort to intervene would have been futile.[8]

Moreover, they could have sought a protective order.  See Commonwealth v. Fremont Inv. &

Loan, 459 Mass. 209, 213-14, 944 N.E.2d 1019, 1023 (2011) (court has the inherent power to

issue protective orders, which "serve to shield litigants and third parties from unwarranted

disclosures").  In any event, the issue before the court is not whether the defendants

successfully asserted their interests in protecting the Privileged Documents but whether they

took reasonable steps to do so.  See Bowles, 224 F.R.D. at 253 ("Courts have consistently held

that, in cases of involuntary disclosure, 'waiver occurs only when the holder has failed to take

reasonable steps to reclaim the protected material'" (quoting Lavin, 111 F.3d at 930)); ZVI

Constr. Co., 90 Mass. App. Ct. at 426 (finding no implied waiver where it was "not clear what

more the [privilege holder] reasonably should have done" to protect attorney-client privileged

communications).  Because the defendants did not act reasonably to protect their interests

---

[8] Rule 24 of the Massachusetts Rules of Civil Procedure provides in relevant part that

> anyone shall be permitted to intervene in an action ... when the applicant claims an
> interest relating to the property or transaction which is the subject of the action and he
> is so situated that the disposition of the action may as a practical matter impair or
> impede his ability to protect that interest, unless the applicant's interest is adequately
> represented by existing parties.

Mass. R. Civ. P. 24(a).  Rule 24(a) is "analogous" to Rule 24(a) of the Federal Rule of Civil Procedure, see
Commonwealth v. Fremont Inv. & Loan, 459 Mass. 209, 218, 944 N.E.2d 1019, 1026 (2011)), under
which "[c]olorable claims of attorney-client and work product privilege qualify as sufficient interests to
ground intervention as of right."  In re Grand Jury Subpoena, 274 F.3d 563, 570 (1st Cir. 2001).  Here, it is
undisputed that the defendants had colorable claims of attorney-client privilege and work product
protection over the documents produced by Wachusett.  Further, Wachusett no longer had any
incentive to protect the defendants' interests once it decided to rely on the Privileged Documents in
support of its defense against Hache's Fraud on the Court Claims.  Therefore, the defendants' interests
were not adequately represented by existing parties to the remand proceedings in the Underlying
Action.

after learning of the involuntary disclosure and Hache's use of the Privileged Documents, their right to claim protection over the Documents has been waived.

Finally, the defendants' reliance on Rule 502(c) of the Federal Rules of Evidence does not undermine this court's conclusion that a waiver occurred.  (See AIG Mem. at 18; AmWINS Mot. ¶ 30).  That Rule, which addresses limitations on waiver of the attorney-client privilege and work product protection, provides as follows:

> When the disclosure is made in a state proceeding and is not the subject of a state-court order concerning waiver, the disclosure does not operate as a waiver in a federal proceeding if the disclosure: (1) would not be a waiver under this rule if it had been made in a federal proceeding; or (2) is not a waiver under the law of the state where the disclosure occurred.

Fed. R. Evid. 502(c).  Under subsection (b) of the Rule, an inadvertent disclosure made in a federal proceeding will not operate as a waiver only if "the holder of the privilege or protection took reasonable steps to prevent disclosure[.]" Fed. R. Evid. 502(b).  Because the defendants' failure to take reasonable steps to protect their interests in the Privileged Documents operates as a waiver both in a federal proceeding and under Massachusetts law, the defendants have not shown that they are entitled to relief under Rule 502(c).

In sum, it was not Wachusett's production in the Underlying Action that waived the jointly-held attorney-client and work product protections, but the defendants' own failure to act in response to the production.  The defendants had an obligation to make reasonable efforts to remedy the breach of confidentiality caused by the production and preclude their known adversary from making use of the information.  By failing to do so, they implicitly waived their right to assert attorney-client privilege and work product protection over the documents produced in the state court.  Accordingly, the defendants have not shown that they are entitled

[27]

to an order precluding Hache from using the Privileged Documents or information derived therefrom in this litigation.

IV. <u>**CONCLUSION**</u>

For all the reasons detailed above, "AmWINS Program Underwriters Inc.'s Motion for a Protective Order to Preclude Any Use of Privileged Documents Produced in Remand Proceedings in this Action" (Docket No. 123) and the "Defendants' Motion for Protective Order Precluding Plaintiff from Using Privileged Documents Disclosed in Underlying Case" (Docket No. 124) are DENIED.

 

 

 

 

      / s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge