UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALEXANDER HACHE, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | CIVIL ACTION |
| ) | NO. 20-cv-10652-PBS |
| AIG CLAIMS, INC., GRANITE STATE ) | |
| INSURANCE COMPANY, and AMWINS ) | |
| PROGRAM UNDERWRITERS, INC., ) | |
| ) | |
| Defendants. ) | |

**ORDER ON AMWINS PROGRAM UNDERWRITERS' MOTION
FOR RECONSIDERATION OF JUNE 15, 2022 ORDER
OR, IN ALTERNATIVE, PHASED PROCEEDINGS**

August 30, 2022

DEIN, U.S.M.J.

## I. INTRODUCTION

The plaintiff, Alexander Hache ("Hache"), has brought this diversity action against AIG Claims, Inc. ("AIG"), Granite State Insurance Company ("Granite") and AmWINS Program Underwriters, Inc. ("AmWINS"), claiming that the defendants violated Massachusetts General Laws chapters 93A and 176D by engaging in unfair insurance claim settlement practices in connection with the state court case of <u>Heidi Hache, Individually and as Mother and Next Friend of Alexander Hache & Brian Hache, Individually v. Wachusett Mountain Ski Area, Inc.</u>, Civil Action No. 1681CV01055 (Mass. Super. Ct.) (the "Underlying Action"). AIG, Granite, and AmWINS (collectively, the "insurers") filed motions for protective orders seeking to preclude Hache from using in this action certain documents and/or information derived therefrom which he had obtained in the Underlying Action from Wachusett Mountain Ski Area, Inc. ("Wachusett"

or the "insured"), after Wachusett waived its attorney-client privilege.  (Docket Nos. 123, 124).  On June 15, 2022, this court issued its "Order on Defendants' Motions for Protective Order" (Docket No. 135) ("Order") finding that the insurers had implicitly waived any claim of privilege over the documents by failing to take any steps in the state court to protect their confidentiality or use, despite the insurers' knowledge of the production and intended use of these documents in the Underlying Action.

On July 13, 2022, AmWINS filed the instant "AmWINS Program Underwriters' Motion for Reconsideration of June 15, 2022 Order or, in Alternative, Phased Proceedings" (Docket No. 136) ("Motion") and the accompanying "AmWINS Program Underwriters' Memorandum in Support of Motion for Reconsideration of June 15, 2022 Order or, in Alternative, Phased Proceedings" (Docket No. 137) ("AmWINS Mem.").  Neither AIG nor Granite has joined in the Motion.  By its Motion, AmWINS contends that the court misconstrued the law in holding that the insurers should have taken some steps in the state court proceeding to protect their privilege.  In the event that the court does not reverse its decision, AmWINS proposes that the court phase the remaining proceedings in this case by first requiring Hache to establish that there was "'reasonably clear liability and damages' on his claims against Wachusett during the relevant time periods in the Underlying Action" before allowing the parties to conclude "any remaining fact and/or expert discovery regarding the alleged adequacy and/or timeliness of the Defendants' settlement efforts in the Underlying Action with Defendants' objections to the plaintiffs' use of the Privileged Documents preserved for appeal."  (Motion at 2-3).  Finally, AmWINS seems to suggest that the court indicate whether it "is prepared to entertain a motion to certify the unresolved 'implied waiver' question for the Supreme Judicial Court," which

[2]

motion for certification could be briefed "prior to, or in conjunction with, cross motions for summary judgment on the Plaintiff's ability to carry his burden of proof on the 'reasonably clear liability and damages' component of his c.93A claims." (Id. at 3).

For the reasons detailed herein, the AmWINS Motion is DENIED.

## II. COURT'S PRIOR ORDER

The court assumes the reader's familiarity with the relevant facts of this dispute, as detailed fully in the Order. Thus, they will not be repeated herein.

