UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

_____

ALEXANDER HACHE,                          )
                        Plaintiff,          )
                                       )
v.                                        )         C.A. 1:20-CV-10652-PBS/JGD
                                       )
AIG CLAIMS, INC., GRANITE STATE          )
INSURANCE  COMPANY, and                   )
AMWINS PROGRAM UNDERWRITERS, INC.,        )
                   Defendants.         )
_____ )

### AMWINS PROGRAM UNDERWRITER INC.'S MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

Pursuant to Fed. R. Civ. P. 56, the defendant, AmWINS Program Underwriters, Inc. ("AmWINS"), submits this Memorandum in support of its accompanying motion for the entry of summary judgment in its favor regarding the M.G.L. c. 93A §9 claim asserted by the Plaintiff, Alexander Hache, concerning its allegedly unfair acts or practices in handling the *Hache v. Wachusett Mountain Ski Area, Inc.* lawsuit (the "Underlying Action").

### Introduction

Undeterred by the Court's determination that the Plaintiff's maximum potential recovery in this Action must be capped at $113,389.14 pursuant to the "Safe Harbor" provisions in G.L.c. 93A, §9(3) and (4) (ECF #110 and 114), the Plaintiff remains intent on pursuing his effort to parlay the $4,560,105.20 Judgment entered against Wachusett Mountain Ski Area, Inc. ("Wachusett") in the Underlying Action into a c.93A multiple damages award by proceeding to trial to develop a factual record for purposes of his planned appeal from the Safe Harbor ruling.

At the outset, it is important to note that if the Plaintiff cannot establish a "willful and knowing" c.93A violation by AmWINS, AIG Claims, Inc. ("AIG Claims") and/or Granite State Insurance Company (collectively, the "Defendants"), he does not have any right, in the alternative,

to seek an award of "actual damages" for any alleged non-willful, aka "simple", c.93A violation given the satisfaction in full of the Judgment entered against Wachusett (the "Judgment") in July 2019, a few months prior to the Plaintiff's submission of his c.93A written demands for relief.

Based upon the accompanying Statement of Undisputed Facts and decisions discussed below, this is a dispute which can, and should, be resolved on summary judgment because the Plaintiff's "willful and knowing" c.93A claims fail as a matter of law for the following reasons:

➢ The Plaintiff cannot make the required showing of "reasonably clear liability and damages" on his Underlying Action claims needed to establish that the Defendants had a statutory obligation to "effectuate a prompt, fair and equitable" pre-trial settlement of his claims against Wachusett under c.93A;

➢ Far from being "reasonably clear," Hache's asserted entitlement to obtain a substantial damages award for alleged cognitive impairments and persistent orthopedic difficulties attributed to his March 8, 2015 fall from a Wachusett ski lift (the "Accident") remained vigorously contested from the inception through the trial of the Underlying Action, as shown by: (a) the divergent findings and conclusions reached by the Parties' array of retained expert witnesses; and (b) the "moving target" nature of Hache's injury claims following his Accident;

➢ In addition to the Parties' materially divergent positions concerning Hache's recoverable damages for his disputed injury claims, the Plaintiff's ability to make the required showing of reasonably clear liability on his claims against Wachusett turned on the outcome of battles over the Plaintiff's effort to drive up the value of his claims by relying upon inflammatory training record alteration information that the Court ultimately excluded from trial;

➢ Contrary to the Plaintiff's arguments, the Defendants never had a statutory obligation to settle, rather than try, Hache's claims given their determination, based upon a thorough review of the relevant circumstances, that the Parties' dispute could not be resolved for an amount that they deemed reasonable in relation to their evaluation of the merits and value of Hache's contested and evolving injury claims;

➢ Moreover, for purposes of evaluating the reasonable settlement value of Hache's injury claims, the Defendants were not statutorily obligated to assign any value to the litigation risks presented by the Plaintiff's reliance upon the inflammatory, and ultimately excluded, training record alteration evidence; and

➢ While under no statutory obligation to do so given the absence of "reasonably clear liability and damages" on the Plaintiff's claims against Wachusett, the Defendants pursued reasonable and good faith efforts to resolve Hache's claims at various stages prior to the July 2019 trial in the Underlying Action. While these efforts proved unsuccessful due to the Parties' materially divergent views regarding Hache's recoverable damages and the procedural battles over

Wachusett's efforts to stipulate to liability to preclude the admission of the inflammatory training record evidence, this outcome falls far short of establishing any factual basis for an award of multiple damages for a willful and knowing c.93A violation.