Relying on case law cited for the first time in its Motion, AmWINS argues that the court erred in concluding that it was obligated to seek to intervene in the Underlying Action, and contends that it had no standing to seek to intervene to protect its privileged materials. For the reasons detailed below, this court disagrees with AmWINS' legal analysis. Moreover, AmWINS misconstrues the court's Order. This court did not rule that the insurers' only alternative was to move to intervene fully in the Underlying Action, nor did this court rule that the insurers had an undisputed right to intervene. Rather, this court held that the insurers' failure to take any steps to safeguard their claims of privilege in the court in which the documents were produced resulted in an implied waiver. Specifically:

> Because the defendants made no attempt to intervene in the Underlying Action, or to seek a protective order to maintain the attorney-client privilege and work product protection over the Privileged Documents before or even after the Documents were introduced into evidence at the [state court] evidentiary hearing, this court finds that the defendants have implicitly waived those protections.

(Order at 18).

This court noted that despite the fact that the insurers were not parties to the Underlying Action, "there were steps they could have taken to prevent the use and further

[3]

dissemination of the Documents in the Superior Court." (Id. at 25, citing Sec. & Exchange Comm'n v. Lavin, 111 F.3d 921, 924, 931 (D.C. Cir. 1997) wherein the party claiming privilege undertook a number of steps, including, but not limited to, intervention, to maintain confidentiality of privileged documents that were produced by a third party).  While this court acknowledged the insurers' argument that they had no right to intervene in the state action, it held that not only was there "nothing to suggest that an effort to intervene would have been futile[,]" but also that there were other alternatives, including that "they could have sought a protective order." (Id. at 25-26, citing Commonwealth v. Fremont Inv. & Loan, 459 Mass. 209, 213-14, 944 N.E.2d 1019, 1023 (2011) for the proposition that the court has the inherent power to issue protective orders, which "serve to shield litigants and third parties from unwarranted disclosures.").  In a footnote, to which AmWINS takes exception, the court cited cases for the proposition that courts have allowed intervention as of right under Rule 24(a) in cases where a party has colorable claims of work product and attorney-client privileges. (Id. at 26 n.8, citing Fremont Inv. & Loan, 459 Mass. at 218, 944 N.E.2d at 1026, and In re Grand Jury Subpoena, 274 F.3d 563, 570 (1st Cir. 2001)).  Significantly, this court went on to state that "[i]n any event, the issue before the court is not whether the defendants successfully asserted their interests in protecting the Privileged Documents but whether they took reasonable steps to do so." (Id. at 26).  Thus, the entire premise of AmWINS Motion, that this court mandated that insurers intervene in their insured's litigation to maintain their privilege, is not supported by this court's Order.

      Additional  facts will be provided below as appropriate.

### III.  ANALYSIS

**A.  Timeliness of the Motion**

Hache first objects to the Motion on the grounds that it is untimely.  The parties had 14 days to object to the discovery Order to obtain review by the District Judge.  Fed. R. Civ. P. 72(a); Local Magistrate Judge Rule 2(b).  "If a party fails to make a timely objection to the magistrate judge's ruling under Rule 72(a), he waives the right to review of the ruling by the district court." Steffenberg v. Gilman, Civil Action No. 04-40113-FDS, 2005 WL 8176506, at *8 (D. Mass. Sept. 13, 2005) (and authorities cited).  "Such a party also forfeits its right to challenge any aspect of the magistrate judge's ruling before the court of appeals." Id. (and authorities cited).  Because AmWINS' Motion was filed 28 days after the Order was entered, AmWINS has forfeited review of the Order by the District Judge or the First Circuit.