By resolving this dispute on summary judgment, the Court will clear the way for the Plaintiff to pursue his appeal from the "safe harbor" ruling without the need for time consuming and costly trial proceedings. A summary judgment resolution will also eliminate the potential need to revisit the Defendants' standing objection to the Plaintiff's use of privileged documents obtained from Wachusett in the "fraud on the court" proceedings (to which the Defendants are not parties) for any purpose in this Action during trial to preserve their appellate rights regarding the Court's prior denial of their protective order motions [ECF #135 and 141].[1]

## I.    UNDISPUTED MATERIAL FACTS

In lieu of including a duplicative recitation of the statement of the undisputed material facts that support the allowance of AmWINS' motion for summary judgment, this Memorandum incorporates by reference the discussion of the relevant facts which are undisputed and/or indisputable based upon admissible record evidence in this Action set forth in its accompanying Local Rule 56.1 Statement of Facts ("SOF").[2]

## II.   ARGUMENT

Under Fed. R. Civ. P. 56, summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

---

[1] The Massachusetts Appeals Court will hear argument on the Plaintiff's second appeal from denial of his motion for a "fraud on the court" sanction against Wachusett for the training record alteration on February 6, 2023.

[2] References in this Memorandum to the supporting factual grounds for AmWINS' motion and Exhibits attached to the accompanying Affidavit of Barbara O'Donnell (O'Donnell Aff.") appear as SOF at ¶__ or O'Donnell Aff., Ex. ____.

a judgment as a matter of law." Fed. R. Civ. P. 56(c).  *Galloza v. Foy*, 389 F.3d 26, 28 (1st Cir. 2004).

"To determine whether these criteria have been met, a court must pierce the boilerplate of the pleadings and carefully review the parties' submissions to ascertain whether they reveal a trialworthy issue as to any material fact. In applying this screen, the court must construe the record and all reasonable inferences from it in favor of the nonmovant (i.e., the party opposing the summary judgment motion). In this formulation, an absence of evidence on a critical issue weighs against the party -- be it the movant or the nonmovant -- who would bear the burden of proof on that issue at trial." *Perez v. Volvo Car Corp.,* 247 F.3d 303, 310 (1st Cir. 2001) (citations omitted). Accordingly, when the "nonmovant has the burden of proof on a critical issue and the evidence that [s/he] proffers in opposition to summary judgment is so vague that she could not prevail at trial, the motion must be granted." *Id*. at 318.

Applying this framework to its affirmance of the insurer's entitlement to summary judgment in *Bobick v. U.S. Fid. & Guar. Co.*, 439 Mass. 652, 659 (2003),[3] the Supreme Judicial Court began its analysis by stating that "there is no reason why the question whether an insurer has fulfilled its duties under G.L.c. 176D [and c.93A] may not be settled in favor of an insurer on a motion pursuant to rule 56 in circumstances when undisputed material facts in the record demonstrate that the plaintiff has 'no reasonable expectation of proving an essential element' of his case. Such circumstances are present here."

In *Bobick*, the SJC affirmed the trial court's entry of summary judgment for the insurer because the plaintiff could not make the required showing of reasonably clear liability in the face of clear record evidence of the parties' "legitimate difference of opinion as to the extent of

---

[3] Mass. R. Civ. P. 56 is virtually identical to Fed. R. Civ. P. 56.

[USF&G's insured's] liability." *Id*.  As the SJC explained, where the record evidence "[e]ven when viewed in the light most favorable to the plaintiff' demonstrated that the extent of the insured's liability "was still the subject of good faith disagreement" given the involvement of other potentially responsible parties, USF&G could obtain summary judgment in its favor by pointing to the plaintiff's inability to establish this "essential element" of his c.93A claim.  *Id*. at 660.[4] As grounds for its summary judgment affirmance, the SJC also pointed to the plaintiff's failure to offer any evidence that the insurer's investigation was inadequate in any respects.  *Id*. at 657, n. 9.

While *Bobick* concerned a situation involving a good faith disagreement over the insured's liability, rather than a dispute over the plaintiff's recoverable damages, the SJC's evaluation of the insurer's entitlement to the entry of summary judgment due to the plaintiff's inability to prove an "essential element" of her c.93A claims applies with equal force to this dispute.

Specifically, the Defendants are likewise entitled to the entry of summary judgment based on the Plaintiff's inability to establish an "essential element" of his c.93A claims in this dispute; namely the existence of reasonably clear liability and damages for purposes of establishing the Defendants' statutory obligation to "effectuate [the] prompt, fair and equitable settlement" of his claims against Wachusett under c.176D §3(9)(f).  As with the plaintiff in *Bobick*, Hache has also failed to offer any evidence of any inadequacy in AmWINS' investigation into his claims.