"Although Rule 72(a) prescribes a [14]-day deadline for appealing the magistrate judge's decision on non-dispositive matters to the district court, it does not necessarily prevent the magistrate judge from reconsidering his or her own ruling on such matters, even after the passage of [14] days." Id. at *9 (emphasis in original).  Thus, "a party who fails to lodge a timely objection to an adverse decision pursuant to Rule 72(a) may nonetheless attempt to seek recourse through a motion for reconsideration directed to the magistrate judge." Id. (and authorities cited).  While "'[t]he Federal Rules of Civil Procedure do not specifically provide for the filing of motions for reconsideration,' such motions are usually decided pursuant to either Fed. R. Civ. P. 59(e) or Fed. R. Civ. P. 60(b)" depending on when the motion for reconsideration was filed.  In re Urbelis, Civil Action No. 15-cv-12358-ADB, 2018 WL 701350, at *3 (D. Mass. Feb. 2, 2018) (quoting Cent. Produce El Jibartio v. Luna Commercial Corp., 880 F. Supp. 2d 282, 284

(D. P.R. 2012)).  Since the instant motion for reconsideration was filed within 28 days of the date of the entry of the Order, it will be considered a timely motion for reconsideration under Rule 59(e).[1]  Id.  See also Villanueva-Mendez v. Nieves Vazquez, 360 F. Supp. 2d 320, 323 (D.P.R. 2005) (despite the fact that Rule 59(e) refers to judgments, "Rule 59(e)'s legal standards will be applied to motions for reconsideration of interlocutory orders.").

### B. Standard of Review of Motions for Reconsideration

Allowing a motion for reconsideration is "an extraordinary remedy which should be used sparingly."  Galanis v. Szulik, 863 F. Supp. 2d 123, 124 (D. Mass. 2012) (quoting Palmer v. Champion Mortg., 465 F.3d 24, 30 (1st Cir. 2006)).  Accordingly, "[r]econsideration is warranted only in a limited number of circumstances: 1) the moving party presents newly discovered evidence material to the Court's decision, 2) there has been an intervening change in law or 3) the decision was based on a manifest error of law or fact or was clearly unjust."  Id. (citing United States v. Allen, 573 F.3d 42, 53 (1st Cir. 2009)).  "A motion for reconsideration is not the venue to undo procedural snafus or permit a party to advance arguments [he] should have developed prior to judgment."  Woo v. Spackman, 988 F.3d 47, 53 (1st Cir. 2021) (quoting Biltcliffe v. CitiMortgage, Inc., 772 F.3d 925, 930 (1st Cir. 2014)).  The motion for reconsideration is also not a vehicle for "re-arguing theories previously advanced and rejected."  Galanis, 863 F. Supp. 2d at 124 (quoting Palmer, 465 F.3d at 30).

Here, AmWINS provides no new evidence in support of its Motion.  Nor does AmWINS submit that there has been an intervening change in the law since the court entered its Order.

---

[1] Fed. R. Civ. P. 59(e) provides, "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment."

Therefore, the court must analyze whether AmWINS has shown that the decision was based on a manifest error of law or fact or was clearly unjust. "A manifest error is an 'error that is plain and indisputable, and that amounts to a complete disregard of the controlling law or the credible evidence in the record.'" Pearson v. Hodgson, Civil Action No. 18-cv-11130-IT, 2021 WL 1210358, at *2 n.1 (D. Mass. Mar. 31, 2021) (quoting Black's Law Dictionary (11th ed. 2019)). "[A] showing of manifest injustice 'requires, at a bare minimum, 'a definite and firm conviction that a prior ruling is unreasonable or obviously wrong' and resulted in prejudice.'" United States v. Bulger, 928 F. Supp. 2d 305, 316 (D. Mass. 2013) (quoting United States v. Moran, 393 F.3d 1, 8 (1st Cir. 2004)). As detailed more fully below, AmWINS has not met this standard.

### C. AmWINS' Arguments Regarding Intervention

AmWINS' principal argument is that the court erred in holding that the insurers were required to move to intervene in the Underlying Action. Relying on Bolden v. O'Connor Café of Worcester, Inc., 50 Mass. App. Ct. 56, 734 N.E.2d 726 (2000), AmWINS argues that it could not have intervened in the state court proceeding. As detailed above, AmWINS' argument misconstrues this court's Order: there was no requirement that the insurers intervene in the Underlying Action. Rather, it was their decision to stand-by silently, with knowledge that allegedly privileged documents were being used by the parties and the court in the Underlying Action, that resulted in the waiver of their claim of privilege.