Furthermore, for purposes of evaluating whether the record evidence establishes that the Plaintiff cannot prove an essential element of his c.93A claims under the Rule 56 framework,

---

[4]After affirming summary judgment based upon the plaintiff's inability to establish reasonably clear liability, the SJC discussed the burden that would have been placed upon USF&G "had the matter proceeded to trial" to establish that its settlement offer was reasonable under the "circumstances and in light of the plaintiff's demands." *Id*. at 661. In this oft-cited aspect of its decision, the SJC stated that a claimant's excessive demands "do not relieve an insurer of its statutory duty to extend a prompt and equitable offer of settlement once liability and damages are reasonably clear. They may be considered as part of the over-all circumstances affecting the amount that would qualify as a reasonable offer in response…".  *Id*. at 662.

namely "reasonably clear" liability and damages on his Underlying Action claims, the Court does not have to determine whether Wachusett's pretrial stipulation to liability to prevent the Plaintiff from relying upon the inflammatory training record evidence at trial prevents the Defendants from contesting this "essential element" of the Plaintiff's claims because the undisputed record evidence of the "legitimate difference of opinion" over Hache's recoverable damages provides this Court with ample grounds to grant Defendants' motions for summary judgment.

Moreover, in his effort to establish that he has a reasonable expectation of establishing the essential "reasonably clear liability and damages" element of his c.93A claims, Plaintiff faces the added obstacle presented by his inability to offer any testimony at trial to challenge the Defendants' well-founded grounds for contesting Hache's recoverable damages apart from his counsel's conclusory (and non-admissible) arguments on his behalf.   In this regard, it is telling that the Plaintiff's written submissions in this Action focus, almost exclusively, on a one-sided narrative regarding the Defendants' allegedly unfair settlement practices with scant attention paid to the reasonably clear liability and damages requirement under c.93A.

## A.   The c.93A Damages Statutory Framework

Prior to addressing the legal and factual deficiencies in the Plaintiff's "willful and knowing" violation claims, a brief overview of the available remedies for a c.93A violation is warranted. As noted in his Complaint (¶¶40, 46 and 52), the Plaintiff bases his c.93A claims against the Defendants on their alleged violation of the following c.176D §3(9) provisions:

(d)   Refusing to pay claims without conducting a reasonable investigation based upon all available information;

(f)   Failing to effectuate prompt, fair and equitable settlements of claims in which liability has become reasonably clear.

For c. 93A claims based upon a c.176D violation, a prevailing party is entitled to recover "actual damages or twenty-five dollars, whichever is greater, or up to three but not less than two

times such amount if the court finds [a knowing or willful violation]."  *See*, *Rhodes v. AIG Domestic Claims, Inc.*, 461 Mass. 486, 495 (2012).

For a non-knowing or willful c.93A violation, a plaintiff must "establish a causal link between the insurer's wrongful conduct and the loss a plaintiff claims to have suffered." *Id*. at 496. Given this requirement, the calculation of recoverable actual damages for a non-willful or knowing c.93A violation is typically based upon delay damages such as "interest lost on the money wrongfully withheld by the insurer [and/or other] cost and expense directly resulting from the insurer's conduct."' *Clegg v. Butler*, 424 Mass. 413, 425 (1987).

In contrast, following c. 93A's 1989 amendment, an "actual damages" award for a willful and knowing violation is based upon the amount of the Judgment entered against the insured if the c.93A claims arise out of the "the same and underlying transaction or occurrence, regardless of the existence or non-existence of insurance coverage available in payment of the claim."

The required multiplication of the "judgment on all claims" under the 1989 statutory amendment only applies to the imposition of multiple damages for a willful and knowing violation of c.93A. *Rhodes v. AIG Domestic Claims, Inc.*, 461 Mass. at 499, n. 19. As the Massachusetts Appeals Court explained in *Yeagle v. Aetna Cas. & Sur. Co.,* 42 Mass. App. Ct. 650, 654 (1997), "[a] reading that the judgment is also the measure of single damages seems to us to go beyond the text and to be implausible as an ordinary lexical exercise." *See, Kapp v. Arbella Mut. Ins. Co.,* 426 Mass. 683, 685-86 (1998) (adopting *Yeagle* holding).

Importantly, to avoid its potential exposure to a multiple damages award and to cut off an award of attorneys' fees, a defendant can avail itself of the c. 93A "safe harbor" provisions by conveying an offer that is "reasonable in relation to the injury actually suffered by the petitioner" in its response to the written demand for relief that the plaintiff is required to submit prior to the

initiation of a c.93A §9 action. *See, Toole v. Coldwell Banker Residential Brokerage*, 2007 U.S. Dist. LEXIS 107771, *14 (D. Mass., Jan. 4, 2007).

As the Court correctly concluded in its Safe Harbor decision [ECF #110 and 114], the Defendants' offer to pay Hache $113,389.14 for the schedule of expenses attached to his written c.93A demands was reasonable in relation to any "injury actually sustained" by the Plaintiff as a result of the Defendants' allegedly unfair actions.  Consequently, Hache's maximum available recovery (if he can establish an entitlement to c. 93A relief) remains capped at $113,389.14 unless he can secure a reversal from the First Circuit on appeal.

For an array of reasons, the interests of judicial economy and efficiency would be promoted by clearing the way for the Plaintiff to pursue his "safe harbor" appeal by granting the Defendants summary judgment based upon the Plaintiff's inability to establish the reasonably clear liability and damages "essential element" of his c.93A claim and the absence of any evidence of conduct that conceivably rises to the level of a "willful and knowing" c.93A violation.