Moreover, for purposes of this motion for reconsideration, it must be noted that Bolden was decided in 2000, but was not mentioned in any of the pleadings filed in connection with the relevant motions. Thus, this argument was available to AmWINS in connection with its

[7]

original motion, and AmWINS has not explained why it was not raised earlier.  The motion for reconsideration can be denied on this basis alone.

Despite AmWINS' characterization of Bolden as "directly applicable" and "analogous" to the present case, it is not relevant and presents an entirely different factual scenario.  (See AmWINS Mem. at 3, 5).  As an initial matter, Bolden does not deal with any issues of attorney-client privilege or work product privilege.  The question in Bolden was "whether the trial judge abused his discretion when he denied the nonparty insurance company's postjudgment motion to intervene as a defendant for the purpose of pursuing an appeal of the plaintiffs' jury verdict" against the insured.  Bolden, 50 Mass. App. Ct. at 56, 734 N.E.2d at 728.  In the underlying dram shop liability suit, the jury found the insured bar guilty and awarded the plaintiffs over $20 million in damages.  Id. at 57, 734 N.E.2d at 728.  After the verdict, the insured assigned its rights to any claims it may have had against its insurance company, LLJUA, to the plaintiffs and the plaintiffs agreed not to execute the judgment against the insured.  Id.  The plaintiffs also served LLJUA with a c. 93A demand letter alleging that LLJUA's pre-trial settlement offers were made in bad faith.  Id.  The plaintiffs subsequently filed a c. 93A case against LLJUA.  Id. at 60, 734 N.E.2d at 730.  Faced with the prospect of having to defend the c. 93A lawsuit in which the jury verdict from the underlying case might be considered in assessing its own liability, LLJUA moved to intervene as a party in the underlying action to pursue the appeal from the verdict. Id. at 57, 734 N.E.2d at 728.  The trial judge denied LLJUA's motion to intervene in the appeal. Id. at 60, 734 N.E.2d at 730.

The Appeals Court affirmed the trial judge's denial under both Mass. R. Civ. P. 24(a) (intervention as of right) and Mass. R. Civ. P. 24(b) (permissive intervention).  The Appeals Court

concluded that the insurer's purported interest in the appeal, which was to attempt to limit its own liability for its own settlement practices, was collateral to the claims in the dram shop liability tort suit.  Id. at 64, 734 N.E.2d at 733.  Consequently, it was not an abuse of discretion for the trial judge to conclude that the insurer could not intervene as a matter of right.  Id. at 69-70, 734 N.E.2d at 736-37.  The Appeals Court also upheld the trial judge's denial of the insurer's request to intervene by permission, which is "wholly discretionary with the trial judge," because the question of the insured's actual liability was not at the heart of the c. 93A suit, there were no common questions of law or fact between the c. 93A claim and the appeal of the dram shop liability suit, and allowing intervention would prejudice the original parties who had settled their dispute after the jury verdict.  Id. at 70-71, 734 N.E.2d at 737-38.

There is nothing in Bolden that calls into question, in any way, the fact that both the Massachusetts Supreme Judicial Court ("SJC") and a "majority of Federal Circuit Courts of Appeal have held that intervention is procedurally appropriate" when a third party seeks to intervene in connection with information produced in the proceeding. Fremont Inv. & Loan, 459 Mass. at 218, 944 N.E.2d at 1026.  Similarly, Bolden does not challenge the ample case law support for the proposition that "[c]olorable claims of attorney-client and work product privilege qualify as sufficient interests to ground intervention as of right."  In re Grand Jury Subpoena, 274 F.3d at 570.  In Bolden, the issue was whether the insurer could step into the shoes of the insured and pursue an appeal that the insured itself had settled.  In the instant case, the insurers did not need to seek to intervene on the merits of the Underlying Action. What they did have to do, however, was to take steps to protect the confidentiality of their privileged documents in the litigation in which the documents were being disseminated and

[9]

used by the parties and the court.  Had they sought intervention as a means of protecting the documents, the state court would have had the opportunity to apply a "flexible, rather than rigid approach" to intervention, following a "practical, case-specific, fact-intensive analysis[.]" Bolden, 50 Mass. App. Ct. at 62, 734 N.E.2d at 731, 732.  Bolden does not hold otherwise.