**B. Plaintiff's Inability to Make the Required Showing of Reasonably Clear Liability and Damages Defeats his c.93A Claim**

As shown by the following decisions, the Plaintiff's inability to make the required showing of "reasonably clear" damages in the Underlying Action prevents him from establishing that the Defendants ever had, much less violated, a statutory obligation to "effectuate a prompt, fair and equitable settlement" of Hache's claims against Wachusett under c.93A and 176D §3(f).

In *Calandro v. Sedgwick Claims Mgmt. Servs.*, 919 F.3d 26, 31 (1st Cir. 2019), the First Circuit affirmed this Court's entry of judgment for a claims administrator (Sedgwick) based upon the determination that causation and damages were "hotly contested" on at least one aspect of the plaintiff's claims, defeating the plaintiff's ability to establish a c.93A/176D violation. The First

Circuit began its analysis with a discussion of the operative c.93A framework, noting that it "bears emphasis" that "the duty to settle arises only when liability and damages for the underlying claim have become reasonably clear." *Id*. at 34.  For purposes of this determination, "[l]iability is not reasonably clear if an element in the underlying claim is subject to good-faith disagreement." *Id*. Accordingly, "[a]n insurer who has investigated a claim and has a good-faith basis for concluding that liability is not reasonably clear does not violate Chapter 176D either by delaying a settlement offer or withholding one altogether." *Id.*

"With this framework in place," the First Circuit concluded that Judge Saris' entry of judgment for Sedgwick was based on "a foundation of subsidiary findings: that Sedgwick investigated the claim in a timeous manner and in good faith by, among other things, engaging [an investigator] and retaining [defense counsel], requiring serial reports, and hiring a medical expert"; that, based (at least in part) on this investigation, the causation element of the wrongful death claim was not reasonably clear and, thus, Sedgwick had adequate reason to contest liability thereon; and that, even assuming that liability was reasonably clear with respect to the claim for conscious pain and suffering, Sedgwick did not violate Chapter 176D because it made reasonable settlement offers at appropriate times." *Id.*[5] Given the foregoing, the First Circuit concluded that the "evidence amply supported the district court's finding that Sedgwick continually – and in good faith – contested the causation element of the wrongful death claim." *Id*. at 35.

After reviewing the ample factual support for the trial court's rejection of the plaintiff's c.93A claims, the First Circuit concluded that "[t]he case law cited by the plaintiff does not demand

---

[5]In *Calandro*, Sedgwick "concede[d] that liability was reasonably clear with respect to the plaintiff's claim for conscious pain and suffering," *Id*. at 38.  Given this concession, the District Court examined the reasonableness of Sedgwick's settlement offers concerning the uncontested element of the plaintiff's claims.  In contrast, in this dispute, the Defendants contested the plaintiff's recoverable damages for his orthopedic difficulty claims based upon his well-documented favorable recovery following his Accident.

a different result.  Without exception, those cases are cases in which liability [and damages were] reasonably clear from the inception.  *See*, *Rhodes [v. AIG Domestic Claims, Inc.,* 461 Mass. 486 (2012)]; *Gore v. Arbella Mut. Ins. Co.*, 77 Mass.App.Ct. 518 (2010).  They are therefore, reasonably distinguishable." *Id*. at 37.

Here too, the Plaintiff's c.93A claims are defeated by the ample record evidence regarding Hache's "hotly contested" entitlement to recover a substantial damages award for his alleged cognitive impairments attributed to a concussion sustained in his Accident and the evolving nature of his allegations of ongoing orthopedic difficulties more than three years following his well-documented recovery from the fractures sustained in the ski lift fall. Similarly, here too, the record evidence establishes that AmWINS conducted a thorough investigation into Hache's Underlying Action claims, including the retention of expert witnesses to review and respond to the Plaintiff's submissions.

On these facts, detailed more fully in the accompanying SOF, Hache has "no reasonable expectation of proving an essential element" of his case, namely that liability *and* damages on his claims against Wachusett were ever "reasonably clear" for purposes of triggering the Defendants' statutory settlement obligations under c.93A at any point prior to the July 2019 trial in the Underlying Action.  Plaintiff's conclusory allegation that AmWINS violated c.93A by "refusing to pay [his] claims without conducting a reasonable investigation based upon all available information" in disregard of its obligations under c.176D also fails as a matter of law when compared against the undisputed material facts set forth in the accompanying SOF.

Consequently, and as with the situation before the court in *Bobick v. U.S. Fid. & Guar. Co., supra,* AmWINS' motion for summary judgment should be granted because the Plaintiff cannot make the required showing of reasonably clear liability in the face of clear record evidence

regarding of the parties' "legitimate difference of opinion" as to the nature, extent, and severity of Hache's alleged cognitive impairments and ongoing orthopedic difficulties from the Accident.