AmWINS also cites to In re Grand Jury Proceedings, 469 F.3d 24 (1st Cir. 2006) to suggest a different analysis is necessary when considering intervention in separate proceedings.  This case does not support AmWINS' contention, but rather supports this court's Order.  In that case, a CEO of a company attempted to intervene as of right in a grand jury investigation in order to assert the corporation's attorney-client privilege.  See id. at 25.  The court affirmed the principle put forth in In re Grand Jury Subpoena, 274 F.3d 563, 570 (1st Cir. 2001) (and cited in this court's Order) that "[c]olorable claims of attorney-client privilege qualify as sufficient interests to ground intervention as of right."  In re Grand Jury Proceedings, 469 F.3d at 26.  Nevertheless, the court dismissed the appeal of the district court's order denying the request to intervene because the CEO was acting in his personal capacity, and not as a corporate representative.  Id.  Consequently, he did not have standing to assert the corporation's privilege.  Id.  Notably, however, the court also concluded that if the CEO had been asserting his own privilege "the district court would have been obliged to grant intervention."  Id.  Thus, this case supports the conclusion that there were steps the insurers could have taken to protect their claims of privilege.

AmWINS also argues that this court incorrectly "overlook[ed] the constraints placed upon insurers to refrain from taking any action that could be construed as placing their own interests ahead of their insureds" by requiring the insurers to bring the issue before the state

[10]

court trying the Underlying Action. (AmWINS Mem. at 3). AmWINS has cited no cases addressing the potential conflict between an insured and its insurer vis-à-vis the confidentiality of their jointly protected documents. This court expresses no opinion as to whether AmWINS' decision to claim a privilege in contravention of its insured's wishes would run afoul of the insurer's obligations to its insured. That issue needed to be explored, if at all, in the context of the Underlying Action where all interested parties could have been heard and viable alternatives considered. Having elected to allow the parties and the court unfettered access to the privileged documents in the Underlying Action, the insurers waived their right to claw back the documents from the plaintiff and claim a privilege after the fact.

The court has considered the remaining arguments brought by AmWINS. For the most part, they constitute claims that cases relied on by the court are distinguishable, and that the court erred in rejecting the insurers' previously made arguments. None of the arguments raise new issues that could not have been presented in connection with the original motions. Moreover, none of the arguments convince the court that its earlier Order was clearly erroneous. In short, AmWINS has not established a basis for this court to reconsider its earlier ruling.

**D. Request for Phased Discovery and/or Certification**

AmWINS' request for phased discovery is denied. As Hache points out, AmWINS' request is premised on the assumption that it had no duty to make any offer of settlement so long as it disputed the extent of Hache's injuries. (See Hache Opp. (Docket No. 139) at 3). The facts relating to the insurers' knowledge about the status of the Underlying Action and Hache's injuries are intertwined with the facts relating to their settlement positions. It would not

[11]

promote judicial economy to attempt to segregate out various issues for discovery purposes at this stage of the litigation.

Finally, this court declines AmWINS' suggestion that it indicate whether it would consider a request to certify a question to the SJC. If AmWINS wishes to make a specific motion it should do so. The court would then consider the merits of such a request after appropriate briefing and argument.

## V. **CONCLUSION**

For the reasons detailed herein, "AmWINS Program Underwriters' Motion for Reconsideration of June 15, 2022 Order or, in Alternative, Phased Proceedings" (Docket No. 136) is DENIED.

                                                         / s / Judith Gail Dein
                                                      Judith Gail Dein
                                                      United States Magistrate Judge