The following decisions provide this Court with additional support for granting AmWINS' summary judgment motion based upon the Plaintiff's inability to make the required showing of reasonably clear liability and damages on his Underlying Action claims for purposes of establishing the Defendants' statutory settlement obligations under c.93A and/or any deficiency in its investigation into the Accident and Hache's claims against Wachusett.

In *Lief-Socolow v. Plymouth Rock Assurance Corp.,* 93 Mass. App. Ct. 1104, 2018 Mass. App. Unpub. LEXIS 277 (Rule 1:28 decision)(2018), *app granted*, 480 Mass. 1104,[6] the Appeals Court panel reversed the trial court's "willful and knowing" c.93A finding concerning the insurer's alleged obligation to effectuate the settlement of claims arising out of a motor vehicle accident. In so holding, the Appeals Court concluded that Plymouth Rock fulfilled its investigative obligations by retaining a neurologist to conduct a medical records review when the "nature of [the plaintiff's] injuries was not easily diagnosable or apparent" following three post-accident independent medical examinations in conjunction with its reliance on defense counsel. Given Plymouth Rock's well-founded reasons "to be skeptical as to the extent of" the plaintiff's injuries, the Appeals Court concluded that it did not violate c.93A when it made offers ranging from $9,000 to $35,000 prior to an arbitration that resulted in an award of $905,000. Prior to the arbitration, the parties entered into a $35,000-$250,000 high low agreement. Following the entry of the award, Plymouth Rock promptly issued payment for its $250,000 policy limit.

Reiterating that an insurer's settlement duty only arises when liability and damages are reasonably clear, the Court concluded that Plymouth Rock's offers, when examined under the

_____

[6]The appeal was voluntarily dismissed in September 2018 according to the SJC-12573 docket.

totality of circumstances, including the amount of the plaintiff's demands, were reasonable. *Id*. at *6, *citing Klairmont v. Gainsboro Restaurant, Inc.,* 465 Mass. 165 (2013).  In addition, the Appeals Court concluded that the "difference between the offer made and the amount awarded did not violate G.L.c. 93A where PRAC relied on medical expert opinions that contested damages." *Id*. at *7, *citing to Parker v. D'Avolio,* 40 Mass. App. Ct. 394, 401-402 (1996).

The Appeals Court's decision in *Silva v. Norfolk & Dedham Mut. Fire Ins. Co.,* 91 Mass. App. Ct. 413 (2017), *appeal denied*, 477 Mass. 1113 (2017), is also instructive.  In *Silva*, the Appeals Court affirmed the entry of judgment in favor of an insurer because its well-founded grounds for contesting the extent and severity of the plaintiff's claimed damages shielded it from the imposition of c.93A liability for any aspect of its handling of the underlying claims against its insured prior to the jury's return of a $818,000 verdict. The *Silva* dispute arose out of a motor vehicle accident that occurred when Norfolk & Dedham's insured rear-ended a tow truck that was assisting another motorist during a snowstorm.  During the jury trial, the insurer conveyed two settlement offers ($25,000 and $60,000), both of which were rejected by the plaintiff.  The insurer did not convey any settlement offers prior to trial.

Following a bench trial on the c.93A claims, the trial court rejected the plaintiff's c.93A claims concerning the insurer's handling of the claims prior to trial because "[a]lthough fault for the accident may have been clear, the "damages attributable to [the insured's actions were] still the subject of good faith disagreement." *Id*. at 418.  In this regard, the insurer had good reason to question the damages and wage loss claims made by the plaintiff tow truck driver based upon information obtained through its pre-suit investigation, discovery in the underlying lawsuit, and the findings and conclusions reached by its retained experts, a neurologist and a biomechanical engineer. Based upon the insurer's well-founded grounds for contesting the nature and extent of

the plaintiff's recoverable damages, the trial court concluded (and the Appeals Court agreed) that the insurer's "failure to make a settlement offer within the policy limit [prior to trial] was not an unfair practice" prohibited by c.93A.  *Id*. at 421.[7]

Affirming the trial court's rejection of the plaintiff reliance upon the jury verdict to challenge the reasonableness of the insurer's settlement offers during the trial, the Appeals Court stated that "Norfolk & Dedham could not have anticipated the $818,000 jury verdict and that verdict is not an appropriate sum against which to gauge the reasonableness of the mid-trial settlement offers."  *Id*. at 419, n.3.  As the Appeals Court explained, "[a]n insurer's good faith, but mistaken, valuation of damages does not constitute a violation of c.176D" or c.93A. *Id.*

As grounds for rejecting the plaintiff's "inadequate investigation" claim, the Appeals Court noted the absence of any evidence of any "specific steps that [the insurer] should have taken but did not in investigating Silva's bodily injury claim." *Id*. at 16. Moreover, the trial judge "did not err in determining that [the insurer] was not "inattentive" or "unreasonable" in its investigation of the accident." *Id*., *citing McLaughlin v. American States Ins. Co.,* 90 Mass. App. Ct., 22, 32 (2016).

An insurer's well-founded grounds for questioning the nature and extent of the plaintiff's injury claims, notwithstanding clear evidence that the insured was "wholly at fault" for the auto accident, also eliminated its exposure to c.93A liability for allegedly unfair settlement practices in *O'Leary-Alison v. Metro Prop. & Cas. Ins. Co.*, 52 Mass. App. Ct. 214, 218 (2001).  Affirming the entry of judgment for the insurer, the Appeals Court reiterated that c.93A does not obligate insurers to "settle as to an insured whose liability is not reasonably clear." *Id*. at 217.  Where "liability" in the c.93A context "encompasses both fault and damages," the "relevant inquiry is

---

[7] The Appeals Court reversed the trial court's determination that the plaintiff established a c.93A violation concerning the insurer's post-trial tender of the $250,000 policy limit without the inclusion of post judgment interest in exchange for a release of claims against the insured.  *Id*. at 422.

whether Metropolitan reasonably believed that its insured's liability with respect to damages was not clear." *Id*. at 217.

In *O'Leary-Alison,* as in this dispute, the insurer had "multiple reasons to be skeptical of [the plaintiff's damages claim given the] "marked discrepancy between [plaintiff's] claim of a debilitating back injury (supported by her chiropractor's diagnosis) and the opinions of several other physicians, including an independent medical examiner, that such a claim was not borne out by examination." *Id*. at 215. *Also see, Villaneuva v. Commerce Ins. Co.,* 89 Mass. App. Ct. 1124 (2016) (Rule 1:28 Summary Decision) (Judgment for insurer affirmed because insurer's reasonable grounds to contest liability and damages eliminated c.93A statutory settlement obligation).[8]

Consistent with the outcome in *Silva*, the *O'Leary-Alison* plaintiff fared no better in attempting to establish a c.93A violation by relying upon the disparity between the insurer's settlement offers ($20,000 top offer) and the $125,000 damages award at trial.  As the Appeals Court explained, the insurer's "inability to predict the ultimate damages award did not reflect bad faith." *Id*. at 216.  Citing to *Peckham v. Continental Cas. Ins. Co*., 895 F. 2d 830, 835 (1st Cir. 1990), the Appeals Court reiterated that "[s]o long as the insurer acts in good faith, the insurer is not held to standards of omniscience or perfection; it has leeway to use, and should consistently employ, its honest business judgment." *Id*. at 218.

As support for its determination that an "insurer's good faith, but mistaken, valuation of damages does not constitute a violation of c. 176D," the Appeals Court also referenced its reversal of a c.93A multiple damages award against landlord defendants who conveyed a $25 settlement

---

[8]In *Villaneuva*, the Appeals Court also rejected the plaintiff's reliance on the insurer's reserve increases to establish reasonably clear liability and damages. 2016 Mass. App. Unpub. LEXIS 537, *10, *citing to Bohn v. Vermont Mut. Ins. Co*., 922 F. Supp. 2nd 138, 147 (D. Mass. 2013).

offer to a plaintiff who subsequently obtained $1,250,000 verdict in *Parker v. D'Avolio,* 40 Mass. App. Ct. 394 (1996). Applying the same c.93A framework used to evaluate unfair settlement practices claims against insurers, the Appeals Court concluded in *Parker v. D'Avalio* that the landlord defendants had strong grounds to contest the minor plaintiff's recoverable damages for alleged cognitive impairments (despite their exposure to strict liability under the lead paint statute) by relying upon supporting expert testimony and disputed issues of causation.[9]

In keeping with the foregoing, a Massachusetts Superior Court held that an insurer did not have any statutory obligation to engage in any efforts to settle a patron's claims for injuries attributed to an altercation at the insured's establishment in *Graf v. Hospitality Mut. Ins. Co.*, 2015 Mass. Super. LEXIS 80, 33 Mass. L. Rep. 13 (Hampden County, June 29, 2015), because, *inter alia*, the insurer had reasonable grounds to question the plaintiff's version of events and to dispute the nature and extent of her claimed injuries.  As grounds for its entry of judgment for the insurer, the trial court noted that the "relevant inquiry . . . is whether the insurer reasonably believed that its insured's liability with respect to damages was not clear." *Id*. at *47, *citing to O'Leary-Alison*, supra.  In conducting this inquiry, "it is the reasonableness of the [insurer's] rather than the [plaintiff's] beliefs which defines the statutory test." *Id*. at *54, *citing to Parker v. D'Avolio, supra*.

Applying this well-settled standard, the court rejected the plaintiff's c.93A claims against an insurer that made no settlement offers prior to the $500,000 jury verdict.  *Id*. at * 15. As the court explained in *Graf*, when the insurer has reasonable grounds to contest the insured's liability and/or the claimant's asserted injuries and recoverable damages, the insurer cannot be subjected

---

[9] For the foregoing reasons, any effort by Hache to rely upon the $3,275,000 jury verdict to support his c.93A claims will fail. If he nonetheless attributes any significance to the verdict, it should be noted that the jury only awarded Hache $275,000 for lost future earnings, a fraction of the amount he sought to recover for his alleged diminished earning capacity attributed to his cognitive impairments. *See*, SOF,¶¶61 and 67.

to liability for an "under-valuing of a plaintiff's claim" even if significant "absent evidence that the insurer 'acted deliberately to derail the settlement process." *Id*.

### C. This Dispute Differs Materially From the Reported Decisions Involving Multiple Damages Awards for Willful or Knowing c.93A Violations

On the factual record presented by this dispute, even if the Plaintiff could establish that liability and damages on his claims against Wachusett were reasonably clear at any point prior to the July 2019 trial for purposes of establishing the Defendants' c.93A statutory settlement obligations, AmWINS remains entitled to summary judgment based upon Hache's inability to offer any evidence of any counterpart to the types of egregious misconduct that Massachusetts courts have required to justify an award of multiple damages for a "willful and knowing" c.93A violation.

In stark contrast to the factual scenarios before the courts in the following instructive decisions, based upon the record of undisputed material facts in this dispute, Hache's "willful and knowing" violation claim fails as a matter of law given the absence of any evidence of a biased and/or materially inadequate investigation; any improper effort to derail or hinder ongoing settlement negotiations; any misrepresentations or withheld information; and/or any reckless disregard of evidence that supported a plaintiff's claims.

Instead of offering parallels to any of the types of egregious misconduct that rose to the level of a "willful and knowing" c.93A violation, the "rear view mirror" examination of the Underlying Action establishes that the Parties' divergent positions regarding the Plaintiff's claimed entitlement to recover a substantial damages award for his alleged cognitive impairments and orthopedic problems from the Accident eliminated any realistic prospect of avoiding the need to take the dispute to trial. As should go without saying, a plaintiff cannot establish a c.93A violation, much less a willful and knowing violation, by pointing to the absence of a pre-trial

settlement in instances such as this, where the nature, extent and severity of the plaintiff's alleged injuries remained "the subject of good faith disagreement." *See*, *Bobick v. U.S. Fid. & Guar. Co.*, 439 Mass. 652, 659 (2003).

In contrast to *Calandro, Silva* and the other decisions addressed in the preceding section, in *Gore v. Arbella Mut. Ins. Co*., 77 Mass.App.Ct. 518 (2010), the court concluded that there was a "sound basis for at least double damages" for a willful and knowing c.93A violation because, *inter alia*, "it is uncontested, that Arbella knew that liability was reasonably certain by the time it received [a presuit] demand letter from [the claimant's counsel].  What is more, Arbella knew that the delay in making a prompt and reasonable settlement offer, let alone the failure to even make contact with [claimant's counsel] for five months, would have subjected its insured, Caban, to a possible excess judgment." *Id*. at 533-34.

Making matters worse, Arbella failed to inform its insured of its receipt of, and failure to respond to, a pre-suit offer to release the injured party's claim for injuries sustained in a motor vehicle accident in exchange for the Policy's $20,000 per person limit when suit was filed.  When Arbella offered the policy limit several months after suit was filed, plaintiff's counsel rejected the offer as "rather presumptuous under the circumstances."  Approximately two years later, the plaintiff and the insured settled their dispute via the entry into a $450,000 stipulated judgment with assigned c.93A claims against the insurer. In response to the plaintiff's $1.4 million post-judgment c.93A demand, Arbella conveyed a $23,966.16 counteroffer.

Following a jury waived trial, the Judge concluded that Arbella had willfully and knowingly violated c.93A by "failing to effectuate a prompt and equitable offer of settlement, failing to notify Caban of the settlement offer and misrepresenting to Caban that a formal demand had not been received." The Appeals Court upheld the willful and knowing violation with remand

instructions concerning the plaintiff's entitlement to recover double or treble, versus single, damages tied to the amount of the non-collusive stipulated judgment.  *Id.* at 537-38.

While cited most often for its determination that the underlying Judgment amount serves as the multiplier for an award of damages for a willful and knowing c.93A violation under the 1989 statutory amendment, *Rhodes v. AIG Domestic Claims, Inc.*, 461 Mass. 486 (Mass. 2012) is instructive in this dispute because of the clear contrast between the fact pattern that supported the willful and knowing violation determination in that case and the applicable facts in this dispute.

*Rhodes* concerned claims brought on behalf of a woman who sustained "catastrophic injuries including permanent paraplegia when a tractor trailer hit the rear end of her car in January of 2002."  There was never any dispute regarding the truck driver's negligence and clear liability of the defendants' insured under a $2 million Zurich primary policy and a $50 million National Union excess policy issued to the truck lessee, GAF Building Corp.  AIG Domestic Claims served as National Union's claim administrator (collectively, "AIGDC").[10]

Following the entry of a $11.3 million judgment against the GAF defendants, plaintiffs sent c.93A demand letters to Zurich and AIGDC.  The plaintiffs subsequently settled with GAF for $8.965 million to avoid an appeal. During the ensuing c.93A proceedings, the trial court concluded that AIGDC willfully and knowingly violated its statutory settlement obligations "once liability (including damages) was reasonably clear" prior to the trial and by offering the plaintiffs $7 million in response to their post-trial c.93A demand.

During the appeal concerning the trial court's "loss of use" measure of damages, AIGDC did not contest the trial court's findings regarding its pre- and post-trial c.93A violations.  *Id.* at

---

[10]The First Circuit also sustained the trial court's determination that the award of multiple damages for the insurer's willful c.93A violation should be based upon the plaintiff's "actual damages" rather than the consent judgment because it could be challenged as collusive.  *Id.* at 108.

495, n.15.  Given its determination that the Judgment entered against the insured serves as the multiplier for any award of damages for a willful and knowing c.93A violation, the SJC did not have to determine whether AIGDC's willful and knowing violation … before the verdicts" injured the plaintiffs because they were "entitled to a multiple of the underlying tort judgment as damages" for the post-verdict conduct and they could not recover that amount twice. *Id*. at 489.

This dispute also stands in stark contrast to the clear showing of a biased investigation and unfair settlement conduct in the face of reasonably clear liability and damages in *Capitol Specialty Ins. Corp. v. Higgins,* 953 F.3d 95 (1st Cir. 2020) and *Terry v. Hospitality Mut. Ins. Co*., 101 Mass. App. Ct. 597 (2022), *rev. denied*, 2022 Mass. LEXIS 541 (Nov. 10, 2022).

In *Capitol Specialty*, the First Circuit affirmed the trial court's determination that Capitol willfully violated c.93A by, *inter alia*, ending its investigation "[d]espite knowing virtually nothing about the events of the evening other than self-serving statements from select employees" in disregard of its obligations under 176D §3(d)(6).  953 F. 3d. at 103. As grounds for affirming the award of multiple damages for Capitol's disregard of its statutory settlement obligations under c.176D §3(d)(6), the First Circuit pointed to the district court's determination that liability [was] reasonably clear before Capitol's offering of the policy limit because [the insured nightclub] regularly provided Higgins alcohol despite being aware she was only twenty years old, a violation of Massachusetts law." *Id*. at 103-04.

In *Terry v. Hospitality Mutual*, the Appeals Court affirmed the trial court's award of double the amount of the $250,000 award entered against the defendant pub for injuries sustained in an altercation for the insurer's willful and knowing violation of c.93A.  Similar to the *Capitol v. Higgins* scenario, in *Hospitality Mutual*, the trial court based its c.93A willful and knowing violation holding on the insurer's blatant disregard of its obligation to conduct a non-biased and

thorough investigation of the plaintiff's claims under 176D §3(d)(6) coupled with its failure to convey a fair settlement offer when its insured's liability became reasonably clear.

As grounds for sustaining the inadequate investigation basis for the willful and knowing violation determination, the Appeals Court agreed with the trial court's determination that "Hospitality consistently found reasons to disregard unfavorable evidence, Hospitality did not apply the same exacting scrutiny to favorable evidence." *Id*. at 606. As grounds for affirming the award of multiple damages for unfair settlement practices, the Appeals Court agreed with the trial court that Hospitality Mutual willfully violated c.93A by offering an amount well below its own estimate of the value of the plaintiff's injuries when it knew that its insured's liability for a dram shop violation was reasonably clear based upon uncontested evidence of its service of alcohol to intoxicated patrons. *Id*. at 608 and 610

In contrast to the foregoing, the undisputed factual record in this dispute is devoid of any evidence of the type of egregious conduct that supported an award of multiple damages for a willful and knowing violation of c.93A based upon clear evidence of a biased investigation, reckless disregard of clear evidence of the insured's liability and the plaintiff's recoverable damages, and/or other statutorily prohibited conduct.

## III.   CONCLUSION

For the foregoing reasons, AmWINS respectfully submits that summary judgment should enter in its favor on Plaintiff's M.G.L. c. 93A claim (Count II) asserted against it in this Action.

Respectfully submitted,
AMWINS PROGRAM UNDERWRITERS, INC.
By its Attorneys,

*/s/ Barbara O'Donnell*

_____
Barbara O'Donnell, BBO#544458
John Harding, BBO #221270
Sulloway & Hollis, P.L.L.C.
53 State Street, Suite 1305
Boston, MA 02019
(617) 830-5072
bodonnell@sulloway.com
jharding@sulloway.com

Date: February 6, 2023

## CERTIFICATE OF SERVICE

I hereby certify that I electronically filed this document with the Clerk of the United States District Court for the District of Massachusetts on this 6th day of February 2023 by using the CM/ECF system, with service made on all parties to this Action through their registration in the CM/ECF system.

*/s/ Barbara O'Donnell*
Barbara O'Donnell